1
2
3
4
5
6
7
8

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA

| | |
|---|---|
| Gordon Hempton,<br>                             Plaintiff,<br><br>        v.<br><br>Pond5, Inc., a Delaware Corporation; and<br>Pond5 user ckennedy342, a corporation or<br>individual of type unknown<br><br><br>                             Defendants. | NO.<br><br>COMPLAINT   FOR   DAMAGES   FOR<br>COPYRIGHT VIOLATIONS OF 17 U.S.C.<br>§101 *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

        Plaintiff Gordon Hempton hereby alleges the following causes of action against

Defendant Pond5, Inc. and the John Doe Pond5 user identified as ckennedy342:

# I    PARTIES

        1.      Plaintiff Gordon Hempton ("Plaintiff" or "Mr. Hempton") is a resident of Kitsap

County, Washington. Mr. Hempton is the world's preeminent nature sound recordist and a

pioneer in the field of acoustic ecology.

        2.      Founded in 2006, Defendant Pond5, Inc. is incorporated as a Delaware

corporation licensed to conduct business in, and with a principal place of business, in New

York. Defendant Pond5 sells media content through their website, enabling purchasers to use

the content worldwide.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

3.      Defendant John Doe, Pond5 user ckennedy342, is a user on the Pond5 network.

## II      JURISDICTION AND VENUE

4.      This action arises under the copyright laws of the United States of America, 17 U.S.C. § 101 *et seq.*  Jurisdiction over the copyright claim is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338.

5.      Venue is proper in this Court pursuant to 28 USC §§ 1391(b) and (c).

6.      Defendants purposefully availed themselves of this forum by distributing copyrighted works of authorship registered by Plaintiff and by selling content in this forum.

7.      Defendant Pond5 has transacted business in and has had continuous and systematic contacts with this forum.

8.      A substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of the property that is the subject of this action is situated in Washington.

## III      FACTUAL BACKGROUND

9.      Defendant Pond5 is an online purveyor of video footage, stock photos, illustrations, music tracks, sound effects, project templates, and 3D models, among other things. Defendant Pond5 sells media content through their website, enabling purchasers to use the content worldwide. Pond5 sells media content through their website, enabling purchasers to use the content worldwide.

10.     Defendant John Doe is a Pond5 user who goes by the username ckennedy342. Ckennedy342 has uploaded thousands of sound files to Pond5 for sale, many or all of which are copyrighted works of others.

11.     Gordon Hempton, Plaintiff, is the world's preeminent nature sound recordist and world-renowned pioneer in the field of acoustic ecology.

12.     Plaintiff has pursued nature sounds for the past 34 years, capturing Earth's rarest sounds. Plaintiff has spent his lifetime, committing extensive resources, to create unique nature

COMPLAINT FOR DAMAGES - 2

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

recordings.

13.    Mr. Hempton has travelled to the most remote areas of the globe to produce the rarest, highest-quality and most complete recordings of a variety of rare acoustic environments and has documented the effect of acoustic phenomena on these environments. It frequently takes him more than one month to capture only mere fifteen minute segment of useable material.

14.    Plaintiff's art takes form based upon his ability to personally measure different sound levels, interpret changing outdoor sound patterns, and select exact listening positions to make his recordings.

15.    The importance of Mr. Hempton's life work has been recognized world-wide by scientists, ecologists, environmentalists, artists and the media. Plaintiff is celebrated internationally for creating recordings of the vanishing natural soundscapes on the planet. USA Today wrote that Plaintiff is "America's foremost guru of quiet" and the San Francisco Examiner recognized that his nature recordings "immortalize the few remaining quiet corners of the world." Plaintiff's sound recordings are "the last echo of nature at its most natural," according to the Philadelphia Inquirer.

16.    In 2010, Mr. Hempton and his work was the subject of a feature length documentary film, "Soundtracker."

17.    Mr. Hempton is also the author of a 2009 non-fiction book "One Square Inch of Silence" which chronicles his work on the natural and social history of the effect of acoustics in various environments.

18.    Mr. Hempton and his work have been featured in Time magazine (July 27, 1998), People (May 30, 1988), The New York Times (April 10, 2010), Smithsonian Magazine (April 1995), The LA Times (November 15, 2015), Seattle Times (October 21, 1985), The Seattle Weekly (August 6, 1986), Backpacker Magazine (October 2011), The Red Bulletin (October 2011) and other print media.

19.    Mr. Hempton has been interviewed and his recordings featured by numerous

COMPLAINT FOR DAMAGES - 3

broadcast media outlets, including NPR, NBC, and Oprah Winfrey.

**Plaintiff's recordings are artistically unique, and time and effort intensive**

20.     Mr. Hempton's interest in the conservation and study of nature sounds began in the early 1980's, while pursuing advanced graduate work in plant pathology at University of Wisconsin at Madison.

21.     One late summer day returning to university from summer vacation, Mr. Hempton, to avoid the expense of a motel, lay down between rows of corn in a Midwestern field.

22.     As a thunderstorm rolled over the field drenching Mr. Hempton, he experienced something of an epiphany, and realized he had never fully paid attention to the exquisite symphony of the natural world.

23.     Wanting to preserve and share such auditory experiences as this one, in 1983, Mr. Hempton sought out the advice of Dr. Jim Gulledge, Director of the Macaulay Library at Cornel University's Laboratory of Ornithology, which housed the largest library of natural sounds then in existence.

24.     Dr. Gulledge confirmed Mr. Hempton's concern that almost no work was occurring to archive pristine natural soundscapes and that development, with its concurrent noise pollution and species extinction, was reducing the number and variety of natural soundscapes in existence.

25.     With the field of acoustic ecology still embryonic, and with the commercial value of such recordings not yet realized by the market, Mr. Hempton was not surprisingly unable to find an employer who would employ him to do the work that he dreamed of doing.

26.     In 1984 with $12,000 he had painstakingly saved over three years working as a bike messenger, Mr. Hempton took a leap of faith and purchased a state of the art Swiss tape recorder and German microphone system engineered to replicate bilateral hearing of humans.

27.     While embarking on his career of a recordist Hempton continued to work as a

COMPLAINT FOR DAMAGES - 4

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

bike messenger for six more years in order to finance his goal of recording the Earth's rarest sounds.

28.     Over the course of his career Hempton has continued to modify his system and has devised a number of ground-breaking hardware modifications and techniques to capture audio recordings.

29.     His recordings remain at the utmost forefront of amplification and fidelity.

30.     His resulting system is so sensitive that under the proper conditions he has been able to record engine noise from a distance of 20 miles.

31.     Armed with his custom set-up, over three decades Mr. Hempton has travelled to every continent except Antarctica and to some of the most remote and foreboding places in the world in order to record rare and often endangered soundscapes.

32.     From these travels across the world, sometimes waiting at a particular location for as much as six weeks for optimal conditions, Mr. Hempton has produced the world's largest archive of rare and vanishing nature sounds. This is his life's work.

33.     Mr. Hempton supplies his own creative signature to the sound recordings by carefully selecting the time, place and location for recordings to capture the unique qualities of his works of authorship.  Simply, Mr. Hempton has spent his career building a sound library that is peerless when it comes to rare and endangered soundscapes.

34.     Each of Mr. Hempton's copyrighted works of authorship is different and reflects the unique qualities of his works of authorship.

**Plaintiff's recordings have immense value, as reflected in their copyrights and commercial success**

35.     Plaintiff's recordings have artistic value and uniqueness.

36.     Plaintiff's sound recordings are unique and difficult to obtain.

37.     Plaintiff's sound recordings have substantial commercial value.

38.     On March 14, 1985, Mr. Hempton effectively registered his first of many copyrights entitled: Gordon W. Hempton:  March 2, 1985 Natural Experiments in Binaural

COMPLAINT FOR DAMAGES - 5

Recordings. **Exhibit 1.**

39.     Plaintiff's nature recordings are protected under U.S. copyright law.

40.     In registering his works for copyright, Mr. Hempton had an extensive discussion with the U.S. Copyright Office regarding the unique nature of his works, in which Mr. Hempton demonstrated that his work is an artistic composition created with unique recording techniques and skill.

41.     Today, in addition to tens of thousands of recordings that Mr. Hempton has in his nature sound library, Mr. Hempton has registered copyrights for 17 album length audio recordings identified by the Copyright office as:  "Ebb and Flow" SR 117-450 (December 4, 1989); "Cedar Creek" SR 117-509 (June 13, 1990); "Old Growth" SR 117-510 (June 13, 1990); "Wilderness Journey, SR 117-511 (June 13, 1990; "Tennessee Nightwalk" SR 117-512 (December 4, 1989); "Okanogan Overture" SR 117-514 (December 4, 1989); "Dawn Chorus" SR 122-807 (August 27, 1990); "Earth's Morning Song" SR 146-695 (December 6, 1991); "Rolling Thunder" SR 146-704 (December 6, 1991); "Earth" 148-597 (November 9, 1992); SR 148-598 "Australia" (November 9, 1992); SR 148-599 "Asia" (November 9, 1992); SR 148-600 "North America" (November 9, 1992); SR 148-601 "Africa" (November 9, 1992); SR 148-602 "South America" (November 9, 1992);  SR 369-481 "Collector's Set" (June 6, 2006); and, SR 372-701 "Quiet Places Collection" (June 7, 2005).  See **Exhibits 2-18.**

42.     From 1986 to the present, Mr. Hempton has commercially marketed his recordings and his work, has been licensed to, and used in, television shows, radio programs, large budget feature films, video-games, software, cellular phone applications and other media.

43.     In 1986, Mr. Hempton began to commercially market his work and sell signed limited editions in a series called "Rare Native Acoustics" at American Heritage Fine Arts Gallery in Seattle, Washington.

44.     In 1989, Mr. Hempton's work received further recognition from the Charles A Lindbergh Foundation, a philanthropic organization that seeks to promote balance between technology and human and natural environments, and Mr. Hempton was awarded a grant equal

COMPLAINT FOR DAMAGES - 6

to the cost of Lindberg's plane, The Spirit of St. Louis.

45.     Also in 1990, Mr. Hempton received an Associate Laureate for The Rolex Awards for Enterprise.

46.     In 1990, Mr. Hempton received a National Endowment of the Arts grant to continue his work in acoustic ecology.

47.     During this same year Mr. Hempton was featured in PBS's nationally televised documentary "Vanishing Dawn Chorus." Hempton's sound recordings in this documentary earned him an Emmy Award for Individual Achievement in 1992.

48.     Finally, in 1992, with recognition and financial security from his recordings to gain control of his projects Hempton transitioned to working full time on time to preserve culturally important natural soundscapes that were threatened by noise pollution.

49.     Mr. Hempton began work on two major projects that he finished in 1994.  One project was to seek and capture the nature sounds of Mark Twain's childhood based on his writings and autobiography. The second was to record the nature sounds that John Muir described during his exploits in Yosemite

50.     From 1992 to 2014, Mr. Hempton worked at various times as an independent contractor for Microsoft Corporation where he captured specific sounds that Microsoft used in various innovative products.

51.     In recent years it has become apparent that because of Mr. Hempton's unique process of recording his sound library is especially suitable for virtual reality applications due to the fact that directional information is critical for successful user experience.

52.     Mr. Hempton has been successful in transitioning his business from the analog to the digital world.  In his book, One Square Inch of Silence, published in 2009 Mr. Hempton notes on page 43:

> *I live by my ears.   I listen and record and consult.   Businesses from around the world seek my recordings and advice, which I offer freely, up to a point and then charge accordingly.  I also published more than 60 albums of my environmental soundscapes and thanks to iTunes I no longer need to keep a CD inventory of any*

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*consequence.   Nowadays it's commerce by mouse-clicks uploads downloads PayPal and wire transfer…*

53.     In 2004, Hempton established the music label The Sound Tracker, a registered trademark and continues to sells via iTunes his copyrighted works of authorship from more than 50 albums.

54.     In 2012, Mr. Hempton established Quiet Planet LLC and the domain www.quietplanet.com, from which he licenses certain collections of nature sounds from his library to independent producers.

55.     Mr. Hempton has licensed his individual recordings to musicians, filmmakers, videogame makers, web designers, universities, and has been the preeminent source for nature recordings world-wide.

56.     To this day, Mr. Hempton continues to invest heavily in collecting the vanishing natural soundscapes and licensing his recordings to producers of media world-wide.

**Copyright infringement by Pond5**

57.     Founded in 2006, Defendant Pond5 is incorporated in Delaware, and has a principal place of business in New York.

58.     Pond5 operates as an on-line vendor for royalty-free digital media, and directly licenses third party content to entities worldwide.

59.     According to its terms and conditions, Pond5 retains half of the proceeds of every media sale transacted on its website.

60.     Defendant Pond5 is financially dependent on the content of its website and the media posted by contributors to its website.

61.     Pond5's business model is such that it directly profits from the licensing of content through its website.

62.     On May 4, 2015, alerted by colleagues in the industry, Mr. Hempton became aware that his copyrighted works of authorship were being offered for sale by Defendant Pond5 Inc. on their website www.pond5.com.

COMPLAINT FOR DAMAGES - 8

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

63.     While Mr. Hempton was unable to search Pond5's website by actual author, he was able to find 138 of his copyrighted sound recordings on the website.

64.     On information and belief, the total number of infringed works far exceeds 138.

65.     On May 26 and 29, 2015, Mr. Hempton's attorney contacted Pond5 via email regarding the nature and extent of the piracy and copyright infringement.

66.     On June 9, 2015, Mr. Hempton revisited the Pond5 site. To his amazement, the number of sound files attributed to ckennedy342 had <u>increased</u> by more than 1000 files over the past 30 days. Mr. Hempton found a total of 10,242 sound files for sale on the Pond5 site by ckennedy342.

67.     All known pirated works were uploaded and submitted to Pond5 using the username ckennedy342. However, because of the difficulty in search Pond5's website, it is possible other pirated material is present at Pond5's website.

68.     Ckennedy342 began uploading and selling Plaintiff's works on Pond5, without Plaintiff's permission, as early as September 2014.

69.     Pond5 states prominently on the "About Us" page of its website that "Every clip submitted is reviewed by our team of expert curators for approval." *See* http://www.pond5.com/index.php?page=about_us (last accessed on September 1, 2015).

70.     Defendant knowingly reviewed, accepted, and approved submissions by user ckennedy342, who represented Plaintiff's nature recordings as his/her/its own.

71.     Because of the difficulty in obtaining data on a search one-by-one basis, a complete record of uploads in not known.

72.     It is known, for example, that "Thunder Moderately Distant" was uploaded on September 10, 2014. "Coyote Solo," "Desert Bird Wing Flutters," "Desert Morning Bird Chorus (3)" were uploaded on September 22, 2014.  "Prairie Quiet," "Faint Insects Birds," "Red-Tailed Hawk," and "Windy Grass Wispy Breeze" were uploaded on November 30, 2014. "Prairie Wind Buffeting Faint Crickets" was uploaded on December 4, 2014.

73.     Pond5 reviewed and approved the posting of thousands of ckennedy342's

COMPLAINT FOR DAMAGES - 9

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

submissions, including a substantial but unknown number of Plaintiff's works, even though this large number of submissions placed Pond5 on notice that ckennedy342 was uploading huge amounts of content on the Pond5 system which could not have been achieved by an original author.

74.     Pond5 failed to prevent or respond to the highly suspicious massive uploading by ckennedy342.

75.     By accepting the submissions and subsequently posting the infringing material on the Pond5 website for sale, Defendant began exploiting and benefitted from Plaintiff's copyrights.

76.     To date, it is known that Defendant approved and enabled at least 138 of Plaintiff's sound recordings to be posted, sold, and dispersed worldwide through its website.

77.     Defendant Pond5 recognizes the Copyright Act on its website, and pledges to ensure that its website contributors are the true copyright owners of the content Defendant agrees to sell and distribute.

78.     Defendant requires its employees scrutinize and select media to post and sell on its website. Defendant advertises that it is "quite picky" when it reviews media content submitted for sale on its website.

79.     Defendant Pond5 maintains control over the content on its website.

80.     Defendant Pond5 reserves the right to remove for any or no reason at all the media content on its website.

81.     Defendant financially benefited from hosting and selling Plaintiff's sound recordings on its website.

82.     Defendant's business was enhanced by the presence of Plaintiff's works, which were posted on its website for an extensive period of time.

83.     Plaintiff's copyrighted works sold by Pond5 are no longer in the control of Pond5.

84.     The full extent that Plaintiff's work has been unlawfully sold and distributed by

COMPLAINT FOR DAMAGES - 10

Defendant is impossible to assess without discovery.

85.     Plaintiff has been financially harmed, and the integrity and value of his copyrighted sound recordings have lessened as a result of Defendant Pond5's serial infringement of his copyrighted works of authorship.

86.     On June 24, 2015, Mr. Hempton's attorney sent Pond5 via certified mail a Digital Millennial Copyrights Act (DMCA) notice of infringement and requested that the pirated material owned by Mr. Hempton be removed from the site.

87.     On June 30, 2015, Pond5, after at least 11 months of profiting from the unauthorized sale and distribution of Plaintiff's works, Pond5 claimed that it had removed all submissions by ckennedy342 and terminated his user account.

88.     On July 2, 2015, Mr. Hempton's attorney sent Pond5 via certified mail a spoliation letter requesting that all copies of the pirated recordings, records of sale, and other relevant documents as they relate to user ckennedy342 be preserved.

89.     This suit follows.

## IV     CLAIMS - COPYRIGHT INFRINGEMENT

### Direct Infringement of Copyrights by Pond5

90.     Plaintiff realleges the preceding paragraphs of this complaint.

91.     Plaintiff's nature recordings, available on Defendant Pond5's website for sale without Plaintiff's knowledge or permission, are subject to valid, registered copyrights by the U.S. Copyright Office.

92.     At all relevant times, Plaintiff has been the sole producer and owner of the audio works reproduced, distributed, and sold by Pond5 on its website.

93.     Plaintiff's copyrighted works were copied to and publicly displayed from servers and/or other hardware owned, operated, and/or controlled by Pond5.

94.     The unauthorized copying, distribution, and sale of recordings via the Internet constitutes copyright infringement in violation of 17 U.S.C. § 106 of the Copyright Act. By

COMPLAINT FOR DAMAGES - 11

reproducing and distributing Plaintiff's sound recordings without seeking his permission, Defendant's actions constitute copyright infringement in violation of 17 U.S.C. § 101 et seq.

95.     Defendant unlawfully violated Plaintiff's exclusive rights to his copyrighted nature recordings by posting them for reproduction, distribution and sale, without Plaintiff's consent, on Defendant Pond5's website, http://www.pond5.com/.

96.     Defendant directly infringed the copyrights in Plaintiff's works when Pond5 employees reviewed the infringing submissions, approved the submissions, and subsequently transferred the infringing files onto Pond5's website.

97.     Defendant received 50 percent of the profit from every unauthorized sale of Plaintiff's copyrighted works, dating back to at least September 2014.

98.     Defendant did not have permission to exploit Plaintiff's works on http://www.pond5.com/ and knew or should have known its acts constituted copyright infringement.

99.     User ckennedy342 uploaded *thousands* of works to Pond5's website. On information or belief, Defendant made no attempt to discover the proper owner of the works before exploiting them for direct profit, nor did it take measures to determine whether the works had been properly licensed.

100.    On information and belief, user ckennedy342 appeared to have used an automated system in order to bulk upload files.

101.    Defendant's conduct was willful within the meaning of the Copyright Act. At a minimum, Defendant acted with willful blindness to and in reckless disregard of Plaintiff's registered copyrights.

102.    As a result of its wrongful conduct, Pond5 is liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer substantial losses, including but not limited to financial loss from the authorized sale of his works, and damage to his brand and business reputation through the loss of control over his copyrighted works.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**Direct Infringement by User ckennedy342**

103.    Plaintiff realleges the preceding paragraphs of this complaint.

104.    Defendant's members and/or other users also engaged in direct copyright infringement of Plaintiff's copyrighted nature recordings.

105.    Specifically, it is known that Pond5 user ckennedy342 uploaded *more than 100* of Plaintiff's works to Pond5's website for distribution, reproduction and sale without Plaintiff's authorization, dating back to at least September 2014, in violation of 17 U.S.C. § 501.

**Contributory Infringement by Pond5**

106.    Plaintiff realleges the preceding paragraphs of this complaint.

107.    Pond5's members and customers, including user ckennedy342, engaged in direct copyright infringement of Plaintiff's copyrighted works.

108.    Defendant induced, and materially contributed to the infringing acts of its customers by reviewing and approving each submission and allowing its users and/or members to reproduce and publicly sell Plaintiff's works without regard for Plaintiff's ownership of these works.

109.    Defendant had knowledge of these infringing acts and financially benefitted from these acts.

110.    The acts and conduct of Pond5, as alleged in this Complaint, constitute contributory copyright infringement.

**Vicarious Infringement by Pond5**

111.    Plaintiff realleges the preceding paragraphs of this complaint.

112.    Pond5's members and customers, including user ckennedy342, engaged in direct copyright infringement of Plaintiff's copyrighted works.

113.    Defendant had the right and ability to control the infringing acts of its members and potential customers.

114.    Defendant directly benefited financially from the infringement of Plaintiff's

BRESKIN ｜ JOHNSON ｜ TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  work by collecting 50 percent of the profits derived from each sale of one of Plaintiff's nature
2  recordings, dating back to at least September 2014.

3  115.    Defendant indirectly benefited financially from the infringement of Plaintiff's
4  work because the nature recordings enhanced Defendant's user base and website.

5  116.    Each unauthorized distribution, public reproduction and sale of plaintiff's work
6  constitutes a separate and distinct act of infringement.

7  117.    The foregoing acts of infringement by Pond5 have been willful, intentional, and
8  purposeful, and in disregard of Plaintiff's rights to his work.

9  118.    Pond5's conduct, as alleged herein, constitutes vicarious infringement of
10  Plaintiff's copyrights in violation of 17 U.S.C. §§ 106 and 501.

11  **Damages**

12  119.    Defendant's use of Plaintiff's work does not fall under the "safe harbor" in 17
13  U.S.C. § 512.    Defendant had, and continues to have, the right and ability to control the
14  infringing activity, and received financial benefit from each infringing sale of Plaintiff's
15  copyrighted works.

16  120.    As a result of Defendant's infringing acts, Plaintiff has been injured and has
17  suffered damages in an amount to be proved at trial.

18  121.    Plaintiff is entitled to either: (1) actual damages and profits suffered by him as a
19  result of the infringement, as well as any profits Defendant obtained not taken into account in
20  computing the actual damages, under 17 U.S.C. § 504(b); or (2) statutory damages pre-
21  judgment under 17 U.S.C. § 504(c).

22  122.    Defendant's company policy mandates that employees select, control, and when
23  necessary, remove, content from its website. Defendant, despite its policy of policing of its
24  website, nonetheless actively infringed Plaintiff's works, many times over.

25  123.    Defendant Pond5's cavalier failure to properly shoulder the burdens of the
26  copyright regime, and its subsequent serial infringement of at least 138 of Plaintiff's works,
27  also constitutes a willful violation of the Copyright Act, entitling Plaintiff to recover even

COMPLAINT FOR DAMAGES - 14

greater statutory damages under 17 U.S.C. § 504(c)(2).

124.    In addition to actual and/or statutory damages pursuant to 17 U.S.C. § 504, Plaintiff claims such other remedies to which it may be entitled by law, including Defendant's revenues and profits pursuant to 17 U.S.C. 504 (b); injunctive relief pursuant to 17 U.S.C. § 502; impounding and destruction of infringing articles pursuant to 17 U.S.C. § 503; and attorney's fees and costs pursuant to 17 U.S.C. § 505 and otherwise allowed by law.

**V    REQUEST FOR JUDGMENT**

125.    Plaintiff requests that the court enter judgment against Defendant Pond5 as follows:

(a)    An order preliminarily and permanently enjoining Defendant and all persons in active concert of participation with any of them from using Plaintiff's copyrighted work;

(b)    An order, as specifically provided by 17 U.S.C. § 503 and other applicable law, for seizure to recover, impound, and destroy all things infringing Plaintiff's copyrighted materials, including any video, written, or digitally maintained materials Defendant may possess or have under their control, or under the control of any of Defendants' respective officers, agents, servants, employees, attorneys, or any other person acting in concert or participation with Defendant;

(c)    An order requiring Defendant to file with this Court and serve upon Plaintiff, within 30 days of service of this order, a report in writing under oath setting for the in detail the matter and form in which Defendants have complied with the terms of the ordered relief;

(d)    An order requiring Defendant to attempt to identify all purchasers of Mr. Hempton's audio recordings and to recall such recordings;

COMPLAINT FOR DAMAGES - 15

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

(e)     Actual or statutory damages in an amount sufficient to compensate Plaintiff for all injury sustained as a result of Defendant's wrongful activates, including wrongful profits of Defendants, as provided under applicable law;

(f)     Reasonable attorney fees and litigation expenses pursuant to 17 U.S.C. § 505;

(g)     A supplemental award to cover any adverse tax consequences of the judgment; and

(h)     Awarding Plaintiff such further equitable, legal or additional relief as may be appropriate and just.

DATED:  September 25, 2015.

BRESKIN JOHNSON & TOWNSEND, PLLC

By:  *s/Roger M. Townsend*
    Roger M. Townsend, WSBA #25525
    Cynthia J. Heidelberg, WSBA # 44121
    1000 Second Avenue, Suite 3670
    Seattle, WA  98104
    (206) 652-8660 Telephone
    (206) 652-8290 Facsimile
    rtownsend@bjtlegal.com
    cheidelberg@bjtlegal.com

THE LAW OFFICE OF NICHOLAS POWER

By: *s/Nicholas E.D. Power*
    Nicholas E.D. Power, WSBA #45974
    540 Guard St., Suite 150
    Friday Harbor, WA 98250
    (360)298-0464
    nickedpower@gmail.com

*Attorneys for Plaintiff*

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660