**THE HONORABLE RONALD B. LEIGHTON**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GORDON HEMPTON,

          Plaintiff,

v.

POND5, INC., A DELAWARE CORPORATION; AND POND5 USER CKENNEDY342, A CORPORATION OR INDIVIDUAL OF TYPE UNKNOWN,

          Defendants.

No.: 3:15-cv-05696-RBL

**DECLARATION OF THOMAS CRARY IN SUPPORT OF POND5, INC.'S MOTION FOR SUMMARY JUDGMENT**

I, Thomas Crary, declare and state as follows: I am over the age of 18 and am competent to testify to the matters set forth herein. I am the Chief Financial Officer of Pond5, Inc. ("Pond5"). I submit this Declaration in Support of Pond5's Motion for Summary Judgment.

1. Pond5 operates www.pond5.com ("pond5.com"). Pond5.com is an online platform and marketplace for producers of media to license and distribute content to third parties. Pond5 utilizes a crowd-sourced model, whereby Contributors, who are artists and other media owners from around the world, upload Content, which includes a wide variety of digital media, such as video, music, images, sound effects, and 3D models. Once the media is uploaded, Customers can obtain royalty-free rights to the media by purchasing a license.

2. Pond5 currently employs approximately 107 people, has approximately 58,000 registered Contributors, and offers around 20 million items of Content. An average of 100,000

DECLARATION OF THOMAS CRARY
IN SUPPORT OF DEFENDANT POND5 INC.'S
MOTION FOR SUMMARY JUDGMENT - 1
(3:15-cv-05696 RBL)

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

new items of Content are posted and 12,000 items are downloaded each week. Some Contributors upload only a single items of Content, others upload tens of thousands of items, and others upload Content totaling some number in between those two extremes.

3. Pond5 does not own any of the Content on its marketplace. Instead, Contributors retain ownership of the Content. The Content is licensed to Pond5. In turn, Pond5 sub-licenses the Content to Customers. Pond5 serves solely as an intermediary to facilitate Contributors' sale of licenses to Customers.

4. Pond5 only rarely has direct contact with either Customers or Contributors. Pond5's business model relies upon Contributors uploading and Customers downloading Content without any human interaction with Pond5 employees. Transactions occur in this usual manner around 98% of the time. Of course, pond5.com has a Contact Us feature where Customers, Contributors, and others can contact Pond5 to ask questions or seek assistance.

5. Pond5 generates revenue from our marketplace by retaining one half of the proceeds from the licensing of Content. The other half is distributed to the Contributor. Contributors generally set their own price for Content, although they have the option of allowing Pond5 to set the price.

6. Anyone who would like to join the Pond5 marketplace must first create an account and accept Pond5's Terms of Use. A user who would like to become a Contributor is further required to accept Pond5's Contributor Agreement. A Customer must accept Pond5's License Agreement. These three agreements contain important terms that govern the use of the Website, uploading and downloading Content to and from the Website, and the use of Content.

7. Attached hereto as Exhibit 1 is a true and correct copy Pond5's Terms of Use Agreement.

8. Attached hereto as Exhibit 2 is a true and correct copy of Pond 5's Contributor Agreement.

9. Attached hereto as Exhibit 3 is a true and correct copy of Pond5's License

DECLARATION OF THOMAS CRARY
IN SUPPORT OF DEFENDANT POND5 INC.'S
MOTION FOR SUMMARY JUDGMENT - 2
(3:15-cv-05696 RBL)

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

Agreement.

10. Ckennedy342 opened an account at Pond5 and began uploading content onto pond5.com in August 2014. He listed his name as Chris Kennedy and his location as Quebec, Canada. Over the course of the next year or so, ckennedy342 uploaded 10,243 sound effects files to pond5.com. Such a high volume of sound effects is not particularly unusual and is not suspicious. Many Pond5 Contributors who upload sound effects have created and uploaded large volumes of sound effect files. Prior to June 29, 2015, Pond5 had received no notice or information of any kind questioning anything uploaded by ckennedy342. No person or entity had provided any notice to Pond5 that Content posted by ckennedy342 was infringing.

11. Pond5 commenced an investigation into ckennedy342 on or about June 30, 2015, immediately after we first received notice from Mr. Hempton's attorney that ckennedy342 had allegedly uploaded infringing works. We immediately removed all of his uploads from the Website and blacklisted him, which meant that he was banned from using our Website. During the course of our investigation, Pond5 discovered that there was a high likelihood that ckennedy342 had previously posted Content under usernames WildAudioProductions and HassanKhan. These users had opened separate accounts under different email addresses. They both identified their location as Karachi, Pakistan. Both had previously been banned from Pond5. Ultimately, Pond5 concluded that ckennedy342 was and is likely to be Hassan Khan and that he probably lives in Pakistan.

12. Pond5 linked ckennedy342 to Hassan Khan by matching the IP addresses, cookies, and information contained in PayPal accounts between his Pond5 accounts. The IP match and cookie match showed that, on at least one occasion, ckennedy342 logged in from the same computer that WildAudioProductions and Hassankhan had logged in from. The PayPal account showed that funds deposited to "Chris Kennedy" were actually going to Khan.

13. If Pond5 had conducted the investigation into ckennedy342 at the time that the account was created in August 2014, we probably would have linked ckennedy342 to Hassan

DECLARATION OF THOMAS CRARY
IN SUPPORT OF DEFENDANT POND5 INC.'S
MOTION FOR SUMMARY JUDGMENT - 3
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

Khan at that time. Furthermore, if we had made that connection, ckennedy342 would have been immediately banned. However, the processes involved in investigating ckennedy342 are manual processes. In August 2014, Pond5 did not, as a matter of policy, conduct such investigations of Contributors unless and until we became aware of suspicious activity. Once Pond5 became aware of suspicious activity involving ckennedy342, we immediately conducted an investigation that resulted in his being blacklisted and banned.

14. Pond5 received a takedown notice from Gordon Hempton's attorney on or about June 29, 2015. The takedown notice stated that ckennedy342 had uploaded "thousands of files" that were owned by Mr. Hempton. As of today's date, I do not believe that Mr. Hempton or his attorneys have ever identified those "thousands of files" in a manner that would allow Pond5 to identify them. To the best of my knowledge, neither Mr. Hempton nor his attorneys has ever produced a DMCA-compliant notice identifying the clips in a manner that allows Pond5 to reasonably locate them and verify that they were, in fact, infringing.

15. I am aware of a paragraph in the plaintiff's complaint where he identifies nine clips, by name and upload date, that were allegedly posted by ckennedy342 and that were allegedly owned by the Mr. Hempton. With respect to those nine clips, Pond5 compared the titles listed in the complaint to the 10,243 clips that were uploaded by ckennedy342. Through that comparison, we identified several matches that were either exact or similar enough that we believe to be a match on a more probable than not basis. Of the uploaded clips that matched the ones named in the complaint, there were a total of 43 sales. Those sales resulted in revenue to Pond5 totaling $192.95. The costs incurred by Pond5 associated with the curation of Content uploaded by ckennedy342, hosting that material on our website, and administering the sale of the licenses certainly exceed $192.95. The costs incurred by Pond5 in investigating the allegations of infringement raised by Mr. Hempton exceed this amount by many times.

16. Nature sounds are classified as "sound effects" on pond5.com. In May 2015, there were approximately 650,000 sound effect clips listed on pond5.com and licenses of those sound

DECLARATION OF THOMAS CRARY
IN SUPPORT OF DEFENDANT POND5 INC.'S
MOTION FOR SUMMARY JUDGMENT - 4
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

Khan at that time. Furthermore, if we had made that connection, ckennedy342 would have been immediately banned. However, the processes involved in investigating ckennedy342 are manual processes. In August 2014, Pond5 did not, as a matter of policy, conduct such investigations of Contributors unless and until we became aware of suspicious activity. Once Pond5 became aware of suspicious activity involving ckennedy342, we immediately conducted an investigation that resulted in his being blacklisted and banned.

14. Pond5 received a takedown notice from Gordon Hempton's attorney on or about June 29, 2015. The takedown notice stated that ckennedy342 had uploaded "thousands of files" that were owned by Mr. Hempton. As of today's date, I do not believe that Mr. Hempton or his attorneys have ever identified those "thousands of files" in a manner that would allow Pond5 to identify them. To the best of my knowledge, neither Mr. Hempton nor his attorneys has ever produced a DMCA-compliant notice identifying the clips in a manner that allows Pond5 to reasonably locate them and verify that they were, in fact, infringing.

15. I am aware of a paragraph in the plaintiff's complaint where he identifies nine clips, by name and upload date, that were allegedly posted by ckennedy342 and that were allegedly owned by the Mr. Hempton. With respect to those nine clips, Pond5 compared the titles listed in the complaint to the 10,243 clips that were uploaded by ckennedy342. Through that comparison, we identified several matches that were either exact or similar enough that we believe to be a match on a more probable than not basis. Of the uploaded clips that matched the ones named in the complaint, there were a total of 43 sales. Those sales resulted in revenue to Pond5 totaling $192.95. The costs incurred by Pond5 associated with the curation of Content uploaded by ckennedy342, hosting that material on our website, and administering the sale of the licenses certainly exceed $192.95. The costs incurred by Pond5 in investigating the allegations of infringement raised by Mr. Hempton exceed this amount by many times.

16. Nature sounds are classified as "sound effects" on pond5.com. In May 2015, there were approximately 650,000 sound effect clips listed on pond5.com and licenses of those sound

DECLARATION OF THOMAS CRARY
IN SUPPORT OF DEFENDANT POND5 INC.'S
MOTION FOR SUMMARY JUDGMENT - 4
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1  effects sold at an average (mean) price of $3.42. Pond5's revenue from the sale of all sound
2  effect licenses was approximately $220,000.00 in 2014 and $270,000.00 in 2015. The sale of
3  sound effect licenses is not a significant source of income to Pond5 and has never been
4  profitable.

5        17.    Statements on pond5.com that reference copyright or emphasize quality of
6  submissions, along with our approval process for Content, are intended, at least in part, to
7  discourage infringement.

8        18.    Pond5 utilizes watermarking and other methods to mark all Content that is posted
9  on pond5.com. For sound effects, every clip is embedded with a recording that audibly states
10 "Pond5.com" at the beginning of the clip and repeats itself approximately every 7.5 seconds for
11 the duration of the clip. All other Content is embedded with some type of mark to prevent
12 Customers and other visitors to the Website from infringement.

13       19.    Pond5 relies upon our network of Contributors, Customers, and others who access
14 our website to inform Pond5 of Content that is or may be infringing. Upon being notified of
15 possible infringing activity, Pond5 always investigates the allegation and, if the notice is found
16 to be credible, removes the Content. I am unaware of any circumstance where Pond5 has ever
17 received notice of possible infringement and not investigated.

18       20.    Pond5 utilizes software in an effort to combat infringement. This includes content
19 recognition software for music Content and software that Pond5 developed to detect duplicate
20 tracks that are uploaded to pond5.com by different user accounts. If a duplicate track is identified
21 with a different user account, Pond5 investigates the circumstances and takes appropriate
22 measures, which always involves the removal of any Content that Pond5 believes to be
23 infringing.

24       21.    Items uploaded to pond5.com are subject to review and approval by Pond5
25 through its curatorial process. Pond5 employs a total of 14 full-time and 10 part-time curators
26 who are primarily responsible for review and approval of Content. Three curators are assigned

DECLARATION OF THOMAS CRARY
IN SUPPORT OF DEFENDANT POND5 INC.'S
MOTION FOR SUMMARY JUDGMENT - 5
(3:15-cv-05696 RBL)

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

to audio content, which includes music and sound effects.

22.     The review and approval process is conducted quickly. Its primary purpose is to verify technical qualitative upload standards. Mainly, the purpose is to reject Content because its technical quality is very poor. The process also confirms that the Content has appropriate Meta-tags, is not obviously infringing, and has been categorized properly by the Contributor. The time spent on the curatorial process varies depending on media type, but it must necessarily be performed very quickly. For example, a curator reviews between 2,000 and 3,000 sound effects on a given day, meaning that the curator can spend only a few seconds on each clip. Given the sheer volume of Content uploaded to the Website, Pond5's curators do not and simply cannot exert significant control over the Content.

23.     Although Pond5 has the right to reject any Content, we have no control over or knowledge of the creation of the Content. Pond5 does not have any input as to what Content is uploaded by a Contributor. Rather, the Contributor has sole control over what he or she uploads to Pond5. Pond5 does not edit Content that is uploaded to our Website by Contributors. Pond5 conducts only a cursory review of material and accepts or rejects it based almost entirely upon a brief technical qualitative assessment.

24.     Pond5.com is a crowd-sourced marketplace. Every year, tens of thousands of Contributors upload millions of items of Content and thousands of Customers download hundreds of thousands of items. As the host of the marketplace, while Pond5 utilizes numerous mechanisms to prevent, identify, and investigate infringement, our practical ability to prevent infringement is limited. Pond5 cannot prevent a Contributor from uploading stolen items any more than YouTube, iStock, or Google Images can.

25.     Sound effects are particularly difficult to monitor. They are usually of a short duration, there is often a huge volume of similar sounds, and the sound effects are usually not distinctive. Moreover, unlike some music and video, there is no digital library or similar database from which to compare a particular sound effect to well-known copyrighted works.

DECLARATION OF THOMAS CRARY
IN SUPPORT OF DEFENDANT POND5 INC.'S
MOTION FOR SUMMARY JUDGMENT - 6
(3:15-cv-05696 RBL)

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

26.     I examined takedown notices that were received by Pond5 between 2012 and 2016. During that time period, to the best of my knowledge and based upon a review of our records, Pond5 received twenty notices from claimed content owners or their representative alleging that infringing Content was posted on pond5.com. In each of those 20 cases, Pond5 removed the content that was allegedly infringing. In most cases, the contributor was also banned from using the Website. In some cases, Pond5 decided not to ban a contributor, either because the possible infringement appeared to be accidental, Pond5 believed there to be a significant likelihood that there was no infringement, or the contributor had a track record of posting substantial material over a significant amount of time without any accusations of infringement. The decision to ban a contributor is made on a case-by-case basis with input from management based upon the particular circumstances.

27.     With respect to repeat infringement, in the rare instance of a repeat copyright infringer, Pond5's policy and practice is to ban repeat infringers. This policy is implemented in several ways. First, Pond5 bans any contributor that it concludes engaged in previous acts of infringement. Second, Pond5 often bans contributors based upon a single act of infringement, reducing the possibility that the contributor can ever become a repeat infringer. Third, in cases where Pond5 suspects infringement, it conducts an investigation, which includes an examination of whether the user might have been previously banned and re-entered the website under an alias.

28.     With the possible exception of ckennedy342, Pond5 has never become aware of a contributor that conducted repeat infringement. With respect to ckennedy342, consistent with Pond5's policies, he was banned from the Website immediately upon receipt of the takedown letter from the plaintiff's attorney.

29.     My attorneys provided me with audio files that were provided to them by Mr. Hempton's attorney during the course of this lawsuit. It is not clear to me exactly what these audio files are, besides being works that are apparently owned by Mr. Hempton. It does not

DECLARATION OF THOMAS CRARY
IN SUPPORT OF DEFENDANT POND5 INC.'S
MOTION FOR SUMMARY JUDGMENT - 7
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

appear to me that Mr. Hempton has asserted that these audio files represent the files that were illegally uploaded by ckennedy342 because the files produced in this litigation are, for the most part, significantly longer than the clips posted by ckennedy342. Rather, it appears as though these files represent all or a significant portion of Mr. Hempton's copyrighted library. I can only speculate that Mr. Hempton contends that portions of some or all of these larger files were uploaded by ckennedy342. If so, I am unaware of any document provided by Mr. Hempton that identifies the specific portions of these large audio files that he contends were uploaded by ckennedy342.  Unfortunately, Pond5 does not have any method available to it that would allow me to review one of these larger files and identify small portions of it that may have been uploaded as a single clip by ckennedy342. We can, using our duplication detection software, compare the full tracks to our entire library and to the clips that were uploaded by ckennedy342, but that will only identify exact duplicates. We did, in fact, run our duplication software on ten of the audio files that we received and there were no matches.

30.   Pond5 does not engage in advertising, directly or indirectly, that encourages infringement. Nor do we otherwise encourage infringing activity. Pond5's success rests significantly upon our reputational strength among Contributors and in the general marketplace. Pond5's reputation would be severely damaged if we welcomed, encouraged, or even tolerated infringement. I am unaware of any information suggesting that pond5.com hosts a perceivable volume of infringing Content.   Pond5 rarely receives complaints involving alleging infringement.

31.   With respect to the sales of Content uploaded by ckennedy342, there were no irregular patterns or unusual numbers of sales that would suggest that Customers' purchases were based upon the allegedly infringing nature of the Content. Rather, the sales occurred in the normal course of business without any appearance that they had any connection to the alleged infringement.

DECLARATION OF THOMAS CRARY
IN SUPPORT OF DEFENDANT POND5 INC.'S
MOTION FOR SUMMARY JUDGMENT - 8
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1
2
3       I declare under penalty of perjury under the laws of the United States that the foregoing is
4  true and correct, and that this Declaration was executed on April 21, 2016, at New York, New
5  York.
6
7                                                    _____
8                                                    Thomas Crary
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DECLARATION OF THOMAS CRARY
IN SUPPORT OF DEFENDANT POND5 INC.'S
MOTION FOR SUMMARY JUDGMENT - 9
(3:15-cv-05696 RBL)

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I electronically filed the foregoing with the Clerk of the Court using the CM/CF system which will send notification of such filing to the following:

> Cynthia J. Heidelberg
> BRESKIN JOHNSON & TOWNSEND PLLC
> 1000 Second Avenue, Suite 3670
> Seattle, WA 98104
> 206-652-8660
> Email: cheidelberg@bjtlegal.com
>
> Nicholas E. D. Power
> LAW OFFICEOF NICHOLAS POWER
> 540 Guard St., Ste 140
> Friday Harbor, WA 98250
> 360-298-0464
> Email: nickedpower@gmail.com
>
> Roger M. Townsend
> BRESKIN JOHNSON & TOWNSEND PLLC
> 1000 Second Avenue, Suite 3670
> Seattle, WA 98104
> 206-652-8660
> Fax: 206-652-8290
> Email: rtownsend@bjtlegal.com

DATED this 21 day of April, 2016.

/s/ Larry E. Altenbrun
Larry E. Altenbrun, WSBA #31475

DECLARATION OF THOMAS CRARY
IN SUPPORT OF DEFENDANT POND5 INC.'S
MOTION FOR SUMMARY JUDGMENT - 10
(3:15-cv-05696 RBL)

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555