**THE HONORABLE RONALD B. LEIGHTON**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GORDON HEMPTON,

        Plaintiff,

v.

POND5, INC., A DELAWARE CORPORATION; AND POND5 USER CKENNEDY342, A CORPORATION OR INDIVIDUAL OF TYPE UNKNOWN,

        Defendants.

No.: 3:15-cv-05696-RBL

**REPLY IN SUPPORT OF DEFENDANT POND5, INC.'S MOTION FOR SUMMARY JUDGMENT**

POND5, INC.'S SUMMARY JUDGMENT REPLY - i
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

## I. INTRODUCTION

Defendant Pond5, Inc. ("Pond5") is entitled to summary judgment. Plaintiff's opposition relies heavily upon inadmissible evidence and consistently attempts to impose a duty to investigate that is non-existent under the DMCA. Though the plaintiff may be understandably upset that his work was uploaded to pond5.com, the Digital Millennium Copyright Act ("DMCA") was enacted to protect entities like Pond5, which operates its marketplace with significant care devoted to the prevention of piracy.

## II. AUTHORITY

### A. Plaintiff's Reliance Upon the Communications Decency Act is Misplaced.

In his introduction, the plaintiff repeatedly refers to the Communications Decency Act ("CDA"), 47 U.S.C. § 230. (Pl.'s Opposition to Motion for Summary Judgment (hereinafter "Opposition") at 1-2). In his argument, plaintiff does not address the CDA. (*See id.* at 9-21). It is unclear whether the plaintiff intended to argue that summary judgement should be denied pursuant to the CDA. In any event, Pond5 brought this motion under the DMCA and the CDA specifically provides that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). The Ninth Circuit has rejected attempts to conflate the requirements of the DMCA and the CDA. *See Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003). Plaintiff's reliance on the CDA (assuming plaintiff intended to rely on it) is misplaced.

### B. Plaintiff Repeatedly Relies Upon Inadmissible Evidence of Subsequent Remedial Measures.

Throughout his opposition, plaintiff discusses the fact that, after becoming aware of possible infringement by ckennedy342 and at least partially in response to that infringement, Pond5 instituted new fraud protection mechanisms. (See Opposition at 2:2-2:5, 7:4-7:6, 7:26-8:11, 12:14-12:16, 21:6-21:15). Plaintiff utilizes this evidence in an effort to prove culpability. (See, e.g., *id.* at 12:14-16 (arguing that the newly adopted mechanisms demonstrate that, prior to their institution, Pond5 "did indeed tolerate 'flagrant or blatant copyright infringement'")). This evidence unquestionably relates to "measures … taken that would have made an earlier injury or harm less

POND5, INC.'S SUMMARY JUDGMENT REPLY - 1
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

likely to occur." FRE 407. The evidence is being used to show culpable conduct. It is not admissible. FRE 407. Beyond showing culpability, Plaintiff has not articulated any other basis upon which it should admitted. Pond5 moves to strike this proffered evidence as required by CR 7(g), and requests that the Court deem this evidence inadmissible.

Even if the Court finds that evidence of Pond5's subsequent remedial measures are somehow admissible, that evidence simply demonstrates that Pond5 is a responsible service provider. The unrebutted evidence demonstrates that, prior to the actions of ckennedy342, Pond5 had never encountered a user that was previously banned from its website and then returned under an alias. (*See* Motion for Summary Judgement ("Motion") at 9:15-9:18). Upon learning of ckennedy342's alleged infringement and his use of aliases, Pond5 took steps to prevent others from engaging in similar acts. Pond5's actions are wholly consistent with the evidence presented in this case – Pond5 routinely takes affirmative steps to prevent infringement and protect its reputation.

The subsequent remedial measures that plaintiff relies upon include checking identification, checking social media presence, and utilizing Audio Magic. (*See, e.g.,* Opposition at 21:6-21:15). Each of these are manual processes that must be performed by a Pond5 curator for every new Contributor. (Second Crary Dec. ¶ 1). These are not measures that could be easily automated. (*Id.*). The DMCA expressly states that safe harbor eligibility cannot require that a service provider monitor its service or affirmatively seek facts indicating infringing activity. 17 U.S.C. § 512(m)(1). By any standard, these measures involve the monitoring of Pond5's service and, as such, cannot be required for DMCA protection. Therefore, plaintiff's argument fails.

Plaintiff also includes an exhibit that is inadmissible under FRE 407. (*See Townsend Dec. Exh. 10*). That document[1] was drafted earlier this year. (Second Crary Dec., Exh. 1 ("Crary Dep."), at 135:23-136:7). The document specifically discusses measures that Pond5 is taking or could take to prevent piracy because certain corporate clients had requested that Pond5 indemnify them against copyright infringement. (Townsend Dec. Exh. 10 at PON 000300). Included in the

---

[1] Plaintiff mistakenly included two documents in Exhibit 10 to the Townsend Declaration. This discussion involves the second document, which is Bates stamped as PON 000300-000309.

POND5, INC.'S SUMMARY JUDGMENT REPLY - 2
(3:15-cv-05696 RBL)

document is a discussion of the verification processes that Pond5 enacted in response to this lawsuit, which, as discussed above, are subsequent remedial measures. Pond5 moves to strike this exhibit. However, even if it is considered, the document is an internal memorandum that discusses a wide variety of anti-piracy measures being considered. Once again, it demonstrates Pond5's anti-piracy commitment. Moreover, the document is a memorandum drafted by one person; it is not a statement made by Pond5 and cannot be considered to represent Pond5's policies or positions. Tom Crary, being deposed as the corporate representative under FRCP 30(b)(6), described the document well in his deposition:

> I think we've talked in great depth about what we're currently employing. I think this document is more talking about what we could additionally move to, and it's a recommendation from one person, Mike Pace, who has less legal background than any person in this room by far. He's a guitarist. So I wouldn't take his DMCA arguments too seriously.

(Crary Dep. at 134:15-135:3).

### C. PLAINTIFF DID NOT PROVIDE A PROPER DMCA NOTICE.

Plaintiff refuses to concede that he never provided a DMCA-compliant notice to Pond5 and even characterizes Pond5's arguments on the issue as a "plea for lenity." (Opposition at 8:12-10 & n.7). Plaintiff argues that his attorney's June 24, 2015 letter was compliant because it identified 20 registered copyrights and identified ckennedy342, Pond5 responded to the letter by removing ckennedy342's content, and Pond5's Chief Financial Officer later "admitted that Pond5 readily connected ckennedy342's infringing content with Mr. Hempton's work and apologized for the infringement." (*Id.*). Plaintiff is mistaken.

A DMCA notice must provide sufficient details for a service provider to reasonably identify the infringing material and the infringed-upon works. 17 U.S.C. § 512(c)(3)(A). Counsel's letter of June 24 identified ckennedy342 but did not identify a single clip that he had posted by name, link or other means. Similarly, plaintiff provided a list of registered copyrights, but did not provide the material that was infringed upon or any means by which Pond5 could identify that material.[2]

---

[2] It is important to note that, to the extent that ckennedy342 uploaded plaintiff's work, he did so by first cutting small clips from much larger sound files that were owned by plaintiff and posting these clips. Without expressly stating it, plaintiff seems to suggest that it would be a simple task to recognize that clips uploaded by ckennedy342

POND5, INC.'S SUMMARY JUDGMENT REPLY - 3
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

Plaintiff produced no evidence explaining how Pond5 was supposed to know which clips posted by ckennedy342 were infringing or to compare those clips to his works.

The importance of compliance with DMCA notice requirements cannot be overstated. "Accusations of alleged infringement have drastic consequences: A user could have content removed, or may have his access terminated entirely. If the content infringes, justice has been done. But if it does not, speech protected under the First Amendment could be removed." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112 (9th Cir. 2007). No matter how vociferously the plaintiff claims otherwise, the June 24 letter did not provide Pond5 proper notice of infringing Content, nor did it provide Pond5 with sufficient notice as to the work that was allegedly infringed upon. That Pond5 removed Content upon receipt of the letter from plaintiff's attorney does not alter the insufficient nature of the notice letter; rather, it simply demonstrates Pond5's anti-piracy commitment and the importance of maintaining its reputation among artists.

Plaintiff's attempt to utilize a letter (Townsend Dec., Ex. 14), sent after this litigation was commenced, to demonstrate compliance with DMCA notice requirements fails. Initially, the letter, which is a settlement offer, is inadmissible pursuant to FRE 408 because it is a "statement made during compromise negotiations about the claim" and is being used "either to prove or disprove the validity . . . of a disputed claim."[3] However, even if it is considered, it does not represent an admission "that Pond5 readily connected ckennedy342's infringing content with Mr. Hempton's work," as alleged by plaintiff. Rather, the letter states:

> Of the $4,063 in downloads, it is hard to know exactly how much of your stolen content was downloaded vs. content that was potentially stolen from other artists. We performed a sampling exercise of all downloads of ckennedy's content and narrowed down based around "nature" themes, we believe that 5-10% of the downloaded content associated with the ckennedy username could have been or likely was originally yours.

(Opposition, Ex. 14). The letter does not "readily connect" ckennedy342's downloads to Mr. Hempton's work. Rather, it recognizes that Mr. Hempton creates "nature" sounds and, in an effort

---

were copied from plaintiff. This is not true. (Second Crary Dec. ¶ 8). It was made impossible by the fact that plaintiff did not identify the infringing clips or the infringed upon clips. (*Id.*). Pond5 does not claim that plaintiff's notice letter failed for some technical reason – his notice letter failed to provide sufficient information for Pond5 to reasonably identify the infringing work or the infringed upon work.
[3] Defendant moves to strike the letter. CR 7(g).

POND5, INC.'S SUMMARY JUDGMENT REPLY - 4
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

to compensate the plaintiff for his claimed loss, assumes that all sales from ckennedy342's clips that were of a similar "nature" sound were owned by Mr. Hempton. Mr. Crary, the author of the email, confirms that (1) he never was able to determine which of ckennedy342's clips were infringing, (2) in the quoted email, he merely assumed that any of ckennedy342's clips that had a title indicating that it was of a nature theme were stolen from Hempton, (3) he made this assumption solely for purposes of settlement of this lawsuit, and (4) he does not concede that every clip uploaded by ckennedy342 containing a "nature" title was likely owned by plaintiff. (Second Crary Dec. ¶ 3). The FRE 408-protected email is hardly an admission that Pond5 readily connected ckennedy342's clips to plaintiff's work and it cannot possibly serve as evidence of a proper DMCA notice letter.

### D. Plaintiff's Audio Magic Arguments Are Not Convincing.

Plaintiff's Opposition includes a Declaration of Matthew Johnston ("Johnston Dec."). The Johnston Dec. opines that Mr. Hempton's recordings "are of sufficient length and sonic complexity to be identified by Audible Magic software assuming that the claimed specifications published by Audible Magic correctly describe the functionality of the software" and that, "if correctly used," Audible Magic "would have identified Mr. Hempton's recordings as duplicates if compared to a database of known recordings." (Johnston Dec. ¶¶ 13, 14).

Whether Audible Magic would have identified plaintiff's recordings is of very limited relevance to this motion. First, while Johnston declares that Audible Magic is capable of identifying plaintiff's recordings, plaintiff produced no evidence demonstrating that plaintiff had uploaded his audio content to Audible Magic, which would be required for any identification to occur. Moreover, while Johnston declares that plaintiff's audio is of "sufficient length and sonic complexity" to be identified by Audio Magic, he makes no such assertion with respect to the much shorter clips uploaded by ckennedy342. Third, plaintiff articulates no legal authority for the proposition that Pond5 had an obligation to utilize Audible Magic. In contrast, the DMCA specifically states that a service provider is *not* required to monitor its service or affirmatively seek facts indicating infringing activity. 17 U.S.C. § 512(m)(1). Fourth, plaintiff produced no evidence

POND5, INC.'S SUMMARY JUDGMENT REPLY - 5
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

demonstrating that there was an industry standard for sound effects to be verified through Audible Magic. Fifth, there *was* no such industry standard in 2014 and there is no such industry standard today. (Second Pace Dec. ¶ 1). Pond5 does not utilize Audible Magic for sound effects because the database is not considered large enough for Pond5 to rely upon it. (*Id.*).

E. **POND5 SATISFIES THE THRESHOLD CONDITIONS.**

Plaintiff argues that Pond5 fails to meet the threshold requirements of 17 U.S.C. § 512(i), arguing that Pond5 did not adequately inform its users of the repeat infringer policy and did not reasonably implement the policy. (Opposition at 11-13). These arguments are unavailing.

1. Pond5 Conveyed Its Policy.

With respect to Pond5's repeat infringer policy, plaintiff argues that Pond5 does not have a written policy that expressly addresses *repeat* infringement that is communicated to its users and, according to plaintiff, *ipso facto*, Pond5 does not and cannot meet this requirement. (*Id.* at 11-12). The argument fails. Pond5 includes numerous provisions in its Terms of Use, Contributor Agreement, and License Agreement prohibiting copyright infringement. (Motion at 2-3). Pond5 also requires its users to enter into an agreement where Pond5 may terminate use for any reason, including breach of the terms of the agreement. (*Id.* at 13). The Terms of Use state:

> We may at our sole discretion terminate or limit anyone's access to or use of the Website at any time and for any reason without prior notice. In addition, we may immediately terminate or limit your access to or use of the Website, any pre-paid credits or subscription and/or any Evaluation License without notice, if you fail to comply with any provision of these Terms of Use or any other agreement with us.

(Crary Dec., Exh. 1 at 3).

Thus, Pond5 expressly and pervasively prohibits copyright violation and provides for termination in the event of any breach of its terms. Any reasonable reading of Pond5's agreements can only lead to the conclusion that a user knows or should know that he or she can and likely will be banned for repeat infringement.

That Pond5 allows for such banishment to occur for any violation of its terms, rather than specifically limiting it to repeated acts of infringement, is immaterial. *See Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1089 (C.D. Cal. 2004) (holding that a provision stating that

POND5, INC.'S SUMMARY JUDGMENT REPLY - 6
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

the provider "may, its discretion (sic), disable and/or terminate the accounts of any . . . client who is accused of infringing the rights of others" is sufficient). Plaintiff appears to suggest that this threshold requirement is not met unless users are informed of the specific criteria used by the service provide with respect to repeat infringement. This argument was previously rejected by this court. *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1102 (W.D. Wash. 2004) (stating that the threshold requirement is "not so exacting" and holding that the provider "need only put users on notice that they face exclusion from the service if they repeatedly violate copyright laws.").

Plaintiff's argument that Pond5 cannot meet the threshold requirement because it does not speak in terms of <u>repeat</u> infringement is unavailing. Pond5 goes beyond the requirements of the DMCA by communicating a policy to its users that allows for termination for <u>any</u> infringement.

2. <u>Pond5 Properly Implemented Its Policy</u>.

Plaintiff contends that Pond5 failed to implement its policy because it tolerated "flagrant or blatant copyright infringement." (Opposition at 12-13). Plaintiff's argument relies almost exclusively on evidence that is inadmissible under FRE 407. (*See supra*). Additionally, plaintiff's argument cannot succeed because it would impose an affirmative duty on Pond5 to police its website, which is expressly not required. 17 U.S.C. § 512(m)(1). Finally, plaintiff purports to rely upon *Corbis* to support his argument, but conveniently fails to address the express limitations set forth in that decision. In *Corbis*, this Court stated:

> Because it does not have an affirmative duty to police its users, failure to properly implement an infringement policy requires a showing of instances where a service provider fails to terminate a user even though it has sufficient evidence to create actual knowledge of that user's blatant, repeat infringement of a willful and commercial nature.

351 F. Supp. 2d at 1104. In this case, plaintiff does not even argue that Pond5 had actual knowledge of infringement; rather, plaintiff argues that Pond5 had "red flag" awareness. (*See Opposition* at 13-15). Because plaintiff has not even alleged that Pond5 had actual knowledge, he cannot successfully argue that Pond5 fails to meet the threshold requirement.

POND5, INC.'S SUMMARY JUDGMENT REPLY - 7
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

Plaintiff also ignores critical facts. Plaintiff fails to address the fact that, from 2012 to 2016, Pond5 received twenty takedown notices and removed content in every instance. (Motion at 8). Pond5 usually bans users who infringe in the first instance and always bans them for multiple infringements. (*Id.* at 9). Pond5 always investigates cases where it suspects infringement and takes appropriate actions. (*Id.*). Plaintiff produces no evidence to rebut these key facts. Pond5 unquestionably implements its repeat infringer policy.

F. **POND5 DID NOT HAVE "RED FLAG" AWARENESS OF INFRINGEMENT.**

Plaintiff argues that Pond5 had constructive knowledge of infringement. (Opposition at 14-15). His argument overstates facts and ignores critical law.

Plaintiff's factual argument is that Pond5 learned that Hassan Kahn used an alias in May 2014 and ckennedy342 created an account in August 2014. (Opposition at 15). These facts are true. Plaintiff then states that "Pond5 admits that it tracks the IP address logins of all its users." (*Id.*). If true, of course, this would suggest that Pond5 should have connected ckennedy342 to Hassan Kahn when ckennedy342 first created an account. The allegation, however, is not true. Tom Crary testified that, as one of the measures taken in response to this incident, Pond5 <u>now</u> conducts a manual check of the IP address entered by a user when he or she first registers to determine whether that same IP address has been used by a previous user. (Crary Dep. 64:3-66:22).[4] This check was not conducted in 2014. (*Id.*). Plaintiff misstates facts in a misplaced attempt to demonstrate red flag knowledge.

Plaintiff argues that constructive knowledge should be found because ckennedy342 had a PayPal account indicating that the funds were going to Hassan Kahn, uploaded over 10,000 files, was based out of Pakistan, and had no web presence. These arguments fail because they assume that Pond5 had an obligation to investigate ckennedy342. Pond5 had no such obligation. 17 U.S.C. § 512(m)(1).

Plaintiff's attempt to use the benefit of hindsight to fault Pond5 bears close scrutiny. The fact that ckennedy uploaded over 10,000 files is not significant indicia of piracy. (Crary Dep. 90:14-

---

[4] As discussed above, this is inadmissible evidence of a subsequent remedial measure.

POND5, INC.'S SUMMARY JUDGMENT REPLY - 8
(3:15-cv-05696 RBL)

92:23, 94:22-95:6). In fact, a user who uploads thousands of files and is not reported by other users over a period of months is, in Pond5's experience, most likely to be a legitimate contributor. (*See id.;* Second Crary Dec. ¶ 4). Additionally, despite plaintiff's argument, Pond5 did not know that ckennedy342 was from Pakistan and could not have discovered that information without an investigation. (Second Crary Dec. ¶ 5). Plaintiff cannot argue that Pond5 had red flag knowledge of a fact that it would have had to investigate to learn. Moreover, even if Pond5 could somehow have known that ckennedy342 was from Pakistan, that is not a substantial indicator of piracy. (Crary Dep. 70:21-71:25). Pakistan is not a country that is widely considered to be a center of online piracy. (*Id.*). With respect to web presence, Pond5 did not check web presence for new contributors in 2014 and had no duty to do so. No case has ever held that DMCA safe harbor compliance requires a web host to verify web presence for users of the website and such a rule would be antithetical to the DMCA.

A comparison of names used in PayPal or other payment accounts to other contributors to the website is not a task that was conducted by Pond5 in 2014 and is not performed today. (Second Crary Dec. ¶ 6). This measure would require a manual search for every new contributor. (*Id.*). Pond5 has considered performing such a search as part of a verification process and concluded that it would unreliable, inefficient, and ineffective. (*Id.*). It is also, of course, not required under the DMCA. 17 U.S.C. § 512(m)(1).

Pond5 takes significant measures to prevent piracy. (Motion at 6-9). If Pond5 becomes aware of any allegation of infringement, Pond5 immediately investigates. (*Id.*). Pond5 has produced evidence proving that, in every instance where it has become aware of an allegation of copyright infringement, it has investigated and, in every instance where it has concluded that there is likely infringement, it has removed the offending content. (*Id.*). Plaintiff has produced no evidence that contradicts these critical facts.

Finally, and of critical importance, the plaintiff fails to meet the legal standard for proving "red flag" knowledge. In order to establish knowledge or awareness, there must be an awareness of the *specific infringing material*. (Motion at 16:9-18:26). Plaintiff's entire argument is that Pond5

POND5, INC.'S SUMMARY JUDGMENT REPLY - 9
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

should have discovered ckennedy342 earlier; plaintiff produced no evidence whatsoever that Pond5 had knowledge or awareness of the specific infringing material.

Plaintiff feigns outrage over Pond5's alleged failure to adequately investigate one of its 58,000 Contributors. In doing so, he utilizes the benefit of 20/20 hindsight, misstates facts, utilizes inadmissible evidence, attempts to impose a duty to investigate that is expressly forbidden under the DMCA, and completely ignores controlling law.

### G. POND5 DID NOT RECEIVE A FINANCIAL BENEFIT.

Plaintiff argues that even a small financial benefit is sufficient to satisfy this element. (Opposition at 16-19). While Pond5 agrees that any financial benefit satisfies the element, the word "benefit" cannot, as plaintiff seems to suggest, be written out of the statute. In this case, there was no financial benefit to Pond5. The minimal revenue[5] received by Pond5 from the sale of any allegedly infringing goods was dramatically offset by the costs associated with hosting the material, administering the website, and investigating ckennedy342. Plaintiff produced no evidence showing a benefit to Pond5.[6]

Plaintiff makes a strained argument that Pond5 issues evaluation licenses and that, because those clips are watermarked, they somehow amount to free advertising. Plaintiff produces no evidence to support the allegation that watermarks somehow constitute advertising, nor does he produce any evidence demonstrating a financial benefit associated with them.

Further, the benefit must be *directly attributable* to the infringing activity. In *Fung*, on which plaintiff heavily relies, the court found a causal connection because the service provider engaged in conduct that actively promoted infringement and, as such, its advertising "was tied

---

[5] The only evidence demonstrates that Pond5 received, at most, $192.25 from the sale of allegedly infringing clips. (Motion at 5:23-6:11). Plaintiff argues that Pond5 generated approximately $2,000 from the sale of ckennedy342's clips, but that includes sales where there is no evidence of infringement. Plaintiff failed to produce any evidence whatsoever to support the argument that Pond5 received more than $192.25 in income from infringing clip sales.

[6] Plaintiff attempts to make much of the fact that Pond5's Contributor Agreement calls for infringing users to forfeit their account balance and this provision was enforced against ckennedy342. Plaintiff's argument is contradicted by the fact that the financial benefit requirement is only satisfied if infringement is a "draw" to the website, *Ellison v. Robertson*, 357 F.3d 1072, 1076-77 (9th Cir. 2004), that any fair reading of the body of caselaw discussing the causal connection between financial benefit and infringement requires a showing of culpability or at least passive indifference towards infringement, and that the forfeiture provision is part of Pond5's monitoring and prevention program. A holding that this conduct could be used to defeat DMCA safe harbor protection would undermine the entire purpose of the statute.

POND5, INC.'S SUMMARY JUDGMENT REPLY - 10
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

directly to the infringing activity." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1044-45 (9th Cir. 2013); *see also BWP Media USA Inc. v. Clarity Digital Grp., LLC*, 2015 WL 1538366, at *10 (D. Colo. Mar. 31, 2015), aff'd, 2016 WL 1622399 (10th Cir. Apr. 25, 2016) (granting summary judgment because there was no evidence that the service provider marketed to advertisers by pointing to infringing content, that users considered the service provider a reliable source of infringing content, that users visited the website because it hosted infringing content, or that defendant actively promoted infringing content). In this case, there is no evidence whatsoever that any customer has ever visited pond5.com because it hosts infringing content, nor is there any evidence that Pond5 has ever promoted infringing content. There is similarly no evidence that Pond5 markets by pointing to infringing conduct and no evidence that pond5.com provides a significant source of infringing content. There is a complete absence of any causal connection between any alleged financial benefit and any infringing activity.

### H.  POND5 DID NOT HAVE THE RIGHT & ABILITY TO CONTROL.

Plaintiff's arguments that Pond5 exercises a sufficient level of control over infringing material are unavailing. Plaintiff relies significantly on website statements seeking high quality content, reserving the right to reject content, and including user "tips" for submitting Content. While Pond5 does seek quality content, provides generic advice for submitting Content on its website, and always has the right to reject content, these facts do not alter the minimal level of control exerted by Pond5. No case has ever held that statements on a website giving advice to users on how to submit Content constitutes sufficient control to eliminate the DMCA safe harbor. Plaintiff produced no evidence to rebut the facts established in Pond5's motion that Pond5 (1) plays no role whatsoever in selecting content to upload, (2) does not edit Content that is uploaded to its site by Contributors, (3) does not give detailed instructions to its Contributors regarding content or appearance, (4) "curates" sound effect content at roughly 2,500 clips per curator per day, and (5) has no human interaction with Contributor or Customer in 98% of transactions.

Plaintiff repeatedly cites to deposition testimony where Mr. Crary states that ckennedy342 was "sloppy" in his piracy and "not very smart in his attempts to avoid tracking." While plaintiff

POND5, INC.'S SUMMARY JUDGMENT REPLY - 11
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

seems to suggest that this testimony somehow defeats Pond5's DMCA protection, Mr. Crary was merely explaining that reviewing information entered by users in their PayPal accounts would usually not be effective in identifying infringement. (*See* Crary Dep. at 83:3-83:11, 117:5-117:23). Plaintiff does not and cannot argue that Pond5 had a duty to review payment information entered by Contributors and compare that information to all of its other Contributors.

Plaintiff also attempts to establish control by relying upon efforts that Pond5 undertakes to remove content or prevent infringement. This evidence cannot be used to support a showing of control. *See Viacom Int'l, Inc. v. YouTube, Inc*., 676 F.3d 19, 37 (2d Cir. 2012). For example, plaintiff argues that Pond5 requires credit attribution and includes audio watermarking as evidence of control. (Opposition at 20:13-20:17). Pond5 requires Customers to use "reasonable best efforts" to provide credit attribution to the Contributor and Pond5. (Crary Dec. Exh. 3 ¶ 15). Such credit attribution has nothing to do with exercising control over Content; it applies only to Customers that purchase and download the Content. Moreover, the purpose of credit attribution is to protect the rights of the copyright owner of the work. (Second Crary Dec. ¶ 7). Similarly, the use of watermarking is for the express purpose of maintaining copyright protection. (*See* Motion at 7:2-7:6).

Plaintiff also argues that the control element is satisfied through certain fraud protection mechanisms, including checking identification and social media presence, and using Audible Magic. (Opposition at 21:6-21:15).[7] In addition to being inadmissible subsequent remedial measures, this evidence unquestionably involves efforts to remove or block infringing content, which cannot properly be considered for purposes of establishing control.

### III.   CONCLUSION

For the foregoing reasons, Pond5 respectfully requests that this Court enter summary judgment in its favor.

---

[7] The plaintiff appears to argue that Pond5 "should have" used Audible Magic and that the control element is somehow satisfied because Pond5 did not utilize this service. The plaintiff fails to articulate how Pond5 could possibly exercise sufficient control by *not* engaging in a particular act or practice and fails to support the argument with legal authority.

POND5, INC.'S SUMMARY JUDGMENT REPLY - 12
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1     **DATED** this 20th day of May, 2016.

2                                                        NICOLL BLACK & FEIG PLLC

3

4                                                        /s/ Curt H. Feig
                                                           /s/ Larry E. Altenbrun

5                                                        Curt H. Feig, WSBA No. 19890
                                                       Larry E. Altenbrun, WSBA No. 31475

6                                                        Attorneys for Defendant Pond5, Inc.

POND5, INC.'S SUMMARY JUDGMENT REPLY - 13
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I electronically filed the foregoing with the Clerk of the Court using the CM/CF system which will send notification of such filing to the following:

> Cynthia J. Heidelberg
> BRESKIN JOHNSON & TOWNSEND PLLC
> 1000 Second Avenue, Suite 3670
> Seattle, WA 98104
> 206-652-8660
> Email: cheidelberg@bjtlegal.com
>
> Nicholas E. D. Power
> LAW OFFICEOF NICHOLAS POWER
> 540 Guard St., Ste 140
> Friday Harbor, WA 98250
> 360-298-0464
> Email: nickedpower@gmail.com
>
> Roger M. Townsend
> BRESKIN JOHNSON & TOWNSEND PLLC
> 1000 Second Avenue, Suite 3670
> Seattle, WA 98104
> 206-652-8660
> Fax: 206-652-8290
> Email: rtownsend@bjtlegal.com

DATED this 20th day of May, 2016.

> /s/ Curt H. Feig
> Curt H. Feig, WSBA No. 19890

POND5, INC.'S SUMMARY JUDGMENT REPLY - 14
(3:15-cv-05696 RBL)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555