# EXHIBIT 1

Page 164

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE
---------------------------------------------X
GORDON HEMPTON,

                Plaintiff,

    -against-

POND5, INC., A Delaware Corporation;
and POND5 USER CKENNEDY342, A
Corporation or Individual of Type
Unknown,

                Defendants.

CASE NO.: 3:15-CV-05696-DWC
---------------------------------------------X

                126 East 56th Street
                New York, New York

                August 16, 2016
                9:10 a.m.

    DEPOSITION of 30(b)(6) THOMAS CRARY - VOL. II

before Melissa Gilmore, a Shorthand Reporter and

Notary Public of the State of New York.

1   what our competitors do, as well as new
2   technology products that may become available
3   or we may develop.  And over time we adapt to
4   our processes, procedures, guidelines to always
5   be increasing quality and lowering risk.
6        Q.    And is there any specific example
7   that you can point to of modification in the
8   curatorial review that occurred upon review of
9   a competitor's curatorial review?
10             MR. ALTENBRUN:  Objection, beyond
11      the scope.
12       A.    No.  I mean, you know, I -- I mean,
13  I think the ID verification when we started
14  that was partially inspired by work that our --
15  we had learned that some of our competitors
16  were doing, but I would say that's probably the
17  only one I can think of.
18             (Plaintiff's Exhibit 19, E-Mail
19      Exchange Between Nicholas Power and Mike
20      Pace, marked for identification.)
21       Q.    The court reporter has handed you
22  what's been marked as Exhibit 19, and this is
23  an exchange between Nicholas Power and Mike
24  Pace.
25             Have you seen this document before?

1     A.    Yes.
2     Q.    Okay.  And Mike Pace is the
3  individual we talked about before who's on the
4  curatorial review team for sound; is that
5  right?
6     A.    Yes.
7     Q.    Just to go back.  You mentioned the
8  three members that are on the sound curatorial
9  review team.
10          They are responsible for more than
11 just sound effects, correct?
12    A.    They are responsible for audio, so
13 music and sound effects.
14    Q.    Right.  So those three individuals
15 do all audio?
16    A.    Yes.
17    Q.    Do you have an understanding or an
18 estimate of the percentage of the time that
19 they spend on sound effects versus other --
20    A.    Versus music?
21    Q.    Versus music.
22          MR. ALTENBRUN:  Objection, beyond
23    the scope.
24    A.    I would guess roughly two-thirds,
25 one-third music.

```
 1      Q.    So two-thirds would be music,
 2   one-third would be sound effects; is that
 3   right?
 4      A.    Yes.
 5      Q.    Drawing your attention back to
 6   Exhibit 19, do you recall when you first became
 7   aware of this exchange?
 8      A.    Yes.
 9      Q.    Okay.  When?
10      A.    When I actually saw this e-mail, it
11   was once we had received notice from -- of the
12   pending litigation.
13      Q.    Okay.  As of the time of this e-mail
14   exchange in late May 2015, shortly after that
15   time, Pond5 removed the content from
16   Ckennedy342 from the Pond5 system; is that
17   right?
18      A.    Yeah, I believe it was a month
19   later.  This is May 29th is the first page
20   here, and I believe June 29th or June 30th, we
21   ultimately removed the content.
22      Q.    When you removed the content for
23   Ckennedy, did you take any action with respect
24   to customers who had downloaded Ckennedy342's
25   content?
```

```
 1      A.    Take action with regard to the
 2   customers?  No.
 3      Q.    And did you provide the customers
 4   any notice of any sort with respect to
 5   Ckennedy's content?
 6      A.    No.
 7      Q.    And did you conduct any internal
 8   review of the customers who downloaded the
 9   content that was associated with the Ckennedy
10   file -- Ckennedy contributors?
11      A.    No.
12      Q.    And at any time since May 29, 2015,
13   have you gone and looked and determined who it
14   was that may have or did purchase content from
15   CKennedy342?
16            MR. ALTENBRUN:  Object to form.
17      A.    Yeah.  I mean, there's 10,000 files.
18   So no, we haven't looked at every single file
19   and who's downloaded them.
20      Q.    Have you looked at any files?
21      A.    No.
22      Q.    And have you conducted any
23   investigation as to who it may be that has
24   taken the Ckennedy files or what they might
25   have done with them?
```

Page 228

```
 1             MR. ALTENBRUN:  Object to form.
 2        A.   No.
 3        Q.   So you don't know whether or not,
 4   for example, Viacom could have purchased
 5   Ckennedy's content?
 6             MR. ALTENBRUN:  Object to form.
 7        A.   No.
 8        Q.   Let's look at Exhibit 9 from the
 9   prior deposition.
10             And this is the e-mail exchange that
11   you had with Mr. Hempton in October 2015,
12   correct?
13        A.   Yep.
14        Q.   So looking under -- on the first
15   page, your e-mail to Mr. Hempton, you state
16   that once you were alerted, you immediately
17   blocked the Ckennedy content user and removed
18   all content; is that right?
19        A.   Yes.
20        Q.   And at that time why did you take
21   that step?
22        A.   That's our policy is to investigate
23   all claims of infringement.
24        Q.   Okay.  And you don't have a policy
25   to take any action with respect to end users
```