EXHIBIT 6

| | |
|---|---|
| **From:** | Roger Townsend |
| **To:** | Larry Altenbrun |
| **Cc:** | Curt Feig; Cindy Heidelberg; nick power; Jamie Telegin; Jeanette Hendricks; Roger Townsend |
| **Subject:** | RE: Meet and Confer Follow UP |
| **Date:** | Thursday, September 01, 2016 8:34:26 AM |

Larry:

I respectfully disagree with your characterization of whether there is any serious dispute about whether the ckennedy/Hassan Kahn files are, in fact, Mr. Hempton's files. Pond5's effort to blame Mr. Hempton for its failure to mitigate or respond to the red flags that it had a fraudster on its system is unavailing. Pond5 has known or should have known that the files matched for months. As Pond5 has acknowledged, ckennedy/Hassan Kahn made little effort to hide his tracks. After all, the file names include the <u>precise words of Mr. Hempton's file names</u>.

My client has provided spectrum analysis of 11 files. We have identified over 100 files which contain the Quiet Planet "QP" metatags. Certainly there can be no dispute that the end user data associated with those files should be promptly produced.

As you are aware, Pond5 has had Mr. Hempton's copyrighted works for significantly longer than since early August. Mr. Hempton produced those files in February, despite the fact that no discovery was propounded on the topic. In addition, Mr. Hempton has more information to assist Pond5 in its review and comparison of Mr. Hempton's files to the files uploaded by ckennedy/Hassan Kahn and downloaded. We vigorously dispute any contention that Mr. Hempton has failed to timely respond to any discovery requests or has otherwise failed to comply with his obligations under the civil rules.

Furthermore, it will not be lost on the court that Pond5 is a well-funded company with purported expertise and sophistication in the digital audio space. Pond5, with its ample employees and technology, can conduct the same spectral analysis that Mr. Hempton can conduct and will come to the conclusion that the files are the same.

Again, there shouldn't be any dispute on the 11 files Mr. Hempton analyzed, the files with the precise file names used by Mr. Hempton and ckennedy/Hassan Kahn, and the files which contained "QP" metatags indicating Quiet Planet. Will Pond5 agree to produce any of the requested end user documents and information for any (or all) of those categories.

With regard to your August 11 conditions, I respond to each in separately below:

(1) you provide us with the audio clips that are purportedly owned by Hempton and uploaded by ckennedy342 in a manner that allows us to reasonably compare those to the files that were uploaded by ckennedy342 onto the AWS servers;

See above.

(2) we have an opportunity to analyze those clips and reach our own conclusions regarding whether ckennedy342 uploaded material that was owned by the plaintiff;

See above.

(3) the Court issues a decision denying our motion for summary judgment; and

This is not acceptable, claims and relief can be brought against the Pond5 customers. It is frankly surprising that Pond5 has taken no action to mitigate damages. Moreover, regardless of the summary judgment, Mr. Hempton has claims against the Pond5 customers.

(4) you agree to reasonable limitations on the use of such customer information, including an agreement to limit your use of the information to this lawsuit only.

The information is relevant to Mr. Hempton's efforts to prevent further infringement of his copyright and he will use it only for that purpose.

While I do not expect us to come to an agreement on the present issues, it would appear we can agree that it is appropriate to bring the matters before the court for adjudication.

Additionally, we will reach out to the court regarding availability for a call on Friday at the times you

designated.  Please keep those times open.

Yours

Roger M. Townsend
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Office: (206) 652-8660
Direct: (206) 518-6200
Fax: (206) 652-8290

IMPORTANT: This e-mail message and any attachments are confidential and may be privileged. If you are not the intended recipient please notify the sender immediately -- by replying to this message -- and destroy all copies of this message and any attachments. Thank you.

Pursuant to IRS Circular 230, please be advised that, to the extent this communication (and any attachments) contains any tax advice, it is not intended to be, and cannot be used, for purposes of avoiding penalties under the Internal Revenue Code.

**From:** Larry Altenbrun [mailto:laltenbrun@nicollblack.com]
**Sent:** Wednesday, August 31, 2016 1:26 PM
**To:** Roger Townsend <rtownsend@bjtlegal.com>
**Cc:** Curt Feig <cfeig@nicollblack.com>; Cindy Heidelberg <cheidelberg@bjtlegal.com>; nick power <nickedpower@gmail.com>; Jamie Telegin <jtelegin@bjtlegal.com>; Jeanette Hendricks <jhendricks@nicollblack.com>
**Subject:** RE: Meet and Confer Follow UP

Dear Roger:
I write in response to your email of Monday's date. In that email, you renewed your request that we disclose identifying information of customers that you contend purchased works that were owned by your client. Additionally, you requested that we disclose customers that obtained evaluation licenses of files that were allegedly owned by Mr. Hempton and you requested that we stipulate to grant your client leave to amend the complaint to add individual end users. Each of these issues is addressed below.
With respect to your renewed request for customer lists, we stand by our email of August 11, 2016. In that email, we conditionally agreed to produce customer lists and identified four conditions to such disclosure. You have never responded to that email. While you recently – some 17 months after first making allegations of infringement and over 10 months after filing this lawsuit – produced audio files that purport to match those uploaded by ckennedy342, we have not yet had an opportunity to analyze those files and compare them to the files that were uploaded by ckennedy342. Your demand that we produce customer lists without having a full and fair opportunity to analyze the files is undermined by the amount of time that you took to provide us with those files. I also note that, in another email that you sent Monday, you stated: "We dispute your characterization of when your client knew or should have known that ckennedy's content was actually Mr. Hempton." I don't know what this means, but it appears to suggest, as Ms. Heidelberg implied in an email dated July 25, that the ckennedy342 uploads are contained somewhere in the disclosure of 69 audio files from February. Nonetheless, even if that is the case, we have repeatedly

informed you that we have no mechanism to analyze the much longer tracks and identify those portions that might match the much shorter clips uploaded by ckennedy342. If you believe that we should have been able to conduct this analysis much sooner, why haven't you ever simply explained to us your reasoning? You have known for months that we believed that we had insufficient information to conduct such an analysis and you have taken no steps whatsoever to inform us why you believe we are mistaken. In any event, now that you have finally chosen to disclose the clips, we need time to determine whether, and to what extent, conditions #1 and #2 of our August 11 email are satisfied. We will conduct our analysis with reasonable diligence and will inform you promptly of our conclusions as they relate to these conditions.

With respect to your request to disclose costumers that downloaded evaluation licenses, we are willing to conditionally agree to produce such a list based upon the same four conditions set forth in our August 11 email.

With respect to your request to amend the complaint to add individual end users, we respectfully decline to consent to such an amendment. We note that your request is not merely a request to amend your complaint, but seeks to add dozens of new parties to the lawsuit and to assert new causes of action. The court issued a scheduling order in this case in February. In that scheduling order, it included a deadline for filing a motion to add parties of March 30. Your attempt to add parties comes some five months after that deadline. Moreover, you have known that there were sales of the ckennedy342 files since or shortly after this litigation was filed, when Pond5 provided your client with a spreadsheet detailing those sales. You cannot reasonably argue that your amendment is based upon new evidence. Moreover, an amendment to add parties would invariably result in significant delays in discovery and would almost certainly require the trial date to be delayed. The litigation would become significantly complicated by jurisdictional questions and other issues that have no bearing on Pond5's defenses. In short, good cause does not exist for this amendment and Pond5 will vigorously oppose such a motion.

You have requested that we provide you with available times to jointly call the court. To date, you have not provided a response to our email of August 11 and you have not provided reasonable time for us to analyze the audio files that you produced. As such, we believe that it is premature to contact the court. Nonetheless, if you insist upon doing so, I am available to participate in that telephone call on Friday between 10:30 a.m. and 2 p.m. Alternatively, we could arrange for the telephone call to take place during a break in next week's deposition of your client. Prior to that telephone call, please precisely identify the issues that you plan to raise.

Best Regards,

Larry



**Larry E. Altenbrun**
Nicoll Black & Feig, PLLC
1325 4th Ave, Ste 1650, Seattle, WA 98101
C: 206-920-5369

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. If the reader or recipient of this communication is not the intended recipient or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail and all attachments without reading or saving them in any manner.

**From:** Roger Townsend [mailto:rtownsend@bjtlegal.com]
**Sent:** Wednesday, August 31, 2016 12:01 PM
**To:** Larry Altenbrun
**Cc:** Curt Feig; Cindy Heidelberg; nick power; Jamie Telegin; Jeanette Hendricks
**Subject:** RE: Meet and Confer Follow UP

Larry:

We haven't heard from you on this matter.  We need to coordinate a time to call the court.

Thank you,
Roger

---

**From:** Roger Townsend
**Sent:** Monday, August 29, 2016 1:30 PM
**To:** 'Larry Altenbrun' <laltenbrun@nicollblack.com>
**Cc:** Curt Feig <cfeig@nicollblack.com>; Cindy Heidelberg <cheidelberg@bjtlegal.com>; nick power <nickedpower@gmail.com>; Jamie Telegin <jtelegin@bjtlegal.com>; Jeanette Hendricks <jhendricks@nicollblack.com>
**Subject:** RE: Meet and Confer Follow UP

Larry:
That is fine, but please be advised that we will move forward with a motion to the court on Thursday unless we hear otherwise.

We dispute your characterization of when your client knew or should have known that ckennedy's content was actually Mr. Hempton.

Yours,
Roger

---

**From:** Larry Altenbrun [mailto:laltenbrun@nicollblack.com]
**Sent:** Monday, August 29, 2016 1:28 PM
**To:** Roger Townsend <rtownsend@bjtlegal.com>
**Cc:** Curt Feig <cfeig@nicollblack.com>; Cindy Heidelberg <cheidelberg@bjtlegal.com>; nick power <nickedpower@gmail.com>; Jamie Telegin <jtelegin@bjtlegal.com>; Jeanette Hendricks <jhendricks@nicollblack.com>
**Subject:** RE: Meet and Confer Follow UP

Roger:

I will consult with my clients on these issues and provide a response with reasonable diligence. I note that, with respect to the audio files that you finally disclosed on August 17, after some confusion as to its contents, we had the thumb drive copied early last week and then mailed a copy of it to Pond5 later in the week. We have not had an opportunity yet to analyze the files, which will take some time. Nonetheless, I will respond to your email promptly – tomorrow hopefully. With respect to a conference with the court, it is unreasonable to schedule such a call at least until we have a reasonable opportunity to respond to your below email.

Best Regards,

Larry

|  | **Larry E. Altenbrun**<br>Nicoll Black & Feig, PLLC<br>1325 4th Ave, Ste 1650, Seattle, WA 98101<br>C: 206-920-5369 |  |
|---|---|---|

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. If the reader or recipient of this communication is not the intended recipient or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail and all attachments without reading or saving them in any manner.

**From:** Roger Townsend [mailto:rtownsend@bjtlegal.com]
**Sent:** Monday, August 29, 2016 10:54 AM
**To:** Larry Altenbrun
**Cc:** Curt Feig; Cindy Heidelberg; nick power; Jamie Telegin; Roger Townsend; Jeanette Hendricks
**Subject:** Meet and Confer Follow UP
**Importance:** High

Larry:

I am following up on our prior meet and confer on the issue of production of end user information. You client admitted that Pond5 collects end user names, addresses, email, and phone numbers, but has undertaken no effort to investigate regarding the use of Mr. Hempton's works. Now that there should be no legitimate question of fact regarding the fact that Mr. Hempton's sound files were uploaded by ckennedy/Hassan Kahn and sold on the Pond5 system to Pond5 customers, we reiterate our request for that information (and any other information regarding the end users and their purchases).

Furthermore, we intend to seek leave to amend the complaint under FRCP 15(a) to name Does. Mr. Hempton has a claim for injunctive relief and damages against those end users who obtained evaluation licenses or paid licenses through Pond5.

We respectfully request that Pond5 agree to stipulate to grant Plaintiff leave to amend the complaint to name the individual end users and for Pond5 to produce its data relevant to each of the end users in the attached list (file entitled "83 Hempton files sold by Pond5") and any evaluation licenses granted to Mr. Hempton's files in the attached list (file entitled "Evaluation License End Users").

Pursuant to the Court's order (Dkt #29), we request to arrange a telephone hearing to contact chambers at (202) 354-3330 on a single line. We are available for that call **today or tomorrow or Wednesday morning**. Please advise as to your availability.

I am, of course, available to further confer regarding the request to stipulate or otherwise discuss the substance of the motions.

Yours truly,
Roger

Roger M. Townsend
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Office: (206) 652-8660
Direct: (206) 518-6200
Fax: (206) 652-8290

IMPORTANT: This e-mail message and any attachments are confidential and may be privileged. If you are not the intended recipient please notify the sender immediately -- by replying to this message -- and destroy all copies of this message and any attachments. Thank you.

Pursuant to IRS Circular 230, please be advised that, to the extent this communication (and any attachments) contains any tax advice, it is not intended to be, and cannot be used, for purposes of avoiding penalties under the Internal Revenue Code.

| | |
|---|---|
| From: | Larry Altenbrun |
| To: | Cindy Heidelberg |
| Cc: | nick power; Roger Townsend; Jeanette Hendricks; Curt Feig; Jamie Telegin |
| Subject: | Hempton v. Pond5 - Request for Customer List |
| Date: | Thursday, August 11, 2016 6:51:55 PM |
| Attachments: | image002.png |
| | image003.png |

Dear Cindy:

We write to address your continuing request that Pond5 produce documentation identifying the customers that downloaded Mr. Hempton's work. In summary, and as explained in detail below, we are willing to provide you with customer information, but only after: (1) you provide us with the audio clips that are purportedly owned by Hempton and uploaded by ckennedy342 in a manner that allows us to reasonably compare those to the files that were uploaded by ckennedy342 onto the AWS servers; (2) we have an opportunity to analyze those clips and reach our own conclusions regarding whether ckennedy342 uploaded material that was owned by the plaintiff; (3) the Court issues a decision denying our motion for summary judgment; and (4) you agree to reasonable limitations on the use of such customer information, including an agreement to limit your use of the information to this lawsuit only.

We have repeatedly stated that it is premature to demand that we identify customers because, despite many requests, the plaintiff has failed to produce substantial evidence demonstrating that he is the owner of those audio clips that were in fact uploaded by ckennedy342 and of which plaintiff *claims* ownership. Despite your recent disclosures, it remains our position that the plaintiff has yet to demonstrate ownership. Further, we are perplexed by your refusal to simply provide us with the audio clips that he purports to own. If the plaintiff owns these clips and they were stolen by ckennedy342 and uploaded to Pond5's website, there is absolutely no reason for you to refuse to simply provide the clips to us so that we can conduct our own comparison between plaintiff's copies of the files and the files that were actually uploaded by ckennedy342.

In February, plaintiff produced over 40 hours of audio recordings that you characterized as "copyrighted source audio belonging to our client." This disclosure includes 69 files and contains over 40 hours of audio. We have repeatedly informed you that the disclosure does not provide Pond5 with any reasonable method of comparing it to the files uploaded by ckennedy342 in order to determine which files uploaded by ckennedy342 were possibly owned by your client.

On July 19, we received a table, which was described by you as containing tracks that (1) were uploaded by ckennedy342, (2) involved sales from Pond5, and (3) were owned by the plaintiff. Counsel stated: "We allege that the following files and data from Ckennedy/Mr. Kahn were infringements of Mr. Hempton's copyrighted works." The table included titles of ckennedy342's clips along with titles of clips that are allegedly owned by the plaintiff. The table included 87 titles. We note that the July 19 disclosure, which came some 16 months after your client first made allegations of copyright infringement, was the very first time that you or your client had ever provided us with a list of files that he contends were uploaded by ckennedy342 and owned by Mr. Hempton. Of course, the actual clips that are allegedly owned by the plaintiff were not produced then and never have been.

We responded to your July 19 disclosure by email on July 21, asking for the "audio files that match those identified in the table." We sent you another email on July 25, again stating that the "plaintiff has <u>never</u> produced evidence for us to independently confirm which files were owned by him."

Last week, you provided a declaration from Mr. Hempton. The declaration states that ckennedy342 uploaded 821 tracks that were owned by Hempton and that, of those 821 tracks, there were sales associated with 114. Mr. Hempton declares that he performed a wave form display and spectrum analysis of 11 of the 114 allegedly sold files and concluded that each of those matched a track that was purportedly owned by him. The declaration includes printouts of the wave form display and spectrum analysis for those 11 tracks. Based upon this limited analysis, Mr. Hempton apparently concludes that all 821 tracks were, in fact, stolen from him.

There are many reasons why we remain unable to conclude that the 821 tracks that were uploaded by ckennedy342 and identified in Mr. Hempton's declaration were owned by him. Below, we identify some of those reasons:

- Pond5 is entitled to conduct its own independent analysis of the audio files that you purport (a) are owned by plaintiff, and (b) were uploaded by ckennedy342. In doing so, we are entitled to examine the very same data that the plaintiff utilized to reach his conclusions. We are not required to conclude that there were some 821 illegal uploads based solely upon a limited analysis conducted by the plaintiff himself, no matter how much expertise he may have in the area. Of course, as we have stated many times, you have prevented us from conducting our own independent analysis because you have refused to disclose or provide Pond5 with the audio clips that plaintiff purportedly owns. We have been requesting these files for months and your failure to produce this evidence is startling. Your failure to even provide us with a reason for not producing the actual audio files is also perplexing.

- Mr. Hempton did not, apparently, conduct any analysis whatsoever of 810 of the 821 tracks that were identified. His declaration states simply that he identified the 821 tracks by reviewing the spreadsheet provided by Pond5. There is no indication that he conducted any analysis of 810 of the 821 tracks that are contained in his spreadsheet. In fact, the declaration doesn't even state that he listened to these tracks. It is our opinion that simply reviewing the 10,000+ names on a spreadsheet and picking out files he believes he owns based on file name or the like, without any further analysis, is inherently flawed and unreliable.

- Plaintiff's allegations of copyright infringement have constantly changed during the past 16 months. If we limit this issue to only clips involving sales, just in the past few weeks, you sent one table that identified 87 clips and a second that identified 114 clips. At various times, you have made allegations of "thousands" of copyrighted clips being offered for sale, to 138 such clips, to, most recently, 821 clips.

- Because you have failed to produce the clips that were owned by plaintiff, you have prevented us from conducting our own analysis of the clips. However, even the limited evidence available to us presents some objective data that raises serious questions about the reliability of the plaintiff's conclusions. For example, the third file listed in both the July 21 table and the spreadsheet attached to plaintiff's declaration, which is titled "Owl Hoot," was previously identified by the plaintiff as matching the plaintiff's file "QP01 0060 Deciduous forest owl hoot.wav." "Owl Hoot" is 4.6 seconds in length. According to Mr. Hempton's website (https://quietplanet.com/products/essentials.pdf), the corresponding file he contends is identical to "Owl Hoot" is only 3 seconds in length. Perhaps there is a valid explanation for this and other apparent discrepancies, but this highlights the need for plaintiff to provide us with the audio tracks so that we can conduct our own analysis.

- Of the 27 tracks that were, without explanation, somehow added between July 19 and last week, none of those were included in the 11 samples that the plaintiff purportedly analyzed and provided to us. Plaintiff has not provided us with any rationale for his selection of the 11 files he analyzed and his selection of those files raises questions regarding the reliability and predictive capability of his approach. The newly added tracks, with very few exceptions, involve a different naming sequence than the previous ones. In particular, the newly added tracks almost always capitalize the first letter of every word (e.g. Thunder Booming) whereas the previous tracks almost always capitalize only the first letter of the first word (e.g., Thunder distant). Again, this raises questions of reliability.

- The new spreadsheet does not contain names of the Hempton file that corresponds to the allegedly stolen file, whereas the previous table did. Thus, with respect to the 27 newly added clips, plaintiff has not provided us with the corresponding name of the Hempton clip.

For the foregoing reasons, we do not believe that the plaintiff has produced sufficient evidence for Pond5 to identify which tracks are "Gordon Hempton's sound files." As a result, plaintiff has simply failed to provide sufficient evidence for Pond5 to identify any customer that purchased licenses of sound files that were owned by the plaintiff. Obviously, as we have stated for months, plaintiff can probably avoid further disputes over these issues by simply producing the audio clips that he contends he owns and that correspond to the clips that were uploaded by ckennedy342. You have never provided us with any reason for your refusal to provide us with such clips and, without them, we are unable to reach any conclusions regarding your allegations of copyright infringement.

As you know, Pond5 has moved for summary judgment based upon a safe harbor under the Digital Millennium Copyright Act. The DMCA was enacted to protect companies like Pond5, which has very limited control over an individual user's decision to upload infringing material. Pond5 is entitled to protection under the DMCA and we believe that we will prevail on our motion for summary judgment. Even if we don't prevail on summary judgment, we are confident that the DMCA defense will succeed at trial. In any event, we are unaware of any provision under the DMCA that requires Pond5 to disclose its customer list. The DMCA requires Pond5 to remove allegedly offending material, which it did (despite the fact that a proper takedown letter was never sent), but the DMCA does not require Pond5 to contact

customers or provide an alleged copyright owner with a list of customers. As such, we are unwilling to provide any customer list until after the court issues a decision on our summary judgment motion.

While we recognize that plaintiff is entitled to wide latitude in seeking discovery, we strongly believe that the potential probative value associated with contacting customers is minimal and is outweighed by the damage that such contact could cause to Pond5. This is especially true under the present circumstances, where Pond5 is awaiting a decision on its DMCA defense, plaintiff's claims are nothing more than allegations, and the plaintiff has, despite many requests, refused to simply disclose the audio files that he purportedly owns in a manner that allows Pond5 to reasonably analyze those files.

In light of the foregoing, we will conditionally agree to produce customer lists. The conditions are as follows:

> (1) Plaintiff produces the audio files that he contends he owns and that correspond to the 821 files that were uploaded by ckennedy342. These files must be produced in a manner that reasonably allows Pond5 to identify which file corresponds to which upload by ckennedy342, such that Pond5 can reasonably conduct its own analysis.
>
> (2) Pond5 conducts an independent analysis and reaches its own conclusions that ckennedy342 uploaded material that was owned by the plaintiff;
>
> (3) The Court issues a decision denying, in whole or in part, Pond5's motion for summary judgment. We understand that you might have some concerns about agreeing to effectively delay this discovery until after the Court issues a decision. To the extent that discovery deadlines must be extended for purposes of conducting discovery associated with the customer list, we will agree to such extensions;
>
> (4) Plaintiff agrees, in writing, to limit his use of the customer list to purposes related solely to this lawsuit.

We also caution you that, in the event that the plaintiff contacts Pond5's customers, he needs to be very careful about what is communicated to those customers. If the plaintiff makes defamatory statements, tortiously interferes with Pond5's contractual relations, or otherwise breaches any duties owed to Pond5, he will be subject to damages and Pond5 will pursue him vigorously.

Please note that our conditional offer to disclose the customer lists is made for purposes of resolving this discovery dispute without the Court's involvement. If you decide to involve the Court in this issue, we reserve the right to seek alternative relief, including, without limitation, a ruling that we are not required to disclose the identity of customers in any circumstances.

We look forward to hearing from you.

Best Regards,

Larry

**Larry E. Altenbrun**
**Nicoll Black & Feig PLLC**
**1325 Fourth Ave., Suite 1650**
**Seattle, WA 98101**
**P: 206-838-7541**
**C: 206-920-5369**
**F: 206-838-7515**

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. If the reader or recipient of this communication is not the intended recipient  or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner.

**From:** Cindy Heidelberg [mailto:cheidelberg@bjtlegal.com]
**Sent:** Friday, August 05, 2016 9:29 AM
**To:** Larry Altenbrun
**Cc:** nick power; Roger Townsend; Jeanette Hendricks; Curt Feig; Jamie Telegin
**Subject:** RE: Hempton v. Pond5 Meet and Confer

Larry,

I write to follow-up on two matters we discussed below:

> **1) Sound Files**

As stated below, we continue to disagree with your assertion that there can be any reasonable dispute – especially following our production of Mr. Hempton's sound files – that the sound files uploaded by ckennedy and posted for sale by Pond5 are Mr. Hempton's copyrighted works. However, you have asked for additional proof and we stated that we will produce such proof.

Attached is a declaration by Mr. Hempton containing two exhibits: 1) a spreadsheet identifying tracks uploaded by ckennedy that are Mr. Hempton's; and 2) a wavelength and spectrum analysis on a sample of these tracks showing that the "thumbprint" of the tracks Pond5 held out for sale are sonically identical and are all, indeed, Mr. Hempton's copyrighted works.  This should remove any remaining "reasonable dispute" that the ckennedy sound files offered for sale on Pond5 are not, in fact, Mr. Hempton's sound files.

> **2) Identity of End Users**

Pond5 has taken the position that our request for the identity of the end users (i.e. – the identity of customers who downloaded the infringing works) is premature until Plaintiff produced additional proof demonstrating that the works are indeed infringing.

We have now produced that additional proof, and accordingly, again request that Pond5 disclose the identities of the end users. Pond5 has no legitimate objection to doing so.  I think you know that Pond5's assertion that the identity of the end users is somehow not relevant to the lawsuit will not hold up. As I stated before, we hope to resolve this issue amicably, but will not hesitate to involve the court in obtaining the identity of the end users and seeking injunctive relief against those end users to prevent further dissemination of our client's copyrighted works.

Thanks,

Cindy


Cindy Heidelberg
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel.  206-652-8660
Fax  206-652-8290

CONFIDENTIAL: This email is intended for the recipient only and may contain confidential or privileged information. If you are not one of the intended recipients, please do not read the email and delete the email and all attachments.

**From:** Cindy Heidelberg
**Sent:** Monday, July 25, 2016 4:25 PM
**To:** 'Larry Altenbrun'
**Cc:** nick power; Roger Townsend; Jeanette Hendricks; 'Curt Feig'; Jamie Telegin
**Subject:** RE: Hempton v. Pond5 Meet and Confer

Larry,

Thanks for your response. A few thoughts on each of the topics:

**Regarding Mr. Hempton's sound files**, we dispute your characterization of what Plaintiff has produced and proven in this case and what is in dispute. As you know, Mr. Crary originally produced a list to Mr. Hempton of the sound files uploaded by ckennedy that he believed to be Mr. Hempton's copyrighted works.  In February, as you note in your earlier email, Plaintiff produced HEMP000001-000069, which are copyrighted source audio belonging to our client. This disclosure included 69 files, identified with an index provided that contains the "Wav File Name." The disclosure contains over 40 hours of audio.  Pond5 may dispute, as I understand that you are, that it has a reasonable method of comparing the files uploaded by ckennedy with the audio Plaintiff has produced. But that should not be confused with Mr. Hempton failing to produce such evidence.

In any event, we recognize that you have requested, partially in light of the large size of the audio files already produced, more specific proof of which of the files on Pond5's site were Mr. Hempton's copyrighted works of authorship.  Again, we will provide this additional evidence, but are not able to do so until Mr. Hempton returns from his vacation.

**Regarding the identity of end users**, we continue to assert that Pond5 has not provided a sufficient legal basis for resisting efforts to provide Plaintiff with the identity of end users. I recognize that Pond5's position is that Plaintiff must produce additional evidence of which of Pond5's sales were of Mr. Hempton's copyrighted works before the end users become relevant. As stated above, additional evidence will be forthcoming. But beyond that, Pond5 has asserted no legitimate objection to producing the end users' identities. In its discovery responses and this email correspondence, Pond5 has asserted only that the identity of the end users is not relevant to this matter.  But relevance is a low threshold, and the identity of the end users of Mr. Hempton's copyrighted works is *entirely* relevant to his claim of copyright infringement.  We're happy to have continued discussions to see if this issue can be resolved amicably, but we will not hesitate to seek court intervention on this subject should it become necessary.

**Regarding the metadata,** please keep up apprised of those efforts.

**Regarding the discovery schedule** thank you for considering the request and accommodating travel schedules. We accept your proposed amended dates, which are: "1) we agree to move the deadline for plaintiff to respond to both sets of discovery to Friday, September 2; (2) we move the plaintiff's deposition to Thursday, September 8; and (3) we stipulate to extend the expert disclosure deadline to Tuesday, October 18." We will update our calendars accordingly.

Don't hesitate to reach out via email or phone if you wish to discuss these topics further.

Thanks,

Cindy


Cindy Heidelberg
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel.  206-652-8660
Fax  206-652-8290

CONFIDENTIAL: This email is intended for the recipient only and may contain confidential or privileged information. If you are not one of the intended recipients, please do not read the email and delete the email and all attachments.


**From:** Larry Altenbrun [mailto:laltenbrun@nicollblack.com]
**Sent:** Monday, July 25, 2016 2:06 PM
**To:** nick power; Cindy Heidelberg
**Cc:** Curt Feig; Roger Townsend; Jeanette Hendricks
**Subject:** RE: Hempton v. Pond5 Meet and Confer

Good Afternoon Cindy & Nick:

I understand that Roger is out of the office so I am sending this to you.

Initially, unfortunately, there are a few statements in the below email that I must dispute so that there cannot be any assumption that we concede these points.

The statement that there is not "a reasonable dispute that the files on Pond5's system were Mr. Hempton's copyrighted works of authorship" is simply not true. The plaintiff has never produced evidence for us to independently confirm which files were owned by him. In fact, last week was the very first time that the plaintiff has even shared a list with us that identified the material uploaded by ckennedy342 that he contends were owned by plaintiff. If you contend that we are supposed to know that some of the clips that were uploaded by ckennedy342 were owned by plaintiff, you need to identify that evidence that supports your assertion. As far as we can tell, the plaintiff simply has not produced this evidence. We also note that plaintiff and his attorneys have gone from alleging pre-complaint that ckennedy uploaded "thousands" of files that were owned by plaintiff to 138 files (complaint) to 114 files (mediation) to 87 files (table provided by counsel last week). We previously assumed  that the plaintiff would have never filed this lawsuit if he could not produce evidence showing precisely what was copyrighted and what infringed those copyrights; we are no longer so sure of that and we are frustrated by your unwillingness or inability to share this evidence, especially when combined with an insistence that we should somehow have such knowledge.

I also disagree with the assertion that we haven't provided a legal basis for resisting efforts to provide you with the identity of end users. We have stated proper legal bases for this in our objections to discovery and we further described our legal position in written correspondence. It is my hope that this issue can be resolved amicably, but it is premature for us to take a formal position on the issue until you have provided a minimal amount of evidence supporting your claims.

To update you on the status of our efforts to retrieve metadata, it appears as though there might be metadata stored on the Amazon web servers that Pond5 utilizes. However,

confirming that it does exist and obtaining the metadata are not simple tasks. Pond5 is working to identify and obtain whatever metadata exists. We will update you further on this issue when we have more information, which will be later this week.

Turning to Roger's request for a 21-day extension to respond to discovery, we cannot agree to that extension but we are willing to try to work with you to accommodate plaintiff's schedule. Initially, Roger's email is unclear as to whether the request applies to both sets of outstanding discovery or only the second set of written discovery. Currently, according to my calendar, the first set of discovery is due on August 12 and the second set of discovery is due August 22. The challenge to extending the response deadlines is that the plaintiff's deposition is set for August 24 and we need these responses prior to taking his deposition. An additional concern is that the expert disclosure deadline is currently set for September 28 and, as you can imagine, we need the plaintiff's deposition to decide whether expert testimony will be necessary and, if so, we would need sufficient time for the expert(s) to draft reports. The bottom line is that we cannot agree to a blanket 21-day extension. Nonetheless, we do want to accommodate the plaintiff. As such, we propose the following: (1) we agree to move the deadline for plaintiff to respond to both sets of discovery to Friday, September 2; (2) we move the plaintiff's deposition to Thursday, September 8; and (3) we stipulate to extend the expert disclosure deadline to Tuesday, October 18. Please also note that, assuming you agree to this schedule, Pond5 does not waive its right to conduct other discovery during this period; time does not allow for us to put off other discovery in this matter. Please let me know if the foregoing is acceptable to you and your client. I am trying my best to accommodate the plaintiff's schedule, but such accommodations must not prejudice my client's rights.

I look forward to hearing from you.

Best Regards,

Larry

 **Larry E. Altenbrun**
Nicoll Black & Feig, PLLC
1325 4th Ave, Ste 1650, Seattle, WA 98101
C: 206-920-5369 

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. If the reader or recipient of this communication is not the intended recipient  or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail and all attachments without reading or saving them in any manner.

**From:** Roger Townsend [mailto:rtownsend@bjtlegal.com]
**Sent:** Friday, July 22, 2016 3:18 PM
**To:** Larry Altenbrun
**Cc:** nick power; Curt Feig; Cindy Heidelberg; Roger Townsend
**Subject:** RE: Hempton v. Pond5 Meet and Confer

Larry:
Thank you for your email.  We will look forward to your follow up on the metadata and production of the files with the metadata included.

Furthermore, we will follow up on our evidence of infringement.  We do not think there is a reasonable dispute that the files on Pond5's system were Mr. Hempton's copyrighted works of authorship.  However, because you dispute this contention, we will provide additional evidence that the files on Pond5 system were, in fact, infringing – some of which will be contained in the metadata that was apparently stripped from the files by defendants.

To be clear, you provide no legal basis why we cannot seek the identity of the end users who have downloaded our client's files and injunctive relief against those end users from further dissemination of our client's copyrighted works.

Finally, we are in receipt of your discovery requests to Mr. Hempton.  We respectfully request an extension of time to respond to those requests for an additional 21 days.  My client has been traveling on family vacation and simply will not have time to respond.

As you know, I am out of the office the next 2 weeks.  During that time, please continue your discussion of these matters with Cindy and Nick.

Best regards,
Roger

**From:** Larry Altenbrun [mailto:laltenbrun@nicollblack.com]
**Sent:** Thursday, July 21, 2016 10:18 AM
**To:** Roger Townsend <rtownsend@bjtlegal.com>
**Cc:** nick power <nickedpower@gmail.com>; Curt Feig <cfeig@nicollblack.com>; Cindy Heidelberg <cheidelberg@bjtlegal.com>
**Subject:** RE: Hempton v. Pond5 Meet and Confer

Dear Roger:

I write to address the issues raised below and discussed during our telephone conference on Tuesday, July 19.

With respect to metadata, we are looking into this issue. It is our intent to provide you with any and all metadata that we have. I can confirm that there was no intention to remove metadata from any file as part of the discovery process. It is not yet clear to me whether metadata was unintentionally removed during the copying process, whether Pond5 maintains audio files without any metadata in the normal course of its business, or whether there is some other explanation. I have spent considerable time on this issue already and have had regular communications with Pond5. I hope to provide you with a detailed response to this issue by early next week.

With respect to the identity of end users, two days ago, for the very first time and after almost 16 months have elapsed since plaintiff first notified Pond5 of potential copyright issues, your client disclosed to us a list of files that he contends were uploaded by ckennedy342 and owned by Mr. Hempton. In that disclosure, the plaintiff also provided a column with "Hempton filename," in which he listed names of files that he contends are titles of Mr. Hempton's work corresponding to the titles given by ckennedy342.

In February, you disclosed HEMP000001-000069, which you stated were "copyrighted source audio belonging to our client." This disclosure includes 69 files, identified with an index provided by you that contains the "Wav File Name." The disclosure contains over 40 hours of audio. We have repeatedly informed you that the disclosure does not provide Pond5 with any reasonable method of comparing it to the files uploaded by ckennedy342 in order to determine which files uploaded by ckennedy342 were possibly owned by your client.

We have compared the list of Mr. Hempton's filenames from the table that you provided us Tuesday to the filenames set forth in the massive audio disclosure from February and none of the filenames appear to match. We have also sampled a small portion of the material and that process does not appear to result in matches to the uploads by ckennedy342. As such, the plaintiff has still not provided us with any reasonable method in which we can compare the uploads by ckennedy342 to work that is owned by the plaintiff. Your client has still not disclosed sufficient evidence to comply with the most fundamental requirement of the DMCA, which is proper notice pursuant to 17 USC 512(c)(3)(A). Moreover, the plaintiff has not produced sufficient evidence to establish a significant likelihood that there was any copyright violation, let alone a violation that is attributable to Pond5. In fact, by producing 40+ hours of "copyrighted source audio" that does not match the files that were allegedly illegally uploaded by ckennedy342, if anything, the evidence suggests that no such copyright violation occurred.

Until the plaintiff produces sufficient evidence that allows Pond5 to make a reasonable comparison between works that are owned by Mr. Hempton and those that were uploaded by ckennedy342, it is premature for you to ask for the identity of customers. The Interrogatories (numbers 1 & 8) that this relates to request that we identify customers that "have downloaded Gordon Hempton's works" or "downloaded Gordon Hempton's copyrighted works." At this time, there is an absence of evidence establishing what his works are and he has failed to provide us with any reasonable means of comparing his alleged work to those that were uploaded by ckennedy342.

If and when the plaintiff produces audio files that match those identified in the table that you sent to us on Tuesday, we will conduct a comparison and update our answers, responses, and objections to your discovery requests accordingly. We do not waive our right to argue that, even then, your request for the identity of customers is objectionable under various grounds. In fact, there is a high likelihood that we will object on the basis that the request is not reasonably calculated to lead to the discovery of admissible evidence and that the relevant information regarding sales, license terms, dates, etc. can be disclosed without providing the identity of customers. However, until you have at least provided us with actual audio files that match the titles from Tuesday's disclosure and we have a reasonable opportunity to conduct our own analysis, I cannot definitively take a position on this issue and it is premature for me to do so.

Best Regards,

**Larry E. Altenbrun**
**Nicoll Black & Feig PLLC**
D: 206-838-7541
C: 206-920-5369

---

**From:** Roger Townsend [mailto:rtownsend@bjtlegal.com]
**Sent:** Tuesday, July 19, 2016 2:48 PM
**To:** Larry Altenbrun
**Cc:** Roger Townsend; nick power; Curt Feig; Cindy Heidelberg
**Subject:** Hempton v. Pond5 Meet and Confer

Larry:

This follows up our meet and confer from today.

1. Metadata on Sound Files. I advised you that the metadata on the sound files has been removed. I can now clarify that the metadata was removed on April 21, 2016. The metadata is important to our investigation and prosecution of this matter and we need to understand what happened with these files and how the metadata came to be removed. You agreed to provide a statement on behalf of your client regarding the chain of evidence and treatment of those electronic files.
2. Discovery of Users. I advised that we needed you to identify (as such term is defined in the discovery requests) the end users that downloaded Gordon Hempton's copyrighted files. You asked for more information regarding the basis of our claim that the particular files were, in fact, Mr. Hempton's copyrighted works of authorship. We allege that the following files and data from Ckennedy/Mr. Kahn were infringement's of Mr. Hempton's copyrighted works:

| pond_user | objectid | Pond5 name | Hempton filename |
|---|---|---|---|
| 554434 | 41736427 | Wind grass wispy breeze | QP02 0200 Wind grass wispy breeze.wav |
| 554434 | 41868858 | Desert morning bird chorus (3) | QP01 0131 Desert morning bird chorus.wav |
| 554434 | 41386040 | Owl Hoot | QP01 0060 Deciduous forest owl hoot.wav |
| 554434 | 44444837 | Prairie red-tailed hawk | QP06 0647 Prairie red-tailed hawk.wav |
| 554434 | 41616044 | Thunder moderately distant (1) | QP03 0279 Thunder moderately distant.wav |
| 554434 | 41868559 | Desert bird wings flutter | QP01 0135 Desert bird wings flutter.wav |
| 554434 | 41867579 | Coyote solo | QP01 0138 Coyote solo.wav |
| 554434 | 41868481 | Deciduous forest owl hoot | QP01 0060 Deciduous forest owl hoot.wav |
| 554434 | 41868731 | Desert morning bird chorus (2) | QP01 0130 Desert morning bird chorus.wav |
| 554434 | 44444836 | Prairie quiet faint insects birds | QP06 0660 Prairie quiet faint insects birds.wav |
| 554434 | 44445399 | Prairie wind buffeting faint crickets | QP06 0604 Prairie wind buffeting faint crickets.wav |
| 554434 | 41869774 | Rain soft | QP01 0011 Rain soft.wav |
| 554434 | 41734694 | Wind desert soft variable over flat lava bed | QP02 0247 Wind desert soft variable over flat lava bed.wav |
| 554434 | 41737230 | Wind modern light variable wires | QP02 0139 Wind modern light variable wires.wav |
| 554434 | 41691269 | Wind plants gentle breeze soft leaf rustles | QP02 0161 Wind plants gentle breeze soft leaf rustles.wav |
| 554434 | 41869319 | Ocean shore wave lap gull circles | QP01 0074 Ocean shore wave lap gull circles.wav |
| 554434 | 44261421 | Prairie dawn chorus mourning dove (1) | QP06 0576 Prairie dawn chorus mourning dove.wav |
| 554434 | 41869470 | Prairie day wind crickets | QP01 0085 Prairie day wind crickets.wav |
| 554434 | 44445350 | Prairie wind blustery crickets | QP06 0602 Prairie wind blustery crickets.wav |
| 554434 | 41647142 | River drumming in rocks waterfall | QP04 0408 River drumming in rocks waterfall.wav |
| 554434 | 41892479 | Stream moderate | QP01 0018 Stream moderate.wav |
| 554434 | 41615922 | Thunder distant | QP01 0009 Thunder distant.wav |
| 554434 | 41615937 | Thunder echo | QP03 0276 Thunder echo.wav |
| 554434 | 41650473 | Water drop | QP04 0335 Water drop.wav |
| 554434 | 41690886 | Wind deciduous forest breeze gentle insects | QP02 0184 Wind deciduous forest breeze gentle insects.wav |
| 554434 | 41734901 | Wind desert rock boulder space | QP02 0251 Wind desert rock boulder space.wav |
| 554434 | 41734847 | Wind desert variable complex swirling | QP02 0255 Wind desert variable complex swirling .wav |
| 554434 | 41736339 | Wind grass winter brisk consistent | QP02 0212 Wind grass winter brisk consistent.wav |
| 554434 | 41691051 | Wind palm frond soft gusty more distant | QP02 0246 Wind palm frond soft gusty more distant.wav |
| 554434 | 41691833 | Wind plants whipping breeze stronger | QP02 0165 Wind plants whipping breeze stronger.wav |
| 554434 | 41691926 | Wind reed light gusts stem action | QP02 0217 Wind reed light gusts stem action.wav |
| 554434 | 41867016 | Canyon owl | QP01 0128 Canyon owl.wav |
| 554434 | 41867394 | Coniferous forest ambience active | QP01 0063 Coniferous forest ambience active.wav |
| 554434 | 41867258 | Coniferous forest jay (1) | QP01 0071 Coniferous forest jay.wav |
| 554434 | 41870040 | Deciduous forest country morning | QP01 0046 Deciduous forest country morning.wav |
| 554434 | 41868545 | Deciduous forest tufted titmouse solo | QP01 0052 Deciduous forest tufted titmouse solo.wav |
| 554434 | 41868632 | Desert mockingbird solo | QP01 0133 Desert mockingbird solo.wav |
| 554434 | 41869143 | Insect crickets active | QP01 0029 Insect crickets active.wav |
| 554434 | 41869213 | Insect crickets isolated | QP01 0028 Insect crickets isolated.wav |

| | | | |
|---|---|---|---|
| 554434 | 41869215 | insect crickets isolated | QP01 0025 insect crickets isolated.wav |
| 554434 | 44442581 | Prairie crickets busy wind sweeping night (1) | QP06 0621 Prairie crickets busy wind sweeping night.wav |
| 554434 | 44263959 | Prairie dawn early | QP06 0567 Prairie early dawn.wav |
| 554434 | 41869523 | Prairie meadowlark chirps chortle | QP01 0087 Prairie meadowlark chirps chortle.wav |
| 554434 | 44444959 | Prairie western meadowlark (1) | QP06 0624 Prairie western meadowlark.wav |
| 554434 | 44445494 | Prairie wind gusting crickets | QP06 0601 Prairie wind gusting crickets.wav |
| 554434 | 44265505 | Prairie wind soft breezy | QP06 0588 Prairie wind soft breezy.wav |
| 554434 | 44445896 | Prairie wind sweeping meadowlark | QP06 0613 Prairie wind sweeping meadowlark.wav |
| 554434 | 41614061 | Rain downpour | QP03 0301 Rain downpour.wav |
| 554434 | 41615060 | Rain quiet light tone | QP03 0292 Rain quiet light tone.wav |
| 554434 | 41869802 | Rain strong | QP01 0013 Rain strong.wav |
| 554434 | 41869868 | Riparian Zone night insects | QP01 0120 Riparian Zone night insects.wav |
| 554434 | 41647706 | River gurgling moderately distant | QP04 0419 River gurgling moderately distant.wav |
| 554434 | 41648221 | River profile underwater | QP04 0455 River profile underwater.wav |
| 554434 | 41648370 | River rapids stronger | QP04 0388 River rapids stronger.wav |
| 554434 | 41649035 | River submersion underwater | QP04 0450 River submersion underwater.wav |
| 554434 | 41649179 | River surging | QP04 0380 River surging.wav |
| 554434 | 41649865 | Stream rippling surges | QP04 0365 Stream rippling surges.wav |
| 554434 | 48614816 | Surf pebbles light sweeping | QP05 0496 Surf pebbles light sweeping.wav |
| 554434 | 48584884 | Surf surges rock jetty busier | QP05 0472 Surf surges rock jetty busier.wav |
| 554434 | 41615589 | Thunder distant faint | QP03 0290 Thunder distant faint.wav |
| 554434 | 41615684 | Thunder distant rolling | QP03 0281 Thunder distant rolling.wav |
| 554434 | 41615899 | Thunder distant very long peel | QP03 0278 Thunder distant very long peel.wav |
| 554434 | 41616128 | Thunder very distant | QP03 0287 Thunder very distant.wav |
| 554434 | 41895323 | Thunderstorm | QP01 0016 Thunderstorm.wav |
| 554434 | 41894702 | Tropical forest bird ruckus dawn | QP01 0043 Tropical forest bird ruckus dawn.wav |
| 554434 | 41895927 | Tropical forest stream | QP01 0041 Tropical forest stream.wav |
| 554434 | 41895910 | Wetland bullfrog | QP01 0110 Wetland bullfrog.wav |
| 554434 | 41895951 | Wetland canada geese flyby | QP01 0106 Wetland canada geese flyby.wav |
| 554434 | 41895973 | Wetland duck fly across isolated | QP01 0101 Wetland duck fly across isolated.wav |
| 554434 | 41896301 | Wetland lake birds trout | QP01 0099 Wetland lake birds trout.wav |
| 554434 | 41896805 | Wetland spring peepers sparse others | QP01 0114 Wetland spring peepers sparse others.wav |
| 554434 | 41689043 | Wind coniferous alpine brisky roar howl | QP02 0239 Wind coniferous alpine brisky roar howl.wav |
| 554434 | 41689774 | Wind coniferous fast wispy gusts with lulls | QP02 0222 Wind coniferous fast wispy gusts with lulls.wav |
| 554434 | 41690355 | Wind coniferous strong various gusts | QP02 0235 Wind coniferous strong various gusts.wav |
| 554434 | 41732099 | Wind coniferous with tree creaking | QP02 0225 Wind coniferous with tree creaking.wav |
| 554434 | 41732475 | Wind deciduous forest quiet soft breeze | QP02 0179 Wind deciduous forest quiet soft breeze.wav |
| 554434 | 41732993 | Wind deciduous forest slow resonant breeze | QP02 0180 Wind deciduous forest slow resonant breeze.wav |
| 554434 | 41733491 | Wind deciduous soft surging no detail | QP02 0192 Wind deciduous soft surging no detail.wav |
| 554434 | 41733672 | Wind desert  light wispy gusty roaring | QP02 0252 Wind desert  light wispy gusty roaring.wav |
| 554434 | 41733973 | Wind desert blustery volcano rim | QP02 0249 Wind desert blustery volcano rim.wav |
| 554434 | 41736081 | Wind grass variable wispy | QP02 0204 Wind grass variable wispy.wav |
| 554434 | 41736273 | Wind grass winter strong consistent | QP02 0213 Wind grass winter strong consistent.wav |
| 554434 | 41896960 | Wind mod strong | QP01 0004 Wind mod strong.wav |
| 554434 | 41690987 | Wind palm frond brisk close rustles | QP02 0245 Wind palm frond brisk close rustles.wav |
| 554434 | 41691456 | Wind plants leaves rustle | QP02 0158 Wind plants leaves rustle.wav |
| 554434 | 41691578 | Wind plants light variable | QP02 0156 Wind plants light variable.wav |
| 554434 | 41692039 | Wind plants wispy breeze | QP02 0159 Wind plants wispy breeze.wav |
| 554434 | 41691989 | Wind reed softer leafy faint water laps | QP02 0218 Wind reed softer leafy faint water laps.wav |

My client is currently traveling and will provide additional information regarding these infringements, but I wanted to give you this notice.  As Pond5 has noted, Mr. Kahn did almost nothing to cover his tracks and did not even change the names of the files infringed from Mr. Hempton.

3. I advised that we intend to pursue relief from the court on these issues and avail ourselves of the court's process for telephonic hearing of discovery disputes.  (Dkt. #29 at par. 3)  I requested times on Thursday and Friday for calling the court.

Let me know if you have any questions or comments.

Best regards,
Roger


Roger M. Townsend
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Office: (206) 652-8660
Direct: (206) 518-6200
Fax: (206) 652-8290

IMPORTANT: This e-mail message and any attachments are confidential and may be privileged. If you are not the intended recipient please notify the sender immediately -- by replying to this message -- and destroy all copies of this message and any attachments. Thank you.

Pursuant to IRS Circular 230, please be advised that, to the extent this communication (and any attachments) contains any tax advice, it is not intended to be, and cannot be used, for purposes of avoiding penalties under the Internal Revenue Code.