THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GORDON HEMPTON,

              Plaintiff,

    v.

POND5, INC., A DELAWARE
CORPORATION; AND POND5 USER
CKENNEDY342, A CORPORATION OR
INDIVIDUAL OF TYPE UNKNOWN,

              Defendants.

No.:   3:15-cv-05696-BJR

**DEFENDANT POND5, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL COMPLETE DISCOVERY RESPONSES REGARDING POND5 CUSTOMERS WHO DOWNLOADED PLAINTIFF'S COPYRIGHTED WORKS [DKT. 33]**

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

# I.  INTRODUCTION

Defendant Pond5, Inc. ("Pond5") asks this Court to deny plaintiff's motion because it is premature and lacks merit. Plaintiff seeks the identity of Pond5's customers before Pond5 can reasonably conclude which files were uploaded by user ckennedy342 and owned by plaintiff. In presenting this Motion at this time, plaintiff asks this Court to (1) ignore his pervasive delays, (2) force Pond5 to simply acquiesce to plaintiff's most recent list of infringing content and disregard the fact that plaintiff's list has been one of constant change, (3) re-write his discovery requests for him, (4) disregard issues of relevancy and proportionality, and (5) overlook the fact that no meet and confer was held for three of four discovery requests.

# II.  EVIDENCE RELIED UPON

This motion is based upon the legal authority cited herein, the Third Declaration of Tom Crary ("Third Crary Dec.") and its attached exhibits, the Declaration of Larry Altenbrun ("Altenbrun Dec.") and its attached exhibits, and the records and files in this matter.

# III.  FACTS AND PROCEDURAL BACKGROUND

This matter involves Copyright claims arising out of the uploading of audio files by user ckennedy342 onto Pond5.com, an online marketplace for producers of media to license content to third parties. (Compl., Dkt #1; Motion for Summary Judgment, Dkt. #18 (hereafter "MSJ"), at 1).

## A.  DISCOVERY RESPONSES & CORRESPONDENCE BETWEEN PARTIES.

1.  <u>May 2015 to January 2016</u>

Plaintiff seeks to compel discovery with respect to Interrogatory Number 1 and Requests for Production ("RFP") Numbers 3, 7, and 16. (Motion to Compel, Dkt. #33, at 4-5). Those discovery requests were propounded upon Pond5 on December 10, 2015. (Altenbrun Dec. ¶ 1, Exh. 1). Each of the four discovery requests require, <u>*by their terms*</u>, that Pond5 provide certain information regarding work owned by the plaintiff that was downloaded from Pond5. (*See id.*). Pond5 served answers, objections and responses to those discovery requests on January 21, 2016. (*Id.* ¶ 3; *Id.* Exh. 2, at 4, 17, 18, 22). In response to each of the four requests addressed in this

POND5, INC.'S OPPOSITION TO PLAINTIFF'S MOTION
TO COMPEL COMPLETE DISCOVERY RESPONSES [DKT. 33] - 1
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1    motion, Pond5 included a non-ambiguous statement that it could not answer or provide responsive

2    documents because it did not know what Mr. Hempton's works of authorship were. (*See id.* Exh.

3    2, at 4, 17, 18, 22). With respect to Interrogatory No. 1, Pond5 answered:

4

5    > **ANSWER:** Pond5 objects to Interrogatory No. 1 because it is overly broad,
     > unduly burdensome, seeks information not relevant to this lawsuit, and is not
     > reasonably calculated to lead to the discovery of admissible evidence. It also seeks

6    > confidential and proprietary information, which would not be adequately protected
     > under a confidentiality agreement. The identity of Defendants' Customers has no

7    > relevance whatsoever to this lawsuit and plaintiff's request for such information is
     > intended to annoy, harass, or embarrass the defendants. Additionally, Pond5

8    > objects because Interrogatory No. 1 is compound. Without waiving objections, to
     > date, despite requests from Pond5, plaintiff has not specifically identified which

9    > "copyrighted works of authorship" he contends were uploaded to the Pond5

10   > website. As such, Pond5 is unable to answer Interrogatory No. 1. However,
     > immediately upon being notified by plaintiff's attorney that user ckennedy342 had

11   > allegedly uploaded content that was owned by plaintiff, Pond5 removed all content
     > uploaded by that user and blacklisted his account.

12

13   (*Id.* at 4). Pond5's answers and responses were <u>not</u>, as plaintiff seems to suggest, some sort of

14   effort to avoid discovery until the plaintiff could "conclusively prove" his copyright case.

15   (Altenbrun Dec. ¶ 4; Third Crary Dec. ¶ 1). Rather, Pond5 had no way of knowing which clips that

16   were uploaded by ckennedy342 were owned by the plaintiff. (*Id.*). Plaintiff had not provided Pond5

17   with a list of infringing content and only plaintiff possessed actual copies of works that were owned

18   by him that he claimed were infringed upon. (*Id.*).

19         Beginning on the very day – May 26, 2015 – that plaintiff notified Pond5 of alleged

20   infringement, Pond5 asked plaintiff to identify the infringing clips. (*See* MSJ at 3). Three days later,

21   Pond5 practically begged plaintiff: "At the risk of stating the obvious, Pond5 cannot locate your

22   clients' intellectual property without being informed as to what they claim is theirs." (*Id.*). A month

23   later, plaintiff sent a purported though defective DMCA takedown notice that still failed to identify

24   the infringing clips. (*Id.* at 4). A few months later, plaintiff filed this litigation, which also did not

25   list the infringing clips. (Compl., Dkt. #1). Shortly after the complaint was filed, Pond5 engaged in

26   efforts to settle this litigation. (Third Crary Dec. ¶ 2). As part of those efforts, on November 2,

27   2015, Pond5's Tom Crary emailed plaintiff a detailed, searchable spreadsheet showing, *inter alia*,

POND5, INC.'S OPPOSITION TO PLAINTIFF'S MOTION
TO COMPEL COMPLETE DISCOVERY RESPONSES [DKT. 33] - 2
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

the titles, lengths, and number of sales of all 10,000+ tracks that had been uploaded by ckennedy342. (*Id.* ¶ 2, Exhs. 1-4). Plaintiff informed Mr. Crary that he would review the spreadsheet and identify the infringing tracks. (*Id.* ¶ 7). Plaintiff failed to do so. (*Id.*).

Similarly, when Pond5 responded to discovery, the plaintiff had not provided any of his audio recordings to Pond5. (*Id.* ¶ 8). Defendant had no way of identifying the allegedly infringed upon tracks, let alone any ability to conduct its own analysis of whether any allegedly infringing tracks were actually duplicates of plaintiff's works. (*Id.*).

2.    February 2016 to June 2016

On February 5, 2016, plaintiff provided Pond5 with 69 audio files and stated that the "production consists of copyrighted source belonging to our client." (Altenbrun Dec., ¶ 5, Exh. 3). Most of the files exceeded thirty minutes in length and the disk totaled over forty hours of nature sounds. (First Crary Dec. ¶ 29). Pond5 undertook a comparison of the 69 disclosed audio files with those uploaded by ckennedy342; no matches were found. (Third Crary Dec. ¶ 9).

On March 7, 2016, the parties reached an email agreement whereby discovery was limited through June and focused on issues associated with Pond5's motion for summary judgment. (Altenbrun Dec. ¶ 6, Exh. 4). Pond5 supplemented discovery on March 11, including supplements to Interrogatory No. 1 and RFP No. 7. (*Id.* Exh. 5). Pond5's supplemental answer to Interrogatory No. 1 once again explained, in great detail, plaintiff's failure to adequately identify the alleged infringing and infringed upon clips. In part, the answer stated:

> Without waiving objections, to date, despite requests from Pond5, plaintiff has not produced significant evidence demonstrating which, if any, of his "copyrighted works of authorship" were uploaded to the Pond5 website. As such, defendant cannot identify the customers that downloaded those works.
> On February 5, 2016, plaintiff produced HEMP000001-000069, which consists of 69 audio files totaling over 42 hours of audio content. The production was described as "copyrighted source audio belonging to our client." Plaintiff has made no allegation that the production consists of audio files that were improperly uploaded to Pond5.com. Nor has the plaintiff identified portions of the files that he contends were improperly uploaded. Moreover, the audio files disclosed as HEMP000001-000069 are significantly longer than all but a few of the clips uploaded by user ckennedy342. Based upon plaintiff's assertions, the massive volume of material disclosed, and the length of the audio files produced, it appears

as though HEMP000001-000069 is simply a disclosure of a significant portion (perhaps all) of the library of audio works that plaintiff has created over the past many years. Plaintiff has made no effort to correlate that library of works to the allegations set forth in the complaint, to clips that were uploaded by ckennedy342, or to audio clips uploaded by any other Contributor to the Pond5 website.

Pond5 does not have a legal obligation to analyze plaintiff's voluminous production of 42+ hours of audio content and inform plaintiff of any possible infringements. The burden of proving the claims asserted in the lawsuit rests upon the plaintiff.

To the extent that HEMP000001-000069 contains audio that might have been improperly uploaded by ckennedy342, it appears that, to the extent that any infringement occurred, ckennedy342 may have cut clips from one or more of the larger audio files disclosed. Pond5 does not have the ability to compare the much larger audio files produced by plaintiff to shorter clips that were uploaded by ckennedy342. Moreover, as discussed above, Pond5 has no legal obligation to do so.

(Altenbrun Dec. Exh. 5, at 4-5). Plaintiff's counsel sent a letter to Pond5's counsel dated March 16 seeking an FRCP 37 conference and detailing plaintiff's concerns over Pond5's discovery responses. (*Id.* Exh. 6). That letter identified Pond5's answer to Interrogatory No. 1, but does not address RFP Numbers 3, 7, or 16. (*Id.*). On March 17, Pond5's counsel sent a letter to counsel for plaintiff responding to plaintiff's discovery concerns. *(Id.* Exh. 7). Counsel for plaintiff did not make any timely response to Pond5's letter of March 17.

On April 10, by email, plaintiff's counsel requested copies of the audio files that were uploaded by ckennedy342. (*Id.* Exh. 8). Pond5 produced the audio files on April 28. (*Id.* ¶ 11, Exh. 9). On June 6, plaintiff's counsel sent an email stating: "We have not received the audio files you agreed to produce." (*Id.* Exh. 10). Pond5's counsel corrected plaintiff's counsel, by telephone on June 7, assuring him that the files had been produced some six weeks earlier. (*Id.* ¶ 13).

3.   July 2016 to September 2016

On July 14, plaintiff's counsel again raised issues regarding discovery. He sought to meet and confer and, in pertinent part, wrote: "please be advised that we need you to identify the individual end users who downloaded the tracks." (*Id.* Exh. 11). He also stated that there were 114 infringing tracks that involved sales and a total of 208 sales. (*Id.*). On Tuesday, July 19, the parties discussed the disclosure of the identity of end users during a meet and confer. (*Id.* ¶ 15). The

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

parties did not discuss Pond5's responses to RFP Nos. 3, 7, or 16. (*Id.*). Pond5's counsel understood that the meet and confer pertained to Interrogatory Number 1, but did not believe that RFP 3, 7, or 16 – which had never before been identified by plaintiff – were included in the conference. (*Id.*). Counsel for plaintiff followed up with an email that day. The email again referred to the identity of end users, but did not refer to any requests for production. (*Id.* Exh. 12). The email, *for the very first time*, identified the titles of allegedly infringing tracks that included at least one sale, in a table. (*See id.*). The table listed 87 tracks. (*Id.* ¶ 16).

Pond5 compared the file names of the allegedly infringing tracks to those of plaintiff's February disclosure of audio. (Third Crary Dec. ¶ 10). There were no matches. (*Id.*). Pond5 also conducted a comparison of a sample of the allegedly infringing tracks against plaintiff's audio disclosure and, again, found no matches. (*Id.*). Counsel for Pond5 informed plaintiff's counsel, in a detailed email dated July 21, that "plaintiff has <u>still</u> not provided us with any reasonable method in which we can compare the uploads by ckennedy342 to work that is owned by the plaintiff." (Altenbrun Dec. Exh. 13). Pond5's counsel specifically sought the "audio files that match those identified in the table." (*Id.*). The parties exchanged further correspondence on the issue dated July 22 and July 25. (*Id.* Exhs. 14, 15).

On August 5, counsel disclosed a Declaration of Gordon Hempton. (*Id.* ¶ 20, Exh. 16). The declaration provided sworn testimony alleging that, of the 10,236 tracks uploaded by ckennedy342, 821 were owned by the plaintiff, 114 of them had been sold, and there were a total of 208 infringing sales. (*Id.*). The declaration did not include copies of any audio files. (*Id.* ¶ 20). Pond5 analyzed Hempton's declaration and found significant evidence that it was unreliable. (Third Crary Dec. ¶11). Pond5 informed plaintiff of those problems in a detailed email dated August 11. (Altenbrun Dec. Exh. 17).

Plaintiff finally produced audio clips, which allegedly include files that match the uploads by ckennedy342, on August 17, 2016. (Altenbrun Dec. ¶ 22). Rather than simply producing files that match the ones that he contends were infringed upon, Plaintiff produced over 1,400 files, totaling over 60 gigabytes. (*Id.*). Counsel arranged for the massive production to be duplicated

POND5, INC.'S OPPOSITION TO PLAINTIFF'S MOTION
TO COMPEL COMPLETE DISCOVERY RESPONSES [DKT. 33] - 5
(3:15-cv-05696 BJR)

professionally and sent it to Pond5 on approximately August 25. (*Id.*). Pond5 began an analysis of those files shortly after receipt of the files and its investigation is continuing. (Third Crary Dec. ¶ 12). On August 29, plaintiff's counsel informed Pond5 that plaintiff intended to seek a telephone hearing "on the issue of production of end user information." (Altenbrun Dec. Exh. 18). Attached to the email were lists identifying 655 allegedly infringing files and 83 infringing files that were allegedly sold. (*Id* ¶ 23.).

On Friday, September 2, plaintiff submitted discovery responses. In its discovery responses, plaintiff stated: "It appears from Pond5's production that there were 176 separate sales of 86 sound files, all of which are infringed versions of Mr. Hempton's work." (*Id.* Exh. 19, at 20). On Tuesday, September 6, plaintiff disclosed "corrected" discovery responses. (Altenbrun Dec. Exh. 20). The "corrected" discovery responses changed the number of sales from 176 to 146. (*See id.*, at 20). Plaintiff provided no explanation for why, in less than a month (and 15 months after first making allegations of infringement, 11 months after litigation commenced, and 10 months after he had been provided with a detailed spreadsheet showing all uploads by ckennedy342) his allegations of infringing files had changed from 821 to 655, the sold files had changed from 114 to 87 to 114 to 83 to 86, and the number of sales changed from 208 to 176 to 146.

Plaintiff was deposed on September 8, 2016. He testified that there were 655 infringing clips of which 86 had been sold. (Rough Draft of Hempton Dep., attached to Altenbrun Dec. as Exh. 21, at 84:1-84:6). Thus, finally, on September 8, 2016, the plaintiff appears to have settled on the identity of clips that were infringing.

## B. POND5'S SUSPICIONS REGARDING PLAINTIFF'S CLAIMS.

Pond5 is entitled to investigate whether files owned by the plaintiff were downloaded from its marketplace. (Third Crary Dec. ¶ 13). The importance of this investigation is buttressed by the plaintiff's actions and his constantly changing positions. (*Id.*). Pond5 also has serious concerns over plaintiff's persistent refusals and delays to disclose audio tracks and a list of allegedly infringing tracks. (*Id.*). Despite months of requests, plaintiff only disclosed audio tracks that might match those uploaded by ckennedy342 on August 17. He produced a list of allegedly infringing tracks for

POND5, INC.'S OPPOSITION TO PLAINTIFF'S MOTION
TO COMPEL COMPLETE DISCOVERY RESPONSES [DKT. 33] - 6
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

the first time on July 19 and that list has changed numerous times since, including recently. Without the audio tracks and a list of allegedly infringing clips, Pond5 could not conduct its own independent analysis of whether ckennedy342 did, in fact, upload infringing clips. (*Id.*).

Pond5 has further reason to be suspicious of plaintiff's refusal to disclose the actual audio files that were allegedly infringed upon. Pond5 recently discovered that those files appear to have originated from a collection of works located at www.quietplanet.com. (Altenbrun Dec. ¶ 27). The copyrights to the collective works located at Quiet Planet, however, were not registered until July 2015, well after the alleged acts of infringement. (*Id.* ¶ 27, Exh. 22). Plaintiff's complaint alleges that the works infringed were registered and even includes as exhibits 17 certificates of registration. (See Compl., Dkt. #1). Plaintiff's complaint makes no mention of the recent registrations that appear to directly pertain to the work that was allegedly infringed, nor does he include those registrations as exhibits. (*See id*). Plaintiff's failure to disclose the recent registrations and his pervasive delays in disclosing the audio files increase Pond5's suspicions and increase the importance that Pond5 places in conducting its own, independent, thorough review of the audio files produced. (*See* Third Crary Dec. ¶ 13-14).

## C. THE SENSITIVE NATURE OF POND5'S CUSTOMER LISTS.

The success of Pond5 relies heavily upon its reputation among the artists that comprise most of its contributors and many of its customers. (*Id.* ¶ 15). Disclosure of customer lists will damage its reputation. (*Id.*). Threats of litigation or actual litigation against customers that downloaded works from pond5.com without any knowledge whatsoever that such downloads were infringing, could have a devastating impact on its reputation and, in turn, its business. (*Id.*). At the very least, Pond5 should be entitled to conduct a thorough investigation of the files that plaintiff contends are infringing and the files that plaintiff contends were infringed upon before it is required to disclose the names of any of its customers. (*Id.*). Because of plaintiff's action, Pond5 has not yet reached any conclusions as to the identity of customers that downloaded tracks owned by the plaintiff. (*Id.*). Its investigation is continuing. (*Id.*).

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

# IV.   ARGUMENT

## A.  PLAINTIFF FAILED TO MEET & CONFER WITH RESPECT TO RFP 3, 7, & 16.

FRCP 37 requires the plaintiff to meet and confer with counsel for Pond5 before moving to compel discovery. This Court's Order Setting Forth Court Procedures further requires the parties to make a "meaningful effort to confer prior to filing a motion." (Dkt. #29). A conference regarding discovery was conducted on July 19. Prior to that, plaintiff's counsel had identified Interrogatory No. 1, but none of the RFPs, as a topic to discuss in a meet and confer. During the July 19 conference, the issue of the "identity of end users," which is the specific issue addressed in plaintiff's Interrogatory Number 1, was discussed, but the RFPs were not. Subsequently, the parties exchanged a substantial volume of correspondence related to this issue. Those communications do not address RFP Nos. 3, 7, and 16. Pond5's counsel has never discussed with plaintiff's counsel its responses to these RFPs. There was no conference related to those discovery requests and, so far as it relates to those requests, this motion should be denied.[1]

## B.  PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE IT IS PREMATURE.

1.   Plaintiff Has Thwarted Pond5's Ability to Reach Conclusions Necessary to These Discovery Requests.

Each of the discovery requests addressed in this motion requires Pond5 to reach a conclusion that files *owned by the plaintiff* were downloaded from Pond5.com. As demonstrated in detail above, due to the plaintiff's actions during the course of this litigation, plaintiff has prevented Pond5 from reaching any conclusions about whether any files owned by the plaintiff were downloaded from its website. Plaintiff asks the Court to compel disclosure when the plaintiff himself delayed providing a list of infringing clips until July, refused to provide audio of the

---

[1] Plaintiff might argue that the RFPs were included in his motion because, like Interrogatory No. 1, they are related to downloads of plaintiff's works. Nonetheless, while that might assist the parties in reaching an agreement on the scope of the RFPs should issues related to Interrogatory No. 1 be resolved, that does not justify plaintiff's inclusion of them in this Motion. Pond5 has stated valid objections to Requests 3 and 7 and plaintiff should not be able to circumvent the need to meet and confer over these Requests by, in essence, boot-strapping them to a motion that pertains to Interrogatory Number 1. Nor should Pond5 be forced to litigate over Requests for Production that were not addressed in a conference between counsel just because they might contain a common element.

POND5, INC.'S OPPOSITION TO PLAINTIFF'S MOTION
TO COMPLETE COMPLETE DISCOVERY RESPONSES [DKT. 33] - 8
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

infringed upon clips until August, confused the issue by disclosing other audio files that do not match the allegedly infringing files in February, and repeatedly – most recently in September 2016 – altered his position on which files were infringing. In fact, *after* holding a meet and confer in which counsel argued that Pond5 was in violation of its discovery obligations by not disclosing a list of customers, the plaintiff changed his position on the number and identity of infringing files with sales *four times*. If Pond5 had acquiesced to plaintiff's demands at the meet and confer, even according to his own testimony and statements, plaintiff would have been provided with a list of customers that was riddled with errors.

Plaintiff's motion is premature because, as a direct result of plaintiff's delays and constantly shifting positions, Pond5 has been prevented from reaching conclusions regarding whether plaintiff's work was downloaded. It took plaintiff 10 months after commencing litigation to provide a list of infringing tracks and 11 months to produce actual audio that he claims was infringed upon. It took even longer, until September 2016, for him to seemingly settle on a final list of infringing tracks.[2] The motion should be denied because it is premature.

2.    Plaintiff Chose the Restrictive Language In His Discovery Requests.

"Rule 26 does not require the Court to rewrite discovery requests for the parties." Robin Singh Educ. Serv.s, Inc. v. Excel Test Prep, 2004 WL 2554454, *1 (N.D. Cal. Nov.9, 2004). The plaintiff chose the wording of the four discovery requests that are subject to this motion. He and his attorneys made the decision to condition each of the requests upon Pond5 reaching conclusions regarding which tracks had been downloaded that were owned by the plaintiff. For months, he had the opportunity to simply submit new discovery requests that did not include this restrictive language. For example, he could have easily provided a list of files and request that Pond5 disclose the identity of any customer that purchased those files. Plaintiff chose to submit discovery with language that, by its terms, requires Pond5 to reach conclusions regarding plaintiff's ownership of downloaded clips; he cannot now argue that Pond5 and this Court should simply ignore that

---

[2] Plaintiff's lack of diligence is further illustrated by the fact that Pond5 produced audio to plaintiff on April 28 and, some six weeks later, plaintiff's counsel mistakenly accused Pond5 of not producing the audio, demonstrating that plaintiff had taken no actions to analyze that material during that six week period.

POND5, INC.'S OPPOSITION TO PLAINTIFF'S MOTION
TO COMPEL COMPLETE DISCOVERY RESPONSES [DKT. 33] - 9
(3:15-cv-05696 BJR)

1  language and disclose customer lists prior to reaching conclusions regarding what specifically was

2  downloaded. His motion is premature and not well-founded.[3]

3  **C.  PLAINTIFF'S DISCOVERY REQUESTS LACK RELEVANCE AND ARE NOT**
   **PROPORTIONAL.**

4

5      In its current, applicable formulation, FRCP 26(b)(1) provides:

6          **(1)  *Scope in General.*** Unless otherwise limited by court order, the scope of
           discovery is as follows: Parties may obtain discovery regarding any nonprivileged
7          matter that is relevant to any party's claim or defense and proportional to the needs
           of the case, considering the importance of the issues at stake in the action, the
8          amount in controversy, the parties' relative access to relevant information, the
           parties' resources, the importance of the discovery in resolving the issues, and
9          whether the burden or expense of the proposed discovery outweighs its likely
           benefit. Information within this scope of discovery need not be admissible in
10         evidence to be discoverable.

11  Under the current formulation of the rule, the requested discovery must be both relevant and

12  proportional. *Walker v. Pioneer Prod. Servs.*, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016).

13      Here, plaintiff's request for the identities of downloaders of his alleged infringed works

14  seeks information that is of only marginal relevance to this lawsuit. Plaintiff's claim that the

15  information is "directly relevant to liability in this case" (Motion to Compel at 6:4-6:7) is simply

16  false. The identity of end-users has nothing to do with establishing liability of Pond5 or

17  ckennedy342. Defendant does not deny that downloads occurred – it has provided information

18  showing every sale of every clip that was uploaded by ckennedy342. The identity of downloaders

19  has nothing to do with liability. Plaintiff's primary purpose in obtaining the identity of end users

20  appears to be to pursue *new* litigation – but the relevancy and proportionality rules of FRCP 26

21  must relate to "the party's claim or defense," not some future claim. See Adv. Comm. Notes to the

22  2000 Amendments to FRCP 26(b)(1) ("This rule change signals to the court that it has the

23  authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to

24  the parties that they have no entitlement to discovery to develop new claims or defenses that are

25  ---
    [3] Plaintiff attempts to support his motion by arguing that Pond5 acknowledged the improper uploading and
    apologized for it. (Motion at 3). Those statements were made as part of settlement negotiations and are not
26  admissible. ER 408. Pond5 moves to strike. It is disingenuous for plaintiff to rely upon them as some sort of
    admission. Moreover, even if Pond5 made a general statement supporting the conclusion that there were offending
27  tracks, his discovery requests require Pond5 to identify the specific offending tracks from among over 10,000 that
    were uploaded. Pond5's efforts to identify those tracks have been thwarted by plaintiff's actions.

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

not already identified in the pleadings."). Plaintiff could have brought suit against Does when he filed this litigation – he chose not to. The only issue that the identity of downloaders could possibly relate to is plaintiff's actual damages, but even then it is of marginal significance for three reasons. First, the plaintiff is certain to argue that the diminished value of his works result not from actual usage, but from the breadth of the licenses that were issued to that work. Second, if these files had actually been used in some way that caused substantial damage to the plaintiff, it is axiomatic that he would know about it. Third, plaintiff's motion states that "one measure" of damages in a copyright action is actual damages, but conveniently omits any statement that he plans to forego statutory damages and seek actual damages; it is highly unlikely that plaintiff will seek actual damages in this litigation and there is no evidence that he plans to do so.

Plaintiff's request for the identity of "end-users" also fails the proportionality requirement of FRCP 26(1). Because the information sought is of marginal relevance it has very little, if any, value to the plaintiff in *this lawsuit*. Thus, a consideration of the "importance of the discovery in resolving the issues" leads to the conclusion that even a slight burden on Pond5 weighs strongly in favor of protection from the discovery sought. Here, however, the burden on Pond5 is great.  As discussed above, Pond5's business depends on its reputation within the on-line marketing community and on the confidence its customers have that they are purchasing licenses to material legitimately available for purchase. Disclosure of their identities at this juncture, which could expose them to unwarranted litigation, will likely have disastrous impacts on Pond5's business, even if it is ultimately exonerated from any liability based on the DMCA safe harbor defense that is the subject of Pond5's Motion for Summary Judgment currently pending before the Court.  The burden on Pond5 clearly outweighs the benefit to the plaintiff in this case and, as a result, fails the proportionality test required by the new FRCP 26(1).

Plaintiff's reliance on *LHF Prods. v. Does 1-15* , No. C16-865RSM (W.D. Wash. 2016), is misplaced. In that case, the plaintiff had sued *only* "Does 1-15" and had served a subpoena on Comcast, seeking information that would allow it to identify individuals who could be specifically named. Those individuals moved to quash the subpoena, arguing that because the plaintiff's claims

POND5, INC.'S OPPOSITION TO PLAINTIFF'S MOTION
TO COMPEL COMPLETE DISCOVERY RESPONSES [DKT. 33] - 11
(3:15-cv-05696 BJR)

against them were meritless, they were entitled to remain anonymous. The court rejected that argument and refused to quash the subpoena. While the decision in that case is certainly correct, it has nothing to say about how the Court should rule on this motion. Here, unlike in the *LHF* case, plaintiff has sued specific, identified individuals or entities. Plaintiff has no need for the identities of the "non-named" "does" in order to establish its case against Pond5. At this juncture, if the court grants plaintiff's request for this information it could only have the effect of prejudicing Pond5 in its relationships with its customers, punishing Pond5 before the plaintiff has made a sufficient showing of liability. Plaintiff's Motion should be denied.

**D.  PLAINTIFF'S RFP 3 IS BEYOND THE SCOPE OF FRCP 34.**

FRCP 34 permits a party to request the production of documents, electronically stored information, or designated tangible things. Plaintiff's Request for Production No. 3 seeks to require Pond5 to "provide a complete accounting the history of Gordon Hempton's copyrighted sound files on Pond5." An "accounting" is not a document, ESI, or tangible thing. Pond5 has no such "accounting." The motion to compel should be denied.

**E.  RFP 16 WAS FULLY RESPONDED TO.**

Defendant responded to Request for Production Number 16, which asks for documents related to efforts to contact Contributors who have downloaded Mr. Hempton's works, by stating: "None. As stated in previous answers and responses, plaintiff has failed to sufficiently identify his 'work.'" (Altenbrun Dec., Exh. 2, at 22). Defendant has no responsive documents and has informed plaintiff of this fact. The motion to compel should be denied.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Pond5 respectfully requests that this Court deny Plaintiff's Motion to Compel Complete Discovery Responses Regarding Pond5 Customers Who Downloaded Plaintiff's Copyrighted Works.

POND5, INC.'S OPPOSITION TO PLAINTIFF'S MOTION
TO COMPEL COMPLETE DISCOVERY RESPONSES [DKT. 33] - 12
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**DATED** this 19th day of September, 2016.

NICOLL BLACK & FEIG PLLC


/s/ Larry E. Altenbrun
Curt H. Feig, WSBA No. 19890
Larry E. Altenbrun, WSBA No. 31475
Attorneys for Defendant Pond5, Inc.

POND5, INC.'S OPPOSITION TO PLAINTIFF'S MOTION
TO COMPEL COMPLETE DISCOVERY RESPONSES [DKT. 33] - 13
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on the date set forth below, I electronically filed the foregoing with the

3
Clerk of the Court using the CM/CF system which will send notification of such filing to the
following:

4
                        Cynthia J. Heidelberg

5
                        BRESKIN JOHNSON & TOWNSEND PLLC
                        1000 Second Avenue, Suite 3670

6
                        Seattle, WA 98104
                        206-652-8660

7
                        Email: cheidelberg@bjtlegal.com

8
                        Nicholas E. D. Power
                        LAW OFFICEOF NICHOLAS POWER

9
                        540 Guard St., Ste 140
                        Friday Harbor, WA 98250

10
                        360-298-0464
                        Email: nickedpower@gmail.com

11
                        Roger M. Townsend

12
                        BRESKIN JOHNSON & TOWNSEND PLLC
                        1000 Second Avenue, Suite 3670

13
                        Seattle, WA 98104
                        206-652-8660

14
                        Fax: 206-652-8290
                        Email: rtownsend@bjtlegal.com

15
      DATED this 19th day of September, 2016.

16

17

18
                        /s/ Larry E. Altenbrun
                        Curt H. Feig, WSBA No. 19890

19

20

21

22

23

24

25

26

27

POND5, INC.'S OPPOSITION TO PLAINTIFF'S MOTION
TO COMPEL COMPLETE DISCOVERY RESPONSES [DKT. 33] - 14
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555