# EXHIBIT 1

Honorable Ronald B. Leighton

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
9                                  AT SEATTLE

10   Gordon Hempton,                          NO. 3:15-cv-05696-DWC

11                    Plaintiff,              PLAINTIFF'S FIRST
                                              INTERROGATORIES AND REQUESTS
12          v.                                FOR PRODUCTION OF DOCUMENTS

13   Pond5, Inc., a Delaware Corporation; and
     Pond5 user ckennedy342, a corporation or
14   individual of type unknown,

15                    Defendants.

16

17   TO:    Pond5, Inc.; and

18   TO:    Curt H. Feig and Larry E. Altenbrun of Nicoll Black & Feig PLLC, attorneys for
            Pond5, Inc.
19
            PLEASE TAKE NOTICE that, pursuant to FRCP 26, FRCP 33, and FRCP 34, Plaintiff
20
     Gordon Hempton requests you answer the following Plaintiff's First Interrogatories and
21
22   Requests for Production of Documents, here propounded.

23          **Interrogatories.**  You are requested to answer the following interrogatories in writing,

24   under oath, and you and your attorney must then sign them below, before serving, within

25   30 days after they are served on you, upon the undersigned counsel at the offices of Breskin

26
     Johnson & Townsend PLLC, 1000 Second Avenue, Suite 3670, Seattle, WA  98104.  These
27

PLAINTIFF'S FIRST INTERROGATORIES AND            BRESKIN ┊ JOHNSON ┊ TOWNSEND ᴾᴸᴸᶜ
REQUESTS FOR PRODUCTION OF DOCUMENTS - 1              1000 Second Avenue, Suite 3670
(NO.3:15-CV-05696-RBL)                           Seattle, Washington 98104  Tel: 206-652-8660

## INTERROGATORIES AND REQUESTS FOR PRODUCTION

**INTERROGATORY NO. 1:**  Identify all Customers who downloaded Gordon Hempton's copyrighted works of authorship from January 1, 2012 to the present.  Identify and describe with particularity all efforts to recall Mr. Hempton's material or otherwise respond to your knowledge that Mr. Hempton did not authorize the use of his works.

**ANSWER:**

**INTERROGATORY NO. 2:**  Identify all Contributors who uploaded Plaintiff's copyrighted works of authorship.  Identify and describe with particularity all efforts to recall Mr. Hempton's material or otherwise respond to Mr. Hempton's assertion that he did not authorize the use of his works.

**ANSWER:**

**INTERROGATORY NO. 3:**  Identify and describe with particularity all methods in place at Pond5 from January 1, 2012 to the present to detect against the uploading, downloading, display, copying or distribution of works of authorship without authorization from the copyright owner or other party with authority to license the content.

**ANSWER:**

**INTERROGATORY NO. 4:**  Identify all processes that Pond5 utilizes or has utilized to detect whether or not a sound recording is copyrighted or has a registered copyright with the United States Copyright Office.  If different processes were used at different times since January 1, 2012, identify the relevant time frame when each process with designed, created and implemented.

PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS - 7
(NO.3:15-CV-05696-RBL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    **RESPONSE:**

2

3

4        **REQUEST FOR PRODUCTION NO. 3:**  Please provide a complete accounting of

5    the history of Gordon Hempton's copyrighted sound files on Pond5, including which files have

6    been downloaded, when they were downloaded and/or purchased, who downloaded and/or

7    purchased them (including name, username, IP addresses, identity, location, business for whom

8    the Contributor was an agent, paypal username, paypal payment data information available to

9    Pond5), as well as how much the Contributor paid to download each file.

10       **RESPONSE:**

11

12

13       **REQUEST FOR PRODUCTION NO. 4:**  Please provide all documents related to

14   Pond5 user ckennedy342, including but not limited to his/her/its name, identity, address, IP

15   address, history of uploads, paypal payment data, any associated usernames or other

16   username(s) that Pond5 knows or suspects of being the same actual person/entity as

17   ckennedy342 or in any way associated with ckennedy342.

18       **RESPONSE:**

19

20

21       **REQUEST FOR PRODUCTION NO. 5:**  Please provide all documents related to

22   Pond5's attempt to identify the Contributor ckennedy342 and terminate ckennedy342's

23   account.

24       **RESPONSE:**

25

26

27

PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS - 13
(NO.3:15-CV-05696-RBL)

BRESKIN ┊ JOHNSON ┊ TOWNSEND ᴾᴸᴸᶜ
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1      **REQUEST FOR PRODUCTION NO. 6:**  Please provide all documents and

2  information received by Pond5 from the user ckennedy342.

3      **RESPONSE:**

4

5

6      **REQUEST FOR PRODUCTION NO. 7:**  Please provide all documents and

7  information received by Pond5 from any user who uploaded or downloaded Gordon Hempton's

8  works.

9      **RESPONSE:**

10

11

12      **REQUEST FOR PRODUCTION NO. 8:**  Please produce all documents related to any

13  other lawsuits, claims and/or settlements against or involving Pond5 related to any allegation

14  that Pond5 sold, hosted, licensed or made available to third parties on Pond5's website without

15  authorization by the author, owner, licensor, licensee or copyright holder.

16      **RESPONSE:**

17

18

19      **REQUEST FOR PRODUCTION NO. 9:**  Please produce all documents related to

20  efforts that Pond5 takes or has taken in the past to detect unauthorized use of files and/or

21  Contributors who are uploading files without proper authorization, including any internal

22  protocols, detection software, third-party studies or research regarding the nature or extent of

23  pirated files on Pond5, Pond5's exposure and/or liability related to such files, and any

24  efforts/mechanisms/tools that Pond5 could employ to identify and/or combat piracy and/or

25  copyright infringement.

26      **RESPONSE:**

27

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    **REQUEST FOR PRODUCTION NO. 15:** Please produce any Pond5 organizational
2    charts from January 1, 2012 to the present.
3    **RESPONSE:**
4
5
6    **REQUEST FOR PRODUCTION NO. 16:**  Please produce all documents related to
7    any efforts Pond5 has undertaken to contact Contributors who have downloaded and/or
8    purchased Gordon Hempton's works.
9    **RESPONSE:**
10
11
12    **REQUEST FOR PRODUCTION NO. 17:**  Please produce all correspondence related
13    to any claims that Gordon Hempton's works were uploaded or downloaded onto Pond5's
14    system or servers without Mr. Hempton's authorization.
15    **RESPONSE:**
16
17
18    **REQUEST FOR PRODUCTION NO. 18:**  Please produce any and all documents that
19    related to your affirmative defenses asserted in your Answer in this lawsuit.
20    **RESPONSE:**
21
22
23    **REQUEST FOR PRODUCTION NO. 19:**  Please produce all documents related to
24    your claim that "Pond5 is entitled to the safe harbor protections under the Digital Millennium
25    Copyright Act. Without limitation, Pond5 is specifically entitled to the safe harbor protections
26    afforded pursuant to 17 U.S.C. § 512(c)."
27    **RESPONSE:**

PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS - 16
(NO.3:15-CV-05696-RBL)

BRESKIN ¦ JOHNSON ¦ TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    **REQUEST FOR PRODUCTION NO. 20:**  Please produce all documents related to

2    your claim that "Plaintiff's claims against Pond5 may be barred by the doctrine of fair use."

3    **RESPONSE:**

4

5

6

7    DATED this 10th day of December, 2015.

8                                    BRESKIN JOHNSON & TOWNSEND PLLC

9                                    By:  s/ Roger M. Townsend
10                                        Roger M. Townsend, WSBA No. 25525
                                          1000 Second Avenue, Suite 3670
11                                        Seattle, WA  98104
                                          (206) 652-8660
12                                        (206) 652-8290 Fax
                                          rtownsend@bjtlegal.com
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS - 17
(NO.3:15-CV-05696-RBL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

# EXHIBIT 2

1     THE HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

7                  UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF WASHINGTON
8                          AT TACOMA

9  GORDON HEMPTON,

10                          Plaintiff,                No.:  3:15-cv-05696-RBL

11         v.                                         PLAINTIFF'S FIRST
                                                      INTERROGATORIES AND REQUESTS
12  POND5, INC., A DELAWARE                           FOR PRODUCTION OF DOCUMENTS
    CORPORATION; AND POND5 USER                       *AND DEFENDANT POND5'S*
13  CKENNEDY342, A CORPORATION OR                     *OBJECTIONS, ANSWERS AND*
    INDIVIDUAL OF TYPE UNKNOWN,                       *RESPONSES THERETO*
14                          Defendants.

15

16         COMES NOW Defendant Pond5, Inc. ("Pond5") and, pursuant to the Federal Rules of

17  Civil Procedure, provides the following objections, answers, and responses to Plaintiff's First

18  Interrogatories and Requests for Production.

19                          **GENERAL OBJECTIONS**

20         Pond5 hereby incorporates the following General Objections into each and every

21  individual response contained herein and into any future amendment, supplement or

22  modification to these responses, as well as any future discovery request of the plaintiff.

23         1.      Pond5's responses and objections are based upon information and belief after a

24  reasonably diligent search of all available records relating to the matters referred to in the

25  Complaint in this lawsuit.  Pond5 has yet to complete its investigation and discovery of the

26

POND5'S ANSWERS AND RESPONSES TO
PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 1
(3:15-cv-05696 RBL)

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1   facts pertaining to this action or its preparation for trial, and therefore reserves its rights to

2   amend, modify, or supplement the objections or responses, if necessary, at a later date.

3        2.    In providing the following responses, Pond5 does not waive, but rather intends

4   to preserve the following:

5             a.    all objections as to competency, relevancy, materiality and admissibility;

6             b.    the right to object on any ground to the use or admissibility of the

7   responses herein or documents produced by Pond5 in any subsequent proceedings including

8   the trial of this or any other action;

9             c.    all objections as to vagueness and ambiguity; and

10            d.    the right to object on any ground to any further discovery requests

11  propounded by plaintiff.

12       3.    Pond5 objects to each Interrogatory or Request for Production to the extent it

13  seeks information or documents protected against disclosure by the attorney-client privilege,

14  work product doctrine, joint defense privilege, and any other judicially recognized protection

15  or privilege.

16       4.    Pond5 objects to plaintiff's discovery requests to the extent that they seek to

17  impose obligations on Pond5 to produce a privilege log in excess of the obligation imposed by

18  Rule 26(b)(5). Pond5 will produce a privilege log that lists all pre-litigation documents which

19  Pond5 is withholding pursuant to a privilege claim. Pond5 will not, however, include in its

20  privilege log any post-litigation work product and attorney-client communications generated

21  after the commencement of litigation because, if it did so, Pond5 would need to log its entire

22  litigation file, which would be unduly burdensome and not reasonably calculated to lead to the

23  discovery of admissible evidence. *See Grider v. Keystone Health Plant Central, Inc.,* 580 F.3d

24  119, 139 n. 22 (3d Cir. 2009); *Hernandez v. Best Buy Co., Inc.,* 2014 WL 5454505, at *10

25  (S.D. Cal. 2014); *U.S. v. Bouchard Transp.,* 2010 WL 1529248, at *2 (E.D.N.Y. 2010); *Ryan*

26  *Inv. Corp. v. Pedregal de Cabo San Lucas,* 2009 WL 5114077, at *3 (N.D. Cal. 2009).

POND5'S ANSWERS AND RESPONSES TO
PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 2
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1        5.     Pond5 objects to each Interrogatory or Request for Production to the extent it

2   seeks information or documents the production of which would violate any constitutional,

3   statutory or common law privacy right of any entity, including Pond5, Inc.; any confidentiality

4   agreement between Pond5, Inc. and any entity or any court order restricting the disclosure of

5   information; or would result in the disclosure of confidential commercial information, trade

6   secrets, proprietary information or other sensitive business information of Pond5, Inc. or other

7   entities.

8        6.     Pond5 objects to each Interrogatory or Request for Production to the extent it

9   seeks information or documents regarding "each," "all," "every," or "any" on the grounds that

10   it is overly broad and unduly burdensome.  Pond5 has used reasonable diligence to provide

11   documents based on an examination of those files that may reasonably be expected to contain

12   responsive documents.

13        7.     Pond5 objects to each Interrogatory or Request for Production to the extent that

14   it seeks information or documents to which plaintiff has equal or greater access.

15        8.     Pond5 objects to the definition of "document" as overly broad, unduly

16   burdensome, and beyond the scope of the Rules of Civil Procedure to the extent it purports to

17   apply to information that is protected by the attorney client privilege or other applicable

18   privilege.

19        9.     Pond5 objects to all of plaintiff's instructions to the extent that they are vague,

20   ambiguous, overly broad, unduly burdensome, and inconsistent with the applicable Rules of

21   Civil Procedure.  The manner and method of Pond5's objections and responses herein,

22   including without limitation the scope of the documents that may be subject to production and

23   the persons or other entities from whom production may be required, and Pond5's rights and

24   obligations concerning any duty to supplement, any documents withheld under claim of

25   privilege, and the time period relevant to any duty to produce, are governed solely by the

26

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1   applicable Federal Rules of Civil Procedure and not the instructions set forth in plaintiff's

2   discovery requests.

3   ## INTERROGATORIES AND REQUESTS FOR PRODUCTION

4   **INTERROGATORY NO. 1:**   Identify all Customers who downloaded Gordon

5   Hempton's copyrighted works of authorship from January 1, 2012 to the present. Identify and

6   describe with particularity all efforts to recall Mr. Hempton's material or otherwise respond to

7   your knowledge that Mr. Hempton did not authorize the use of his works.

8   **ANSWER:** Pond5 objects to Interrogatory No. 1 because it is overly broad, unduly

9   burdensome, seeks information not relevant to this lawsuit, and is not reasonably calculated to

10   lead to the discovery of admissible evidence. It also seeks confidential and proprietary

11   information, which would not be adequately protected under a confidentiality agreement. The

12   identity of Defendants' Customers has no relevance whatsoever to this lawsuit and plaintiff's

13   request for such information is intended to annoy, harass, or embarrass the defendants.

14   Additionally, Pond5 objects because Interrogatory No. 1 is compound. Without waiving

15   objections, to date, despite requests from Pond5, plaintiff has not specifically identified which

16   "copyrighted works of authorship" he contends were uploaded to the Pond5 website. As such,

17   Pond5 is unable to answer Interrogatory No. 1. However, immediately upon being notified by

18   plaintiff's attorney that user ckennedy342 had allegedly uploaded content that was owned by

19   plaintiff, Pond5 removed all content uploaded by that user and blacklisted his account.

20

21   **INTERROGATORY NO. 2:**   Identify all Contributors who uploaded Plaintiff's

22   copyrighted works of authorship. Identify and describe with particularity all efforts to recall

23   Mr. Hempton's material or otherwise respond to Mr. Hempton's assertion that he did not

24   authorize the use of his works.

25   **ANSWER:** Pond5 objects to Interrogatory No. 2 because it is overly broad, unduly

26   burdensome, seeks information not relevant to this lawsuit, and is not reasonably calculated to

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1   policy which specifically relate to the allegations made in this lawsuit. See PON 000032-118.

2   Pond5 will supplement this response if additional responsive documents are located.

3

4   **REQUEST FOR PRODUCTION NO. 3:**  Please provide a complete accounting of

5   the history of Gordon Hempton's copyrighted sound files on Pond5, including which files have

6   been downloaded, when they were downloaded and/or purchased, who downloaded and/or

7   purchased them (including name, username, IP addresses, identity, location, business for whom

8   the Contributor was an agent, paypal username, paypal payment data information available to

9   Pond5), as well as how much the Contributor paid to download each file.

10   **RESPONSE:** Pond5 objects to Request for Production Number 3 because it requests

11   that Pond5 "provide a complete accounting," which is beyond the scope of FRCP 34.

12   Additionally, as previously stated, Pond5 does not know what "Gordon Hempton's copyrighted

13   sound files" are. Without waiving objections, Pond5 has no responsive documents.

14

15   **REQUEST FOR PRODUCTION NO. 4:**  Please provide all documents related to

16   Pond5 user ckennedy342, including but not limited to his/her/its name, identity, address,

17   IP address, history of uploads, paypal payment data, any associated usernames or other

18   username(s) that Pond5 knows or suspects of being the same actual person/entity as

19   ckennedy342 or in any way associated with ckennedy342.

20   **RESPONSE:** Pond5 objects to Request for Production No. 4 because it seeks

21   documents that are subject to the attorney-client privilege and work product doctrine. See also

22   General Objection #4. Pond5 will produce a privilege log for all pre-litigation documents.

23   Without waiving objections, please see PON 000143 and PON 000144-228. Pond5 is

24   continuing to investigate this matter and will likely supplement this response.

25

26

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1    **REQUEST FOR PRODUCTION NO. 5:** Please provide all documents related to

2  Pond5's attempt to identify the Contributor ckennedy342 and terminate ckennedy342's

3  account.

4    **RESPONSE:** Pond5 objects to Request for Production No. 5 because it is duplicative

5  of Request for Production No. 4. Without waiving objections, see response to Request for

6  Production No. 4.

7

8    **REQUEST FOR PRODUCTION NO. 6:** Please provide all documents and

9  information received by Pond5 from the user ckennedy342.

10   **RESPONSE:** Pond5 objects to Request for Production No. 6 because it is duplicative

11  of Request for Production No. 4. Pond5 further objects because a request for "information" is

12  beyond the scope of FRCP 34. Without waiving objections, see response to Request for

13  Production No. 4.

14

15   **REQUEST FOR PRODUCTION NO. 7:** Please provide all documents and

16  information received by Pond5 from any user who uploaded or downloaded Gordon

17  Hempton's works.

18   **RESPONSE:** Pond5 objects to Request for Production No. 7 because a request for

19  "information" is beyond the scope of FRCP 34. Without waiving objection, Pond5 is unaware

20  of any responsive documents because it does not know what are, or are alleged to be, "Gordon

21  Hempton's works."

22

23   **REQUEST FOR PRODUCTION NO. 8:** Please produce all documents related to

24  any other lawsuits, claims and/or settlements against or involving Pond5 related to any

25  allegation that Pond5 sold, hosted, licensed or made available to third parties on Pond5's

26  website without authorization by the author, owner, licensor, licensee or copyright holder.

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1    **REQUEST FOR PRODUCTION NO. 16:**  Please produce all documents related to

2   any efforts Pond5 has undertaken to contact Contributors who have downloaded and/or

3   purchased Gordon Hempton's works.

4    **RESPONSE:** None. As stated in previous answers and responses, plaintiff has failed to

5   sufficiently identify his "works."

6

7    **REQUEST FOR PRODUCTION NO. 17:**  Please produce all correspondence related

8   to any claims that Gordon Hempton's works were uploaded or downloaded onto Pond5's

9   system or servers without Mr. Hempton's authorization.

10    **RESPONSE:** Please see documents produced in Response to Request for Production

11   No. 4.

12

13    **REQUEST FOR PRODUCTION NO. 18:**  Please produce any and all documents

14   that related to your affirmative defenses asserted in your Answer in this lawsuit.

15    **RESPONSE:** Objection. Request for Production No. 18 is overly broad, unduly

16   burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible

17   evidence. This request is an impermissible "catch-all" request. It would require that, with

18   respect to every affirmative defense raised by Pond5, it produce every document that could

19   "relate" to that defense. Additionally, this request fails to comply with FRCP 34 because it fails

20   to describe "with reasonable particularity each item or category of items to be inspected."

21   Additionally, FRCP 26 already requires Pond5 to show or describe all documents that Pond5

22   may use to support its defenses. As a result, Request for Production No. 18 is, at least in part,

23   cumulative. Without waiving objections, please see all documents disclosed in this matter by

24   Pond5.

25

26

POND5'S ANSWERS AND RESPONSES TO
PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 22
(3:15-cv-05696 RBL)

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1

## VERIFICATION BY PARTY

2        I, Tom Crary, declare and state as follows:

3        I am the Chief Financial Officer of Pond5, Inc. and as such, am authorized to make this

4    verification on its behalf. I make this verification as an authorized representative of Pond5. I

5    have read the foregoing answers to interrogatories, know the contents thereof, and believe the

6    same to be true and correct to the best of my knowledge.

7        I declare under penalty of perjury under the laws of the State of Washington that the

8    foregoing is true and correct.

9        Executed at New York, New York, this 21st day of January, 2016.

10

11

12                                                Tom Crary
                                                  Chief Financial Officer
13                                                Pond5, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

POND5'S ANSWERS AND RESPONSES TO
PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 24
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1

### CERTIFICATION OF COUNSEL

2      The undersigned attorneys for Defendant Pond5 have read the foregoing Plaintiff's

3  First Interrogatories and Requests for Production of documents and the answers, responses and

4  any objections thereto, and confirm that the answers, responses and any objections thereto are

5  in compliance with Fed. R. Civ. P. 26(g).

6          **DATED** this 21st day of January, 2016.

7

8                                  NICOLL BLACK & FEIG PLLC

9

10                                 _____

11                                 Curt H. Feig, WSBA # 19890
                                   Larry E. Altenbrun, WSBA #31475
12                                 Attorneys for Defendant Pond5, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

POND5'S ANSWERS AND RESPONSES TO
PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 25
(3:15-cv-05696 RBL)

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1

## DECLARATION OF SERVICE

2

I, Jeanette Hendricks, hereby declare and state as follows:

3

I am a citizen of the United States and a resident of Seattle, Washington; I am over the

4

age of eighteen years and not a party to the within action; my business address is Nicoll Black & Feig PLLC, 1325 Fourth Avenue, Suite 1650, Seattle, WA 98101.

5

On the date set forth below, I caused to be served:

6

- **DEFENDANT POND5, INC.'S OBJECTIONS, ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION**

7

8

*Attorneys for Plaintiff*

9

Cynthia J. Heidelberg
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
206-652-8660
Email: cheidelberg@bjtlegal.com

☐ VIA HAND DELIVERY
☐ VIA FACSIMILE
☐ VIA U.S. MAIL
☒ VIA E-MAIL per E-service Agreement

10

11

12

13

14

Nicholas E. D. Power
LAW OFFICE OF NICHOLAS POWER
540 Guard St., Ste 140
Friday Harbor, WA 98250
360-298-0464
Email: nickedpower@gmail.com

☐ VIA HAND DELIVERY
☐ VIA FACSIMILE
☐ VIA U.S. MAIL
☒ VIA E-MAIL per E-service Agreement

15

16

17

18

Roger M. Townsend
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
206-652-8660
Fax: 206-652-8290
Email: rtownsend@bjtlegal.com
mvizzare@bjtlegal.com
admin@bjtlegal.com

☐ VIA HAND DELIVERY
☐ VIA FACSIMILE
☐ VIA U.S. MAIL
☒ VIA E-MAIL per E-service Agreement

19

20

21

22

23

24

DATED this 21st day of January, 2016.

25

26

*Jeanette Hendricks*
_____
Jeanette Hendricks

POND5'S ANSWERS AND RESPONSES TO
PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 26
(3:15-cv-05696 RBL)

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

# EXHIBIT 3

## BRESKIN | JOHNSON | TOWNSEND PLLC

February 5, 2016

**RECEIVED**

FEB 0 5 20

NICOLL BLACK & FEIG, PLLC

**SENT VIA MESSENGER**

Curt Feig
Larry Altenbrun
Nicoll Black & Feig PLLC
1325 4TH Ave. Suite 1650
Seattle, WA 98101

      Re:   *Hempton v. Pond5, Inc. et al; Docs Produced*

Dear Mr. Feig,

      Attached to this letter, please find a USB disk containing Plaintiff's first document production (HEMP000001 – 000069). The production consists of copyrighted source audio belonging to our client, Mr. Hempton. We've created an index that includes the original name of the file with the corresponding bates for your convenience.

      If you have any questions, feel free to contact me at chris@bjtelgal.com or 206 652-8660.

      Sincerely,

      BRESKIN JOHNSON & TOWNSEND PLLC

      Chris Cunningham
      Legal Assistant

Enclosures (USB disk containing PLTF's Document Production)

# EXHIBIT 4

## Larry Altenbrun

| | |
|---|---|
| **From:** | Roger Townsend <rtownsend@bjtlegal.com> |
| **Sent:** | Monday, March 07, 2016 2:07 PM |
| **To:** | Larry Altenbrun |
| **Cc:** | Cindy Heidelberg; nick power; Curt Feig; Jeanette Hendricks; Jamie Telegin; Melissa Vizzare |
| **Subject:** | RE: Hempton v. Pond5 - Notice of 30(b)(6) Deposition |

Larry:
This is acceptable.

Thanks,
Roger

**From:** Larry Altenbrun [mailto:laltenbrun@nicollblack.com]
**Sent:** Friday, March 04, 2016 2:06 PM
**To:** Roger Townsend <rtownsend@bjtlegal.com>
**Cc:** Cindy Heidelberg <cheidelberg@bjtlegal.com>; nick power <nickedpower@gmail.com>; Curt Feig <cfeig@nicollblack.com>; Jeanette Hendricks <jhendricks@nicollblack.com>
**Subject:** RE: Hempton v. Pond5 - Notice of 30(b)(6) Deposition

Roger:

It was a pleasure speaking to you this morning. Pursuant to our conversation, I have amended the proposed agreement to explicitly state that you can ask questions relating to the background of the FRCP 30(b)(6) designee and his knowledge of Pond5's background.

I understand that you are busy today but that you will review this over the weekend or on Monday morning, and will get back to me on Monday. It is important that we finalize an agreement by Monday so that my client and I can make appropriate plans for the March 22 deposition.

Finally, as a precaution, please confirm that you agree to strike the March 11 deposition. Obviously, we both anticipate finalizing the agreement that we have been discussing, but if for some reason we cannot reach a final agreement, we will need to re-set the date for a FRCP 30(b)(6) deposition to take place in New York (and we will need to conduct a meet and confer regarding the deposition topics). I presume that you are in agreement with this, but I don't want to be in a position where I am forced to file a motion for protective order at the last minute.

Here is the amended proposed agreement:

1. The plaintiff and defendant Pond5 (the "Parties") reach the following agreement for the purposes of facilitating an FRCP 30(b)(6) deposition of defendant that is limited to facts related to Pond5's defense under the Digital Millennium Copyright Act. The Parties understand that Pond5 plans to file a motion for summary judgment on this issue and this agreement is intended to promote case efficiency by allowing the plaintiff to discover facts related to the DMCA defense, limiting other discovery until the court has a reasonable opportunity to rule on the DMCA motion, and not prejudicing either party's right to conduct future discovery on other issues should the motion be denied or a ruling not issued in a timely manner. This agreement also promotes the goal of resolving discovery disputes amicably and without involvement of the court.

2. The Parties agree to hold an FRCP 30(b)(6) deposition in Seattle at the offices of Breskin Johnson & Townsend on Tuesday, March 22, beginning at 9 a.m.

3. The March 22 deposition will be limited to issues associated with topic #25 identified in plaintiff's amended notice of deposition dated February 10, 2016. The Parties understand and agree that facts reasonably related to Pond5's defense under the Digital Millennium Copyright Act (DMCA) will be the subject of this deposition. The parties further understand that the plaintiff is entitled to inquire into the designee's background and his or her personal knowledge of the background of Pond5.

4. Pond5 will supplement its written discovery responses no later than Friday, March 11.

5. From the date of this agreement until June 13, 2016, the parties agree that no further discovery of each other will be conducted, with the exception that Pond5 shall be entitled to submit a set of interrogatories and requests for production, which plaintiff shall answer, respond to, or object to within 45 days.

6. In the event that Pond5's motion is denied or the court has not issued a ruling on the motion by June 13, 2016, discovery will re-commence without limitation.

7. If discovery re-commences, a second FRCP 30(b)(6) deposition of Pond5 shall take place in New York on Wednesday, June 29. Defendant shall provide any objections to the second 30(b)(6) deposition no later than Monday, April 25. Thereafter, the parties shall work in good faith towards resolving any differences before involving the court.

8. Plaintiff's deposition shall take place in Seattle beginning at 9 a.m. on Friday, July 1 at the offices of Nicoll Black & Feig.

9. The Parties do not anticipate that this agreement will result in the need to seek an extension of any case deadlines. However, the Parties specifically acknowledge that this agreement is not intended to prevent either Party from conducting whatever discovery it deems necessary. The Parties will work in good faith to complete discovery within the existing deadlines and, if the circumstances so warrant, will work in good faith to agree upon reasonable extensions of discovery deadlines.

10. The Parties agree to be bound by this agreement so long as counsel for both parties agree to it by email acknowledging approval.

I look forward to hearing from you.

Best Regards,

Larry E. Altenbrun
Nicoll Black & Feig PLLC
1325 Fourth Ave., Suite 1650
Seattle, WA 98101
P: 206-838-7541
C: 206-920-5369
F: 206-838-7515

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. If the reader or recipient of this communication is not the intended recipient  or you believe that you have received this communication in

# EXHIBIT 5

THE HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9 | GORDON HEMPTON,

No.:  3:15-cv-05696-RBL

10 |                Plaintiff,

11 |     v.

PLAINTIFF'S FIRST
INTERROGATORIES AND REQUESTS
FOR PRODUCTION OF DOCUMENTS
*AND DEFENDANT POND5'S FIRST
SUPPLEMENTAL OBJECTIONS,
ANSWERS AND RESPONSES
THERETO*

12 | POND5, INC., A DELAWARE
CORPORATION; AND POND5 USER
13 | CKENNEDY342, A CORPORATION OR
INDIVIDUAL OF TYPE UNKNOWN,

14 |               Defendants.

15

16      COMES NOW Defendant Pond5, Inc. ("Pond5") and, pursuant to the Federal Rules of

17 Civil Procedure, provides the following supplemental objections, answers, and responses to

18 Plaintiff's First Interrogatories and Requests for Production.

19                      **GENERAL OBJECTIONS**

20      Pond5 hereby incorporates the following General Objections into each and every

21 individual response contained herein and into any future amendment, supplement or

22 modification to these responses, as well as any future discovery request of the plaintiff.

23      1.     Pond5's responses and objections are based upon information and belief after a

24 reasonably diligent search of all available records relating to the matters referred to in the

25 Complaint in this lawsuit. Pond5 has yet to complete its investigation and discovery of the

26

POND5'S FIRST SUPPLEMENTAL ANSWERS AND RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 1
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1  facts pertaining to this action or its preparation for trial, and therefore reserves its rights to
2  amend, modify, or supplement the objections or responses, if necessary, at a later date.
3       2.     In providing the following responses, Pond5 does not waive, but rather intends
4  to preserve the following:
5            a.     all objections as to competency, relevancy, materiality and admissibility;
6            b.     the right to object on any ground to the use or admissibility of the
7  responses herein or documents produced by Pond5 in any subsequent proceedings including
8  the trial of this or any other action;
9            c.     all objections as to vagueness and ambiguity; and
10           d.     the right to object on any ground to any further discovery requests
11 propounded by plaintiff.
12      3.     Pond5 objects to each Interrogatory or Request for Production to the extent it
13 seeks information or documents protected against disclosure by the attorney-client privilege,
14 work product doctrine, joint defense privilege, and any other judicially recognized protection
15 or privilege.
16      4.     Pond5 objects to plaintiff's discovery requests to the extent that they seek to
17 impose obligations on Pond5 to produce a privilege log in excess of the obligation imposed by
18 Rule 26(b)(5). Pond5 will produce a privilege log that lists all pre-litigation documents which
19 Pond5 is withholding pursuant to a privilege claim. Pond5 will not, however, include in its
20 privilege log any post-litigation work product and attorney-client communications generated
21 after the commencement of litigation because, if it did so, Pond5 would need to log its entire
22 litigation file, which would be unduly burdensome and not reasonably calculated to lead to the
23 discovery of admissible evidence. *See Grider v. Keystone Health Plant Central, Inc.,* 580 F.3d
24 119, 139 n. 22 (3d Cir. 2009); *Hernandez v. Best Buy Co., Inc.*, 2014 WL 5454505, at *10
25 (S.D. Cal. 2014); *U.S. v. Bouchard Transp.,* 2010 WL 1529248, at *2 (E.D.N.Y. 2010); *Ryan
26 Inv. Corp. v. Pedregal de Cabo San Lucas,* 2009 WL 5114077, at *3 (N.D. Cal. 2009).

POND5'S FIRST SUPPLEMENTAL ANSWERS AND RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 2
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

5.      Pond5 objects to each Interrogatory or Request for Production to the extent it seeks information or documents the production of which would violate any constitutional, statutory or common law privacy right of any entity, including Pond5, Inc.; any confidentiality agreement between Pond5, Inc. and any entity or any court order restricting the disclosure of information; or would result in the disclosure of confidential commercial information, trade secrets, proprietary information or other sensitive business information of Pond5, Inc. or other entities.

6.      Pond5 objects to each Interrogatory or Request for Production to the extent it seeks information or documents regarding "each," "all," "every," or "any" on the grounds that it is overly broad and unduly burdensome.  Pond5 has used reasonable diligence to provide documents based on an examination of those files that may reasonably be expected to contain responsive documents.

7.      Pond5 objects to each Interrogatory or Request for Production to the extent that it seeks information or documents to which plaintiff has equal or greater access.

8.      Pond5 objects to the definition of "document" as overly broad, unduly burdensome, and beyond the scope of the Rules of Civil Procedure to the extent it purports to apply to information that is protected by the attorney client privilege or other applicable privilege.

9.      Pond5 objects to all of plaintiff's instructions to the extent that they are vague, ambiguous, overly broad, unduly burdensome, and inconsistent with the applicable Rules of Civil Procedure.   The manner and method of Pond5's objections and responses herein, including without limitation the scope of the documents that may be subject to production and the persons or other entities from whom production may be required, and Pond5's rights and obligations concerning any duty to supplement, any documents withheld under claim of privilege, and the time period relevant to any duty to produce, are governed solely by the

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1  applicable Federal Rules of Civil Procedure and not the instructions set forth in plaintiff's

2  discovery requests.

3  **INTERROGATORIES AND REQUESTS FOR PRODUCTION**

4  **INTERROGATORY NO. 1:** Identify all Customers who downloaded Gordon

5  Hempton's copyrighted works of authorship from January 1, 2012 to the present. Identify and

6  describe with particularity all efforts to recall Mr. Hempton's material or otherwise respond to

7  your knowledge that Mr. Hempton did not authorize the use of his works.

8  **ANSWER:** Pond5 objects to Interrogatory No. 1 because it is overly broad, unduly

9  burdensome, seeks information not relevant to this lawsuit, and is not reasonably calculated to

10  lead to the discovery of admissible evidence. It also seeks confidential and proprietary

11  information, which would not be adequately protected under a confidentiality agreement. The

12  identity of Pond5's customers has no relevance whatsoever to this lawsuit and plaintiff's

13  request for such information is intended to annoy, harass, or embarrass the defendants.

14  Additionally, Pond5 objects because Interrogatory No. 1 is compound. Finally, Pond5 objects

15  to the phrase: "all efforts to recall Mr. Hempton's material or otherwise respond to your

16  knowledge that Mr. Hempton did not authorize the use of his works." That phrase is vague,

17  undefined, and confusing, and may seek information or communications that are protected by

18  the attorney-client privilege or work product doctrine.

19  Without waiving objections, to date, despite requests from Pond5, plaintiff has not

20  produced significant evidence demonstrating which, if any, of his "copyrighted works of

21  authorship" were uploaded to the Pond5 website. As such, defendant cannot identify the

22  customers that downloaded those works.

23  On February 5, 2016, plaintiff produced HEMP000001-000069, which consists of 69

24  audio files totaling over 42 hours of audio content. The production was described as

25  "copyrighted source audio belonging to our client." Plaintiff has made no allegation that the

26  production consists of audio files that were improperly uploaded to Pond5.com. Nor has the

POND5'S FIRST SUPPLEMENTAL ANSWERS AND RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 4
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1   plaintiff identified portions of the files that he contends were improperly uploaded. Moreover,

2   the audio files disclosed as HEMP000001-000069 are significantly longer than all but a few of

3   the clips uploaded by user ckennedy342. Based upon plaintiff's assertions, the massive volume

4   of material disclosed, and the length of the audio files produced, it appears as though

5   HEMP000001-000069 is simply a disclosure of a significant portion (perhaps all) of the library

6   of audio works that plaintiff has created over the past many years. Plaintiff has made no effort

7   to correlate that library of works to the allegations set forth in the complaint, to clips that were

8   uploaded by ckennedy342, or to audio clips uploaded by any other Contributor to the Pond5

9   website.

10          Pond5 does not have a legal obligation to analyze plaintiff's voluminous production of

11   42+ hours of audio content and inform plaintiff of any possible infringements. The burden of

12   proving the claims asserted in the lawsuit rests upon the plaintiff.

13          To the extent that HEMP000001-000069 contains audio that might have been

14   improperly uploaded by ckennedy342, it appears that, to the extent that any infringement

15   occurred, ckennedy342 may have cut clips from one or more of the larger audio files disclosed.

16   Pond5 does not have the ability to compare the much larger audio files produced by plaintiff to

17   shorter clips that were uploaded by ckennedy342. Moreover, as discussed above, Pond5 has no

18   legal obligation to do so.

19          In the complaint, at paragraph 72, plaintiff identifies 9 clips that were allegedly posted

20   by ckennedy342 and that were allegedly owned by the plaintiff. Pond5 is unaware of any other

21   notice, whether pre-litigation or in the discovery process, where plaintiff has identified clips

22   allegedly posted by ckennedy342 or any other Pond5 contributor that were allegedly owned by

23   the plaintiff. Additionally, with respect to the nine clips alleged in the complaint, plaintiff has

24   never produced evidence that allows Pond5 to reasonably compare the clips in question with

25   files uploaded onto the Pond5 website and reach a conclusion as to whether the material is, in

26   fact, infringing. With respect to the nine clips in question, Pond5 has compared their names to

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

the names of the 10,243 clips that were uploaded by ckennedy342. Through that comparison, Pond5 has identified clips that contain a substantially similar name to the ones identified in the complaint. Pond5 notes that several of the names were not exact matches and some of the upload dates appear to be incorrectly stated in the complaint. A summary of this comparison is provided below:

| Name in Complaint | Alleged Download Date | Possible Match | Download Date | Clip ID |
|---|---|---|---|---|
| Thunder Moderately Distant | 9/10/2014 | Thunder Moderately Distant (1) | 9/10/2014 | 41616044 |
| | | Thunder Moderately Distant (2) | 9/10/2014 | 41616068 |
| Coyote Solo | 9/22/2014 | Coyote Solo | 9/222014 | 41867579 |
| Desert Bird Wing Flutters | 9/22/2014 | Desert Bird Wings Flutter | 9/22/2014 | 41868559 |
| Desert Morning Bird Chorus (3) | 9/22/2014 | Desert Morning Bird Chorus (1) | 9/22/2014 | 41868734 |
| | | Desert Morning Bird Chorus (2) | 9/22/2014 | 41868731 |
| | | Desert Morning Bird Chorus (3) | 9/22/2014 | 41868734 |
| Prairie Quiet | 11/30/14 | Prairie Quiet Faint Insects Birds | 11/30/14 | 44444836 |
| Faint Insects Birds | 11/30/14 | *See above* | | |
| Red-Tailed Hawk | 11/30/14 | Prairie Red-Tailed Hawk | 11/30/14 | 44444837 |
| Windy Grass Wispy Breeze | 11/30/14 | Wind Grass Wispy Breeze | 9/14/2014 | 41736427 |
| Prairie Wind Buffeting Faint Crickets | 12/4/2014 | Prairie Wind Buffeting Faint Crickets | 12/1/2014 | 44445399 |

Assuming that the above "possible matches" are correct, there were a total of 43 sales of the above clips. Those sales resulted in revenue to Pond5 totaling $192.95. Pond5 does not admit that the clips identified above were infringing. As noted above, to date, plaintiff has still not produced sufficient evidence for Pond5 to conduct the analysis necessary to reach such a conclusion.

Pond5 is uncertain as to the meaning of the phrase: "efforts to recall Mr. Hempton's material or otherwise respond to your knowledge that Mr. Hempton did not authorize the use

POND5'S FIRST SUPPLEMENTAL ANSWERS AND RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 6
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1  of his works." To the extent that this refers to contact with its customers, Pond5 has not

2  contacted any of its customers with respect to the allegations made by Mr. Hempton. Pond5 is

3  unaware of any legal obligation to do so. With respect to Pond5's response to Mr. Hempton's

4  allegations, upon being notified, Pond5 immediately removed all content uploaded by

5  ckennedy342 and blacklisted his account. Pond5 subsequently conducted a thorough

6  investigation of ckennedy342, sharing the results of its investigation with plaintiff. Pond5 also

7  had numerous communications with plaintiff and his attorney.

8

9      **INTERROGATORY NO. 2:**   Identify all Contributors who uploaded Plaintiff's

10  copyrighted works of authorship. Identify and describe with particularity all efforts to recall

11  Mr. Hempton's material or otherwise respond to Mr. Hempton's assertion that he did not

12  authorize the use of his works.

13      **ANSWER:** Pond5 objects to Interrogatory No. 2 because it is overly broad, unduly

14  burdensome, seeks information not relevant to this lawsuit, and is not reasonably calculated to

15  lead to the discovery of admissible evidence. Additionally, Pond5 objects because

16  Interrogatory No. 2 is compound. Pond5 further objects because portions of Interrogatory No. 2

17  are duplicative of Interrogatory No. 1. Finally, Pond5 objects to the phrase "works of

18  authorship" as the phrase is vague and undefined. Without waiving objections, see objections

19  and answer to Interrogatory No. 1. Pond5 does not know whether contributor ckennedy342

20  uploaded plaintiff's works and is aware of no other Contributor that uploaded his works.

21

22      **INTERROGATORY NO. 3:**   Identify and describe with particularity all methods in

23  place at Pond5 from January 1, 2012 to the present to detect against the uploading,

24  downloading, display, copying or distribution of works of authorship without authorization

25  from the copyright owner or other party with authority to license the content.

26

POND5'S FIRST SUPPLEMENTAL ANSWERS AND RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 7
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1    **REQUEST FOR PRODUCTION NO. 7:**   Please provide all documents and
2    information received by Pond5 from any user who uploaded or downloaded Gordon
3    Hempton's works.

4    **RESPONSE:** Pond5 objects to Request for Production No. 7 because a request for
5    "information" is beyond the scope of FRCP 34. Pond5 also objects to Request for Production
6    No. 7 because it is overbroad, unduly burdensome and not reasonably calculated to lead to the
7    discovery of admissible evidence. Without waiting objections, to date, plaintiff has still not
8    produced evidence demonstrating that anyone uploaded or downloaded any of his works from
9    Pond5's website. As such, defendant is unaware of responsive documents. Pond5 has,
10   nonetheless, disclosed all responsive documents pertaining to user ckennedy342.

11

12   **REQUEST FOR PRODUCTION NO. 9:**   Please produce all documents related to
13   efforts that Pond5 takes or has taken in the past to detect unauthorized use of files and/or
14   Contributors who are uploading files without proper authorization, including any internal
15   protocols, detection software, third-party studies or research regarding the nature or extent of
16   pirated files on Pond5, Pond5's exposure and/or liability related to such files, and any
17   efforts/mechanisms/tools that Pond5 could employ to identify and/or combat piracy and/or
18   copyright infringement.

19   **RESPONSE:** Pond5 objects to Request for Production No. 9 to the extent that it seeks
20   its communications involving detection of unauthorized use of specific files or specific
21   Contributors. The production of such communications would require a massive undertaking
22   and is overly broad and unduly burdensome. Pond5 also objects to the extent that this Request
23   for Production seeks documents that are protected by the attorney-client privilege or work
24   product doctrine. See attached privilege log. Without waiving objections, see PON 000295-
25   315.

26

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1

**VERIFICATION BY PARTY**

2      I, Tom Crary, declare and state as follows:

3      I am the Chief Financial Officer of Pond5, Inc. and as such, am authorized to make this

4 verification on its behalf. I make this verification as an authorized representative of Pond5. I

5 have read the foregoing supplemental answers to interrogatories, know the contents thereof,

6 and believe the same to be true and correct to the best of my knowledge.

7      I declare under penalty of perjury under the laws of the State of Washington that the

8 foregoing is true and correct.

9      Executed at New York, New York, this 11th day of March, 2016.

10

11

12      Tom Crary
        Chief Financial Officer
13      Pond5, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

POND5'S FIRST SUPPLEMENTAL ANSWERS AND RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 20
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1

### CERTIFICATION OF COUNSEL

2      The undersigned attorneys for Defendant Pond5 have read the foregoing Plaintiff's

3  First Interrogatories and Requests for Production of documents and the supplemental answers,

4  responses and any objections thereto, and confirm that the supplemental answers, responses

5  and any objections thereto are in compliance with Fed. R. Civ. P. 26(g).

6      **DATED** this 11th day of March, 2016.

7

8                                   NICOLL BLACK & FEIG PLLC

9

10                                  _____
                                    Curt H. Feig, WSBA # 19890
11                                  Larry E. Altenbrun, WSBA #31475
                                    Attorneys for Defendant Pond5, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

POND5'S FIRST SUPPLEMENTAL ANSWERS AND RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 21
(3:15-cv-05696 RBL)

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1

## DECLARATION OF SERVICE

2

I, Jeanette Hendricks, hereby declare and state as follows:

3

4

I am a citizen of the United States and a resident of Seattle, Washington; I am over the age of eighteen years and not a party to the within action; my business address is Nicoll Black & Feig PLLC, 1325 Fourth Avenue, Suite 1650, Seattle, WA 98101.

5

On the date set forth below, I caused to be served:

6

7

- PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS *AND DEFENDANT POND5'S FIRST SUPPLEMENTAL OBJECTIONS, ANSWERS AND RESPONSES THERETO*

8

9

*Attorneys for Plaintiff*

Cynthia J. Heidelberg
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
206-652-8660
Email: cheidelberg@bjtlegal.com

☐ VIA HAND DELIVERY
☐ VIA FACSIMILE
☐ VIA U.S. MAIL
☒ VIA E-MAIL per E-service Agreement

10

11

12

13

14

Nicholas E. D. Power
LAW OFFICEOF NICHOLAS POWER
540 Guard St., Ste 140
Friday Harbor, WA 98250
360-298-0464
Email: nickedpower@gmail.com

☐ VIA HAND DELIVERY
☐ VIA FACSIMILE
☐ VIA U.S. MAIL
☒ VIA E-MAIL per E-service Agreement

15

16

17

18

Roger M. Townsend
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
206-652-8660
Fax: 206-652-8290
Email: rtownsend@bjtlegal.com
mvizzare@bjtlegal.com
admin@bjtlegal.com

☐ VIA HAND DELIVERY
☐ VIA FACSIMILE
☐ VIA U.S. MAIL
☒ VIA E-MAIL per E-service Agreement

19

20

21

22

23

24

DATED this 11th day of March, 2016.

25

26

*[signature]*

Jeanette Hendricks

POND5'S FIRST SUPPLEMENTAL ANSWERS AND RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 22
(3:15-cv-05696 RBL)

LAW OFFICES OF
**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

# EXHIBIT 6

**BRESKIN | JOHNSON | TOWNSEND** PLLC

March 16, 2016

<u>**SENT VIA EMAIL AND US MAIL**</u>

March 16, 2016

Curt H. Feig and Larry E. Altenbrun
Law Offices of Nicoll Black & Feig PLLC
1325 Fourth Avenue, Suite 1650
Seattle, WA 98010

       *Re: Hempton v. Pond5 – Inadequate Discovery Response and Request for FRCP 37*
          *Conference*

Dear Larry:

      I write to notify you of Plaintiff's objections to the adequacy of the responses supplied to
Plaintiff's First Interrogatories and Requests for Production that we received from your office on
Friday, March 11, 2015.

      With an aim to keep things on track for the 30(b)(6) deposition on March 22 – and
without waiving further objections – this letter focuses on the additional responses and
production related to the DMCA safe harbor issue that are necessary for the deposition. It is clear
we require further production and complete responses related to the safe harbor defense and prior
to the deposition next Tuesday. Any valid concern that Pond5 may have is adequately addressed
by this district standard protective order.

      We respectfully request that you review your responses and the documents supplied in
conjunction with Interrogatory 1. This interrogatory seeks clearly discoverable information
within the broad constructs of FRCP 26. Pond5 does not deny that it has allowed the
unauthorized upload of Mr. Hempton's life work, distributed that work to third parties for
money, and now refuses to disclose its customers that have downloaded Mr. Hempton's
copyrighted works of authorship. This is untenable. Mr. Hempton has every right to know who
holds these pirated copies of his work for obvious issues that are germane to this case. We
disagree with your conclusory notion that the identity of who downloaded Mr. Hempton's work
is not relevant. Indeed, it is the very core of this case: Pond5 has allowed Mr. Hempton's work
to be distributed to third parties who could themselves be distributing Mr. Hempton's work and
compounding the harm to Mr. Hempton.

*Pond5 Discovery Deficiency Letter*
*March 16, 2016*
*Page 2 of 3*

Similarly, we object to your characterization regarding Interrogatory No. 1 that "all efforts to recall Mr. Hempton's material or otherwise respond to your knowledge that Mr. Hempton did not authorize the use of his work" is somehow vague and undefined. If you are legitimately confused, then we can clarify. Again, Pond5 has distributed Mr. Hempton's copyrighted works of authorship to third parties. What have you done about it? Have you contacted your customers to notify them of the infringement and requested that they return or destroy copies? Certainly this is the minimum action Pond5 would have taken to mitigate the damages in this matter. If your client has sat idly by for over a year to preserve its reputation at the expense of mitigate the damages to Mr. Hempton's, then he has a right to know that.

I also object to Pond5's incomplete response and production associated with Interrogatory No. 3. Pond5's arbitrary limitation of the time period requested and decision to respond with only "current" methods to detect piracy is unwarranted and insufficient. Pond5 objects that the time period requested "significantly exceeds the dates in which ckennedy342 posted content." But ckennedy342 posted content at least as far back as September 2014. Thus, Pond5's methods for detecting piracy in 2014 through the present are relevant to the lawsuit and a full response and related production for this time period is required.

Likewise your response and production associated with Interrogatory 5 is insufficient. The extent of piracy on Pond5's site, as well as Pond5's investigation and actions are directly relevant to its claimed safe harbor defense. It is our expectation that Pond5 has significant weaknesses in its efforts to police piracy and is consciously or recklessly maintaining an illegitimate market for its own financial benefit. By way of example, in Pond5's communication to Mr. Hempton, Pond5 has previously indicated that the geographic location associated with an IP address serves as an indicator of piracy. For example, an IP located in a country known for piracy or that is listed on the Department of Commerce's Export Controlled or Embargoed Countries *should* have been a red flag for Pond5 when allowing the upload of thousands of documents.

With regard to Interrogatory No. 15, Plaintiff expects that the parties will finalize the sole remaining question regarding the protective order and will be able to sign and file it today or tomorrow, which was sent to you yesterday. Accordingly, Plaintiff expects that Pond5 produce the chart or table showing gross monthly revenue by 5PM EST Friday, March 18, 2016.

To the extent that Pond5 has any concerns about the confidentiality or propriety nature of the information produced, those concerns are adequately addressed by a protective order.

Pond5's discovery deficiencies are of imminent concern and jeopardize whether we can go forward with the deposition on Tuesday, March 22. Please produce supplemental responses to these Interrogatories and supply a copy of all relevant documentary or physical evidence in the possession of your client or their agents by 5PM EST Friday, March 18, 2016. In the event that

*Pond5 Discovery Deficiency Letter*
*March 16, 2016*
*Page 3 of 3*

this cannot be accomplished, please make yourself available for a FRCP 37 conference today or first thing tomorrow.  We can be available before or after business hours if necessary.

Sincerely,

BRESKIN JOHNSON & TOWNSEND PLLC

Roger M. Townsend

# EXHIBIT 7



## NICOLL BLACK & FEIG
### ATTORNEYS

March 17, 2016

Larry E. Altenbrun
Direct Dial 206-838-7541
Fax 206-838-7515
laltenbrun@nicollblack.com

**VIA E-MAIL**
Roger M. Townsend
Breskin Johnson & Townsend PLLC
1000 Second Avenue, Suite 3670
Seattle, WA  98104

Re:     *Hempton v. Pond5: Discovery Issues*

Dear Roger:

I write to address your letter dated March 16. In that letter, you stated concerns over the adequacy of four of Pond5's answers to interrogatories. You indicated that the focus of the letter was to address issues related to the DMCA defense necessary for the deposition scheduled for next week. Below, I address the issues raised in your letter. It remains our goal to reach a reasonable resolution to these issues.

Your letter objects to Pond5's answer to Interrogatory No. 1 because it failed to disclose customers that downloaded the plaintiff's copyrighted works of authorship and included an objection based upon vagueness. Your letter implies that your primary concern is that Pond5 describes any contact that it had with customers relating to plaintiff's allegations or other actions taken with respect to Pond5's alleged knowledge that plaintiff did not authorize the use of his work.

We believe that your concerns over Interrogatory No. 1 are adequately addressed in our supplemental answer. As we explained:

> Pond5 is uncertain as to the meaning of the phrase: "efforts to recall Mr. Hempton's material or otherwise respond to your knowledge that Mr. Hempton did not authorize the use of his works." To the extent that this refers to contact with its customers, Pond5 has not contacted any of its customers with respect to the allegations made by Mr. Hempton. Pond5 is unaware of any legal obligation to do so. With respect to Pond5's response to Mr. Hempton's allegations, upon being notified, Pond5 immediately removed all content uploaded by ckennedy342 and blacklisted his account. Pond5 subsequently conducted a thorough investigation of ckennedy342, sharing the results of its investigation with plaintiff. Pond5 also had numerous communications with plaintiff and his attorney.

March 17, 2016
Roger Townsend
Page 2 of 3

The foregoing paragraph explains that Pond5 has not contacted customers with respect to the plaintiff's allegation and reasonably describes the actions it took in response to the allegation. Pond5 has also disclosed numerous documents that provide additional information that might be responsive to this request.

With respect to the identity of customers, we dispute that Pond5 has been provided with requisite notice to reach any particular conclusion regarding whether any copyrighted work owned by your client was uploaded to Pond5's website or downloaded by any customer.

Pond5 was first made aware of an issue involving your client on May 26, 2015. Over the next several days, Pond5 repeatedly asked for additional information, culminating in the following email sent May 29:

> As I wrote in my initial email, we can immediately remove any potentially fraudulent content and take swift action to make things right once we know the tracks / contributors in question, which is information your clients will have to provide us. At the risk of stating the obvious, Pond5 cannot locate your clients' intellectual property without being informed as to what they claim is theirs.

Pond5 did not hear from plaintiff or counsel until June 29, when it received a takedown letter (dated June 24) from Nick Power. The takedown letter failed to satisfy the DMCA because, without limitation, it did not identify the allegedly infringing material in a manner that was reasonably sufficient to permit Pond5 to locate the material. The letter identified user ckennedy342 as "the prime culprit" and stated that ckennedy342 "has uploaded thousands of files" owned by the plaintiff. However, the letter failed to identify the files by name or any other method that would allow Pond5 to identify them. In response to the letter of June 24 and despite its deficiencies, Pond5 removed all content uploaded by ckennedy342 and blacklisted his account. These actions were taken within one day of receipt of the deficient takedown notice.

Since June 24, 2015, despite the passing of nearly nine months and the filing of this litigation, the plaintiff has still not identified the "thousands of files" that were allegedly uploaded by ckennedy342, nor has the plaintiff identified any other contributor that plaintiff claims uploaded material owned by the plaintiff. The only evidence that the plaintiff has ever produced that identifies allegedly infringing material is a bare allegation in the complaint, which identifies nine clips that were allegedly posted by ckennedy342 and that were allegedly owned by the plaintiff. That evidence, standing alone, is insufficient for Pond5 to reach a conclusion that plaintiff's work was ever downloaded. Plaintiff has still not even produced a DMCA-compliant notice, let alone any other evidence that would allow Pond5 to reach a conclusion as to whether plaintiff's material has been downloaded.

While we do not believe that the plaintiff has produced evidence sufficient for Pond5 to reach a conclusion as to whether his work was downloaded, we also believe that this issue is likely moot for purposes of the DMCA motion and next week's deposition. As stated

March 17, 2016
Roger Townsend
Page 3 of 3

above, Pond5 has *not contacted any of its customers* with respect to plaintiff's claims. We are unaware of any element associated with the DMCA where the specific identity of possible customers would be relevant to the DMCA motion, especially in light of the fact that we have informed you that we did not contact any customers in response to plaintiff's claims.

With respect to Interrogatory No. 3, you object to Pond5's decision to limit the time requested to the present. You suggest that a fair compromise is to answer the interrogatory for the time period from 2014 to the present. We agree to this compromise and will supplement.

With respect to Interrogatory No. 5, Pond5 stands by its objections. Nonetheless, by Friday, Pond5 will supplement Request for Production No. 8 and No. 12, which will include substantial information associated with claims of infringement, DMCA notices, actions taken in response to claims of infringement, and settlements. We believe that these disclosures will provide you with the information that you are seeking, at least so far as the DMCA defense is concerned. We also note that, as explained in our supplemental answer to Interrogatory No. 12, Pond5 rarely "identifies" a file as being uploaded without authorization. Rather, Pond5 becomes aware of a possibility of an improper upload and, in many cases, takes precautionary action based upon that possibility.

With respect to Interrogatory No. 15, we will produce the referenced table as soon as the parties have agreed to and filed the protective order.

Best Regards,

NICOLL BLACK & FEIG PLLC

Larry E. Altenbrun

# EXHIBIT 8

## Larry Altenbrun

| | |
|---|---|
| **From:** | Roger Townsend <rtownsend@bjtlegal.com> |
| **Sent:** | Sunday, April 10, 2016 12:17 PM |
| **To:** | Larry Altenbrun |
| **Cc:** | Curt Feig; Jeanette Hendricks; Kaye Smith; Cindy Heidelberg; Nick Power |
| **Subject:** | Hempton v. Pond5, Inc |

Larry:

I wanted to follow up regarding discovery.  As you will recall, we agreed that your client would produce certain documents (see 30(b)(6) dep transcript at page 141).

In addition, we respectfully request copies of the files maintained by your client which were uploaded by Ckennedy (*Id.* at 148:18-20).  These are presumably easily accessible and have been obtained by your office.

Thank you for your attention to this.

Yours,
Roger


Roger M. Townsend
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Office: (206) 652-8660
Direct: (206) 518-6200
Fax: (206) 652-8290

IMPORTANT: This e-mail message and any attachments are confidential and may be privileged. If you are not the intended recipient please notify the sender immediately -- by replying to this message -- and destroy all copies of this message and any attachments. Thank you.

Pursuant to IRS Circular 230, please be advised that, to the extent this communication (and any attachments) contains any tax advice, it is not intended to be, and cannot be used, for purposes of avoiding penalties under the Internal Revenue Code.


**From:** Larry Altenbrun [mailto:laltenbrun@nicollblack.com]
**Sent:** Thursday, April 07, 2016 7:42 PM
**To:** Roger Townsend <rtownsend@bjtlegal.com>
**Cc:** Curt Feig <cfeig@nicollblack.com>; Jeanette Hendricks <jhendricks@nicollblack.com>; Kaye Smith <KSmith@nicollblack.com>; Melissa Vizzare <mvizzare@bjtlegal.com>; Jamie Telegin <jtelegin@bjtlegal.com>; Cindy Heidelberg <cheidelberg@bjtlegal.com>; Nick Power <nickedpower@gmail.com>
**Subject:** RE: Hempton v. Pond5, Inc. - ER 408 Communication

Good Evening Roger:

I just wanted to let you know that we have received the letter that you sent pursuant to the below email and we are considering your proposal. We will get back to you soon.

Best Regards,

Larry E. Altenbrun
Nicoll Black & Feig PLLC
1325 Fourth Ave., Suite 1650

1

# EXHIBIT 9

THE HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8 AT TACOMA

9 GORDON HEMPTON,                          No.:  3:15-cv-05696-RBL

10                          Plaintiff,      PLAINTIFF'S FIRST
                                            INTERROGATORIES AND REQUESTS
11          v.                              FOR PRODUCTION OF DOCUMENTS
                                            *AND DEFENDANT POND5'S THIRD*
12 POND5, INC., A DELAWARE                  *SUPPLEMENTAL OBJECTIONS,*
CORPORATION; AND POND5 USER                 *ANSWERS AND RESPONSES*
13 CKENNEDY342, A CORPORATION OR            *THERETO*
INDIVIDUAL OF TYPE UNKNOWN,
14
                         Defendants.

15

16          COMES NOW Defendant Pond5, Inc. ("Pond5") and, pursuant to the Federal Rules of

17 Civil Procedure, provides the following supplemental objections, answers, and responses to

18 Plaintiff's First Interrogatories and Requests for Production.

19                              **GENERAL OBJECTIONS**

20          Pond5 hereby incorporates the following General Objections into each and every

21 individual response contained herein and into any future amendment, supplement or

22 modification to these responses, as well as any future discovery request of the plaintiff.

23          1.      Pond5's responses and objections are based upon information and belief after a

24 reasonably diligent search of all available records relating to the matters referred to in the

25 Complaint in this lawsuit.  Pond5 has yet to complete its investigation and discovery of the

26

POND5'S THIRD SUPPLEMENTAL ANSWERS AND RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 1
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL  BLACK  &  FEIG  PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE  WASHINGTON 98101
(206)838-7555

1  applicable Federal Rules of Civil Procedure and not the instructions set forth in plaintiff's

2  discovery requests.

3  <u>**REQUESTS FOR PRODUCTION**</u>

4  **REQUEST FOR PRODUCTION NO. 1:**  Please provide all documents related to

5  Pond5 user ckennedy342, including but not limited to his/her/its name, identity, address,

6  IP address, history of uploads, paypal payment data, any associated usernames or other

7  username(s) that Pond5 knows or suspects of being the same actual person/entity as

8  ckennedy342 or in any way associated with ckennedy342.

9  **RESPONSE:**  Pond5 incorporates by reference its previous objections and responses

10  to Request for Production No. 4. Additionally, please see PON 000530-538. Pond5 is also

11  producing an updated privilege log.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

POND5'S THIRD SUPPLEMENTAL ANSWERS AND RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 4
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1

**CERTIFICATION OF COUNSEL**

2      The undersigned attorneys for Defendant Pond5 have read the foregoing Plaintiff's

3   First Interrogatories and Requests for Production of documents and the supplemental answers,

4   responses and any objections thereto, and confirm that the supplemental answers, responses

5   and any objections thereto are in compliance with Fed. R. Civ. P. 26(g).

6      **DATED** this 28th day of April, 2016.

7                                      NICOLL BLACK & FEIG PLLC

8

9                                      _____

10                                     Curt H. Feig, WSBA # 19890
                                       Larry E. Altenbrun, WSBA #31475
11                                     Attorneys for Defendant Pond5, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

POND5'S THIRD SUPPLEMENTAL ANSWERS AND RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 5
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

<u>**DECLARATION OF SERVICE**</u>

I, Jeanette Hendricks, hereby declare and state as follows:

I am a citizen of the United States and a resident of Seattle, Washington; I am over the age of eighteen years and not a party to the within action; my business address is Nicoll Black & Feig PLLC, 1325 Fourth Avenue, Suite 1650, Seattle, WA 98101.

On the date set forth below, I caused to be served:

- **PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS** *AND DEFENDANT POND5'S <u>THIRD SUPPLEMENTAL</u> OBJECTIONS, ANSWERS AND RESPONSES THERETO*

*<u>Attorneys for Plaintiff</u>*

Cynthia J. Heidelberg
BRESKIN JOHNSON & TOWNSEND
PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
206-652-8660
Email: cheidelberg@bjtlegal.com

☐ VIA HAND DELIVERY
☐ VIA FACSIMILE
☐ VIA U.S. MAIL
☒ VIA E-MAIL per E-service
Agreement
without thumb drive PON 000530

Nicholas E. D. Power
LAW OFFICE OF NICHOLAS POWER
540 Guard St., Ste 140
Friday Harbor, WA 98250
360-298-0464
Email: nickedpower@gmail.com

☐ VIA HAND DELIVERY
☐ VIA FACSIMILE
☐ VIA U.S. MAIL
☒ VIA E-MAIL per E-service
Agreement
without thumb drive PON 000530

Roger M. Townsend
BRESKIN JOHNSON & TOWNSEND
PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
206-652-8660
Fax: 206-652-8290
Email: rtownsend@bjtlegal.com
mvizzare@bjtlegal.com
admin@bjtlegal.com

☒ VIA HAND DELIVERY
☐ VIA FACSIMILE
☐ VIA U.S. MAIL
☒ VIA E-MAIL per E-service
Agreement
with thumb drive PON 000530

DATED this 28th day of April, 2016.

*Jeanette Hendricks*
Jeanette Hendricks

POND5'S THIRD SUPPLEMENTAL ANSWERS AND RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 6
(3:15-cv-05696 RBL)

LAW OFFICES OF
NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206)838-7555

# EXHIBIT 10

## Larry Altenbrun

| | |
|---|---|
| **From:** | Roger Townsend <rtownsend@bjtlegal.com> |
| **Sent:** | Monday, June 06, 2016 9:53 AM |
| **To:** | Larry Altenbrun |
| **Cc:** | Curt Feig; Cindy Heidelberg; nick power |
| **Subject:** | RE: Hempton v. Pond5, Inc |

Larry:
We have not received the audio files you agreed to produce.

Please update me on this and where you are in the process.

Thank you,
Roger


Roger M. Townsend
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Office: (206) 652-8660
Direct: (206) 518-6200
Fax: (206) 652-8290

IMPORTANT: This e-mail message and any attachments are confidential and may be privileged. If you are not the intended recipient please notify the sender immediately -- by replying to this message -- and destroy all copies of this message and any attachments. Thank you.

Pursuant to IRS Circular 230, please be advised that, to the extent this communication (and any attachments) contains any tax advice, it is not intended to be, and cannot be used, for purposes of avoiding penalties under the Internal Revenue Code.


**From:** Larry Altenbrun [mailto:laltenbrun@nicollblack.com]
**Sent:** Monday, May 02, 2016 11:16 AM
**To:** Roger Townsend <rtownsend@bjtlegal.com>
**Cc:** Curt Feig <cfeig@nicollblack.com>
**Subject:** RE: Hempton v. Pond5, Inc

Hi Roger:

Before I pass this along to my clients for consideration, are you amenable to push the scheduled depositions back by a week or two? I don't mean to overcomplicate this, but we worked hard to get the motion filed so that there would at least be a chance that the court will rule before discovery re-commences.

Let me know.

Thanks,

Larry E. Altenbrun
Nicoll Black & Feig PLLC
1325 Fourth Ave., Suite 1650
Seattle, WA 98101
P: 206-838-7541

# EXHIBIT 11

## Larry Altenbrun

| | |
|---|---|
| **From:** | Roger Townsend <rtownsend@bjtlegal.com> |
| **Sent:** | Thursday, July 14, 2016 9:21 AM |
| **To:** | Larry Altenbrun |
| **Cc:** | Curt Feig; nick power; Jeanette Hendricks; Roger Townsend; Cindy Heidelberg |
| **Subject:** | RE: Pond5 Litigation - Damages |

Larry:

I will look at your discovery requests. I'm out the last week of July and first week of August, so keep that in mind in your scheduling.

REDACTED-ER 408
REDACTED-ER 408                                                    We have calculated that there were 114 tracks downloaded for a total of 208 downloads (some tracks were downloaded more than once).  I believe you should have a list of the names of the downloads, as they came from your client.  REDACTED-ER 408
REDACTED-ER 408

There are two important discovery points which are outstanding and about which we need to meet and confer.  Are you available on Friday morning at 10 am?

Specifically, we have the tracks from Ckennedy that you previously provided.  However, it appears that the metadata was stripped from the files.  Can you advise whether that was done by Pond5?  If so, we need versions with the metadata included.

Additionally, please be advised that we need you to identify the individual end users who downloaded the tracks.  We held off on discovery on this point in the hopes of settlement, which has passed.

Also, please include Cindy in your emails on this case.

Roger

# EXHIBIT 12

**Larry Altenbrun**

| | |
|---|---|
| **From:** | Roger Townsend <rtownsend@bjtlegal.com> |
| **Sent:** | Tuesday, July 19, 2016 2:48 PM |
| **To:** | Larry Altenbrun |
| **Cc:** | Roger Townsend; nick power; Curt Feig; Cindy Heidelberg |
| **Subject:** | Hempton v. Pond5 Meet and Confer |

Larry:
This follows up our meet and confer from today.

1. <u>Metadata on Sound Files</u>.  I advised you that the metadata on the sound files has been removed.  I can now clarify that the metadata was removed on April 21, 2016.  The metadata is important to our investigation and prosecution of this matter and we need to understand what happened with these files and how the metadata came to be removed. You agreed to provide a statement on behalf of your client regarding the chain of evidence and treatment of those electronic files.

2. <u>Discovery of Users</u>.  I advised that we needed you to identify (as such term is defined in the discovery requests) the end users that downloaded Gordon Hempton's copyrighted files.  You asked for more information regarding the basis of our claim that the particular files were, in fact, Mr. Hempton's copyrighted works of authorship.  We allege that the following files and data from Ckennedy/Mr. Kahn were infringement's of Mr. Hempton's copyrighted works:

| pond_user | objectid | Pond5 name | Hempton filename |
|---|---|---|---|
| 554434 | 41736427 | Wind grass wispy breeze | QP02 0200 Wind grass wispy breeze. |
| 554434 | 41868858 | Desert morning bird chorus (3) | QP01 0131 Desert morning bird chor |
| 554434 | 41386040 | Owl Hoot | QP01 0060 Deciduous forest owl hoo |
| 554434 | 44444837 | Prairie red-tailed hawk | QP06 0647 Prairie red-tailed hawk.w |
| 554434 | 41616044 | Thunder moderately distant (1) | QP03 0279 Thunder moderately dista |
| 554434 | 41868559 | Desert bird wings flutter | QP01 0135 Desert bird wings flutter. |
| 554434 | 41867579 | Coyote solo | QP01 0138 Coyote solo.wav |
| 554434 | 41868481 | Deciduous forest owl hoot | QP01 0060 Deciduous forest owl hoo |
| 554434 | 41868731 | Desert morning bird chorus (2) | QP01 0130 Desert morning bird chor |
| 554434 | 44444836 | Prairie quiet faint insects birds | QP06 0660 Prairie quiet faint insects |
| 554434 | 44445399 | Prairie wind buffeting faint crickets | QP06 0604 Prairie wind buffeting fai |
| 554434 | 41869774 | Rain soft | QP01 0011 Rain soft.wav |
| 554434 | 41734694 | Wind desert soft variable over flat lava bed | QP02 0247 Wind desert soft variable |
| 554434 | 41737230 | Wind modern light variable wires | QP02 0139 Wind modern light variab |
| 554434 | 41691269 | Wind plants gentle breeze soft leaf rustles | QP02 0161 Wind plants gentle breeze |
| 554434 | 41869319 | Ocean shore wave lap gull circles | QP01 0074 Ocean shore wave lap gu |
| 554434 | 44261421 | Prairie dawn chorus mourning dove (1) | QP06 0576 Prairie dawn chorus mour |
| 554434 | 41869470 | Prairie day wind crickets | QP01 0085 Prairie day wind crickets. |
| 554434 | 44445350 | Prairie wind blustery crickets | QP06 0602 Prairie wind blustery crick |
| 554434 | 41647142 | River drumming in rocks waterfall | QP04 0408 River drumming in rocks |
| 554434 | 41892479 | Stream moderate | QP01 0018 Stream moderate.wav |
| 554434 | 41615922 | Thunder distant | QP01 0009 Thunder distant.wav |
| 554434 | 41615937 | Thunder echo | QP03 0276 Thunder echo.wav |
| 554434 | 41650473 | Water drop | QP04 0335 Water drop.wav |
| 554434 | 41690886 | Wind deciduous forest breeze gentle insects | QP02 0184 Wind deciduous forest br |
| 554434 | 41734901 | Wind desert rock boulder space | QP02 0251 Wind desert rock boulder |
| 554434 | 41734847 | Wind desert variable complex swirling | QP02 0255 Wind desert variable com |
| 554434 | 41736339 | Wind grass winter brisk consistent | QP02 0212 Wind grass winter brisk c |
| 554434 | 41691051 | Wind palm frond soft gusty more distant | QP02 0246 Wind palm frond soft gus |
| 554434 | 41691833 | Wind plants whipping breeze stronger | QP02 0165 Wind plants whipping bre |
| 554434 | 41691926 | Wind reed light gusts stem action | QP02 0217 Wind reed light gusts ster |
| 554434 | 41867016 | Canyon owl | QP01 0128 Canyon owl.wav |
| 554434 | 41867394 | Coniferous forest ambience active | QP01 0063 Coniferous forest ambier |
| 554434 | 41867258 | Coniferous forest jay (1) | QP01 0071 Coniferous forest jay.wav |
| 554434 | 41870040 | Deciduous forest country morning | QP01 0046 Deciduous forest country |
| 554434 | 41868545 | Deciduous forest tufted titmouse solo | QP01 0052 Deciduous forest tufted t |
| 554434 | 41868632 | Desert mockingbird solo | QP01 0133 Desert mockingbird solo. |
| 554434 | 41869143 | Insect crickets active | QP01 0029 Insect crickets active.wav |
| 554434 | 41869213 | Insect crickets isolated | QP01 0028 Insect crickets isolated.w |
| 554434 | 44442581 | Prairie crickets busy wind sweeping night (1) | QP06 0621 Prairie crickets busy wind |
| 554434 | 44263959 | Prairie dawn early | QP06 0567 Prairie early dawn.wav |
| 554434 | 41869523 | Prairie meadowlark chirps chortle | QP01 0087 Prairie meadowlark chirps |
| 554434 | 44444959 | Prairie western meadowlark (1) | QP06 0624 Prairie western meadowl |
| 554434 | 44445494 | Prairie wind gusting crickets | QP06 0601 Prairie wind gusting cricke |
| 554434 | 44265505 | Prairie wind soft breezy | QP06 0588 Prairie wind soft breezy.v |
| 554434 | 44445896 | Prairie wind sweeping meadowlark | QP06 0613 Prairie wind sweeping me |
| 554434 | 41614061 | Rain downpour | QP03 0301 Rain downpour.wav |
| 554434 | 41615060 | Rain quiet light tone | QP03 0292 Rain quiet light tone.wav |

My client is currently traveling and will provide additional information regarding these infringements, but I wanted to give you this notice.  As Pond5 has noted, Mr. Kahn did almost nothing to cover his tracks and did not even change the names of the files infringed from Mr. Hempton.

3.  I advised that we intend to pursue relief from the court on these issues and avail ourselves of the court's process for telephonic hearing of discovery disputes.  (Dkt. #29 at par. 3)  I requested times on Thursday and Friday for calling the court.

Let me know if you have any questions or comments.


Best regards,
Roger



Roger M. Townsend
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Office: (206) 652-8660
Direct: (206) 518-6200
Fax: (206) 652-8290

IMPORTANT: This e-mail message and any attachments are confidential and may be privileged. If you are not the intended recipient please notify the sender immediately -- by replying to this message -- and destroy all copies of this message and any attachments. Thank you.

Pursuant to IRS Circular 230, please be advised that, to the extent this communication (and any attachments) contains any tax advice, it is not intended to be, and cannot be used, for purposes of avoiding penalties under the Internal Revenue Code.

# EXHIBIT 13

## Larry Altenbrun

| | |
|---|---|
| **From:** | Larry Altenbrun |
| **Sent:** | Thursday, July 21, 2016 10:18 AM |
| **To:** | 'Roger Townsend' |
| **Cc:** | nick power; Curt Feig; Cindy Heidelberg |
| **Subject:** | RE: Hempton v. Pond5 Meet and Confer |

Dear Roger:

I write to address the issues raised below and discussed during our telephone conference on Tuesday, July 19.

With respect to metadata, we are looking into this issue. It is our intent to provide you with any and all metadata that we have. I can confirm that there was no intention to remove metadata from any file as part of the discovery process. It is not yet clear to me whether metadata was unintentionally removed during the copying process, whether Pond5 maintains audio files without any metadata in the normal course of its business, or whether there is some other explanation. I have spent considerable time on this issue already and have had regular communications with Pond5. I hope to provide you with a detailed response to this issue by early next week.

With respect to the identity of end users, two days ago, for the very first time and after almost 16 months have elapsed since plaintiff first notified Pond5 of potential copyright issues, your client disclosed to us a list of files that he contends were uploaded by ckennedy342 and owned by Mr. Hempton. In that disclosure, the plaintiff also provided a column with "Hempton filename," in which he listed names of files that he contends are titles of Mr. Hempton's work corresponding to the titles given by ckennedy342.

In February, you disclosed HEMP000001-000069, which you stated were "copyrighted source audio belonging to our client." This disclosure includes 69 files, identified with an index provided by you that contains the "Wav File Name." The disclosure contains over 40 hours of audio. We have repeatedly informed you that the disclosure does not provide Pond5 with any reasonable method of comparing it to the files uploaded by ckennedy342 in order to determine which files uploaded by ckennedy342 were possibly owned by your client.

We have compared the list of Mr. Hempton's filenames from the table that you provided us Tuesday to the filenames set forth in the massive audio disclosure from February and none of the filenames appear to match. We have also sampled a small portion of the material and that process does not appear to result in matches to the uploads by ckennedy342. As such, the plaintiff has still not provided us with any reasonable method in which we can compare the uploads by ckennedy342 to work that is owned by the plaintiff. Your client has still not disclosed sufficient evidence to comply with the most fundamental requirement of the DMCA, which is proper notice pursuant to 17 USC 512(c)(3)(A). Moreover, the plaintiff has not produced sufficient evidence to establish a significant likelihood that there was any copyright violation, let alone a violation that is attributable to Pond5. In fact, by producing 40+ hours of "copyrighted source audio" that does not match the files that were allegedly illegally uploaded by ckennedy342, if anything, the evidence suggests that no such copyright violation occurred.

Until the plaintiff produces sufficient evidence that allows Pond5 to make a reasonable comparison between works that are owned by Mr. Hempton and those that were uploaded by ckennedy342, it is premature for you to ask for the identity of customers. The Interrogatories (numbers 1 & 8) that this relates to request that we identify customers that "have downloaded Gordon Hempton's works" or "downloaded Gordon Hempton's copyrighted works." At this time, there is an absence of evidence establishing what his works are and he has failed to provide us with any reasonable means of comparing his alleged work to those that were uploaded by ckennedy342.

If and when the plaintiff produces audio files that match those identified in the table that you sent to us on Tuesday, we will conduct a comparison and update our answers, responses, and objections to your discovery requests accordingly. We do not waive our right to argue that, even then, your request for the identity of customers is objectionable under various grounds. In fact, there is a high likelihood that we will object on the basis that the request is not reasonably calculated to lead to the discovery of admissible evidence and that the relevant information regarding sales, license terms, dates, etc. can be disclosed without providing the identity of customers. However, until you have at least provided us with actual audio files that match the titles from Tuesday's disclosure and we have a reasonable opportunity to conduct our own analysis, I cannot definitively take a position on this issue and it is premature for me to do so.

Best Regards,

Larry E. Altenbrun
Nicoll Black & Feig PLLC
D: 206-838-7541
C: 206-920-5369

---

**From:** Roger Townsend [mailto:rtownsend@bjtlegal.com]
**Sent:** Tuesday, July 19, 2016 2:48 PM
**To:** Larry Altenbrun
**Cc:** Roger Townsend; nick power; Curt Feig; Cindy Heidelberg
**Subject:** Hempton v. Pond5 Meet and Confer

Larry:
This follows up our meet and confer from today.

1. <u>Metadata on Sound Files</u>.  I advised you that the metadata on the sound files has been removed.  I can now clarify that the metadata was removed on April 21, 2016.  The metadata is important to our investigation and prosecution of this matter and we need to understand what happened with these files and how the metadata came to be removed. You agreed to provide a statement on behalf of your client regarding the chain of evidence and treatment of those electronic files.
2. <u>Discovery of Users</u>.  I advised that we needed you to identify (as such term is defined in the discovery requests) the end users that downloaded Gordon Hempton's copyrighted files.  You asked for more information regarding the basis of our claim that the particular files were, in fact, Mr. Hempton's copyrighted works of authorship.  We allege that the following files and data from Ckennedy/Mr. Kahn were infringement's of Mr. Hempton's copyrighted works:

# EXHIBIT 14

**Larry Altenbrun**

| | |
|---|---|
| **From:** | Roger Townsend <rtownsend@bjtlegal.com> |
| **Sent:** | Friday, July 22, 2016 3:18 PM |
| **To:** | Larry Altenbrun |
| **Cc:** | nick power; Curt Feig; Cindy Heidelberg; Roger Townsend |
| **Subject:** | RE: Hempton v. Pond5 Meet and Confer |

Larry:

Thank you for your email.  We will look forward to your follow up on the metadata and production of the files with the metadata included.

Furthermore, we will follow up on our evidence of infringement.  We do not think there is a reasonable dispute that the files on Pond5's system were Mr. Hempton's copyrighted works of authorship.  However, because you dispute this contention, we will provide additional evidence that the files on Pond5 system were, in fact, infringing – some of which will be contained in the metadata that was apparently stripped from the files by defendants.

To be clear, you provide no legal basis why we cannot seek the identity of the end users who have downloaded our client's files and injunctive relief against those end users from further dissemination of our client's copyrighted works.

Finally, we are in receipt of your discovery requests to Mr. Hempton.  We respectfully request an extension of time to respond to those requests for an additional 21 days.  My client has been traveling on family vacation and simply will not have time to respond.

As you know, I am out of the office the next 2 weeks.  During that time, please continue your discussion of these matters with Cindy and Nick.

Best regards,
Roger

**From:** Larry Altenbrun [mailto:laltenbrun@nicollblack.com]
**Sent:** Thursday, July 21, 2016 10:18 AM
**To:** Roger Townsend <rtownsend@bjtlegal.com>
**Cc:** nick power <nickedpower@gmail.com>; Curt Feig <cfeig@nicollblack.com>; Cindy Heidelberg <cheidelberg@bjtlegal.com>
**Subject:** RE: Hempton v. Pond5 Meet and Confer

Dear Roger:

I write to address the issues raised below and discussed during our telephone conference on Tuesday, July 19.

With respect to metadata, we are looking into this issue. It is our intent to provide you with any and all metadata that we have. I can confirm that there was no intention to remove metadata from any file as part of the discovery process. It is not yet clear to me whether metadata was unintentionally removed during the copying process, whether Pond5 maintains audio files without any metadata in the normal course of its business, or whether there is some other explanation. I have spent considerable time on this issue already and have had regular communications with Pond5. I hope to provide you with a detailed response to this issue by early next week.

With respect to the identity of end users, two days ago, for the very first time and after almost 16 months have elapsed since plaintiff first notified Pond5 of potential copyright issues, your client disclosed to us a list of files that he contends

# EXHIBIT 15

## Larry Altenbrun

| | |
|---|---|
| **From:** | Larry Altenbrun |
| **Sent:** | Monday, July 25, 2016 2:06 PM |
| **To:** | nick power; Cindy Heidelberg |
| **Cc:** | Curt Feig; 'Roger Townsend'; Jeanette Hendricks |
| **Subject:** | RE: Hempton v. Pond5 Meet and Confer |

Good Afternoon Cindy & Nick:

I understand that Roger is out of the office so I am sending this to you.

Initially, unfortunately, there are a few statements in the below email that I must dispute so that there cannot be any assumption that we concede these points.

The statement that there is not "a reasonable dispute that the files on Pond5's system were Mr. Hempton's copyrighted works of authorship" is simply not true. The plaintiff has <u>never</u> produced evidence for us to independently confirm which files were owned by him. In fact, last week was the very first time that the plaintiff has even shared a list with us that identified the material uploaded by ckennedy342 that he contends were owned by plaintiff. If you contend that we are supposed to know that some of the clips that were uploaded by ckennedy342 were owned by plaintiff, you need to identify that evidence that supports your assertion. As far as we can tell, the plaintiff simply has not produced this evidence. We also note that plaintiff and his attorneys have gone from alleging pre-complaint that ckennedy uploaded "thousands" of files that were owned by plaintiff to 138 files (complaint) to 114 files (mediation) to 87 files (table provided by counsel last week). We previously assumed that the plaintiff would have never filed this lawsuit if he could not produce evidence showing precisely what was copyrighted and what infringed those copyrights; we are no longer so sure of that and we are frustrated by your unwillingness or inability to share this evidence, especially when combined with an insistence that we should somehow have such knowledge.

I also disagree with the assertion that we haven't provided a legal basis for resisting efforts to provide you with the identity of end users. We have stated proper legal bases for this in our objections to discovery and we further described our legal position in written correspondence. It is my hope that this issue can be resolved amicably, but it is premature for us to take a formal position on the issue until you have provided a minimal amount of evidence supporting your claims.

To update you on the status of our efforts to retrieve metadata, it appears as though there might be metadata stored on the Amazon web servers that Pond5 utilizes. However, confirming that it does exist and obtaining the metadata are not simple tasks. Pond5 is working to identify and obtain whatever metadata exists. We will update you further on this issue when we have more information, which will be later this week.

Turning to Roger's request for a 21-day extension to respond to discovery, we cannot agree to that extension but we are willing to try to work with you to accommodate plaintiff's schedule. Initially, Roger's email is unclear as to whether the request applies to both sets of outstanding discovery or only the second set of written discovery. Currently, according to my calendar, the first set of discovery is due on August 12 and the second set of discovery is due August 22. The challenge to extending the response deadlines is that the plaintiff's deposition is set for August 24 and we need these responses prior to taking his deposition. An additional concern is that the expert disclosure deadline is currently set for September 28 and, as you can imagine, we need the plaintiff's deposition to decide whether expert testimony will be necessary and, if so, we would need sufficient time for the expert(s) to draft reports. The bottom line is that we cannot agree to a blanket 21-day extension. Nonetheless, we do want to accommodate the plaintiff. As such, we propose the following: (1) we agree to move the deadline for plaintiff to respond to both sets of discovery to Friday, September 2; (2) we move the plaintiff's deposition to Thursday, September 8; and (3) we stipulate to extend the expert disclosure

deadline to Tuesday, October 18. Please also note that, assuming you agree to this schedule, Pond5 does not waive its right to conduct other discovery during this period; time does not allow for us to put off other discovery in this matter. Please let me know if the foregoing is acceptable to you and your client. I am trying my best to accommodate the plaintiff's schedule, but such accommodations must not prejudice my client's rights.

I look forward to hearing from you.

Best Regards,

Larry

|  | **Larry E. Altenbrun**<br>Nicoll Black & Feig, PLLC<br>1325 4th Ave, Ste 1650, Seattle, WA 98101<br>C: 206-920-5369 |  |
|---|---|---|

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. If the reader or recipient of this communication is not the intended recipient  or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail and all attachments without reading or saving them in any manner.

**From:** Roger Townsend [mailto:rtownsend@bjtlegal.com]
**Sent:** Friday, July 22, 2016 3:18 PM
**To:** Larry Altenbrun
**Cc:** nick power; Curt Feig; Cindy Heidelberg; Roger Townsend
**Subject:** RE: Hempton v. Pond5 Meet and Confer

Larry:
Thank you for your email.  We will look forward to your follow up on the metadata and production of the files with the metadata included.

Furthermore, we will follow up on our evidence of infringement.  We do not think there is a reasonable dispute that the files on Pond5's system were Mr. Hempton's copyrighted works of authorship.  However, because you dispute this contention, we will provide additional evidence that the files on Pond5 system were, in fact, infringing – some of which will be contained in the metadata that was apparently stripped from the files by defendants.

To be clear, you provide no legal basis why we cannot seek the identity of the end users who have downloaded our client's files and injunctive relief against those end users from further dissemination of our client's copyrighted works.

Finally, we are in receipt of your discovery requests to Mr. Hempton.  We respectfully request an extension of time to respond to those requests for an additional 21 days.  My client has been traveling on family vacation and simply will not have time to respond.

As you know, I am out of the office the next 2 weeks.  During that time, please continue your discussion of these matters with Cindy and Nick.

Best regards,
Roger

**From:** Larry Altenbrun [mailto:laltenbrun@nicollblack.com]
**Sent:** Thursday, July 21, 2016 10:18 AM
**To:** Roger Townsend <rtownsend@bjtlegal.com>
**Cc:** nick power <nickedpower@gmail.com>; Curt Feig <cfeig@nicollblack.com>; Cindy Heidelberg
<cheidelberg@bjtlegal.com>
**Subject:** RE: Hempton v. Pond5 Meet and Confer

# EXHIBIT 16

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

GORDON HEMPTON, Plaintiff,

v.

No.  3:15-cv -05696-RBL

POND5, a Delaware Corporation; and POND5
USER CKENNEDY342, a corporation or
individual of type unknown, Defendants.

**DECLARATION OF**
**GORDON HEMPTON**

1.  I declare under penalty of perjury under the laws of the State of Washington
    that the following is true and correct.

2.  My name is Gordon Hempton, I am the Plaintiff in this lawsuit, I am over
    18 years of age and competent to testify in this matter.

3.  In this lawsuit I am asserting that the Defendant, Pond5, sold, offered for
    sale and commercially used my copyrighted audio files without my
    permission.

4.  I am an audio professional who has worked as a professional sound
    recordist and in digital media audio production for over 30 years.

5.  I am the world's preeminent recorder of nature sounds.  I have spent the
    last 35 years traveling the world often to remote locations to obtain the
    highest quality nature sounds.  My sounds have been used in television and
    film productions, and software.  I have made my living selling and licensing
    my audio recordings for the past 35 years.

Declaration of Gordon Hempton

6. Pond5 has offered to-date an unknown quantity of my recordings for sale and has used my recordings to commercially market their business. The reason I do not know the exact number of my recordings that Pond5 maintains on its website and holds out for sale is because it is impossible for an outside user of Pond5's website to search by actual author or other recording characteristic that would identify me as the owner. Rather an outside user must search for an identifying description of the sound. For example, if a Pond5 user was searching for his sounds of rainfall, he would search for "rainfall" or "thunder" or "storm." A user cannot search Pond5 using metadata embedded in the file or other identifying characteristics. Accordingly, to find my property, say of a bird chirp, I would have to listen to the hundreds or possibly thousands of results that would be displayed after entering "bird chirp" in the search data field.

7. In discovery, Pond5 supplied me with a spreadsheet of what Pond5 reports to be all the files uploaded by pirate ckennedy342 (a/k/a Hassan Khan).

8. From the spreadsheet that Pond5 supplied showing all the files that are purported to have been uploaded by Mr. Khan or his aliases, I then assembled my own spreadsheet identifying which of those files are my copyrighted works. A true and correct copy of this spreadsheet is attached to this Declaration as Exhibit A.

9. My review of the data Pond5 spreadsheet shows that user ckennedy342 had a total of 10,236 tracks posted on Pond5's website. Of those 10,236 tracks 821 are owned by me. At a minimum, Pond5 sold 114 of the tracks owned by me for a total of 208 sales.

10. Pond5 has requested proof that the files Pond5 offered for sale are actually mine.

11. In accordance with this request, I have performed an analysis on eleven of the 114 tracks Pond5 sold.

12. As an audio professional I am able to use various technological tools to show that the files are identical. I used two distinct methods; wave form display and spectrum analysis.

13. Wave form display is common to all audio editing software programs. I used a program that is commercially available and called Sound Forge Pro 11.0.

14. When a sound file is opened in an audio editing application the entire recording can be seen visually from start (left, zero seconds) to finish (right, file duration). Most sound recordings are a complex series of events with

Declaration of Gordon Hempton

LAW OFFICE OF
NICHOLAS E.D. POWER
540 GUARD ST. SUITE 150
FRIDAY HARBOR, WA 98250
360-298-0464

complex wave forms or fluctuations of sound pressure levels. An audio engineer can look at a recording and immediately see where the loudest sounds are because they reach highest on the amplitude scale. The quietest moments are when the wave form settles closely to the center line (zero amplitude). An experienced audio engineer can also quickly zoom in and examine any sound event to see greater detail, become familiar with a file structure, and go to the sounds they seek. Any experienced audio engineer knows that while some sound files look similar, no two sound files look exactly alike unless they come from the same original recording. Wave form is just one thumbprint or audio signature which can be used to identify files as sonically identical.

15. A second comparison of files can be undertaken by spectrum analysis. I performed this analysis by using the same commercially available software Sound Forge Pro 11. Spectrum analysis is when a whole file (or any portion of a file) is analyzed to produce a summary graph that shows the frequency range from 20 cycles per second (Hz) to 20,000 Hz. (This is the full range of human hearing.) For each frequency the amount of energy or amplitude is displayed. The likelihood that any two sound files have exactly the same spectrum analysis but sound different is improbable to the extent that it is statistically insignificant.

16. Both wave form display and spectrum analysis are good file identification methods because they are fairly independent of sample rates, file formats, and metadata--all of which can be easily changed by a user.

17. As Exhibit B I have attached a true and correct copy of the graphical and data output of the wave form display and spectrum analysis of 11 file pairs. Each pair of files includes one by ckennedy342 and one that I own. We see exact matches in wave form display, file lengths (down to one thousandth of second) and Blackman-Harris spectrum analysis.

18. There is only one conclusion: each of the files in each matched pair are essentially the same and the Pond5 files are, in fact, mine.

Signed on August 3rd, 2016 in Joyce, Washington


Gordon Hempton, Plaintiff


Declaration of Gordon Hempton

LAW OFFICE OF
NICHOLAS E.D. POWER
540 GUARD ST. SUITE 150
FRIDAY HARBOR, WA 98250
360-298-0464

# EXHIBIT 17

## Larry Altenbrun

| | |
|---|---|
| **From:** | Larry Altenbrun |
| **Sent:** | Thursday, August 11, 2016 6:52 PM |
| **To:** | Cindy Heidelberg |
| **Cc:** | nick power; Roger Townsend; Jeanette Hendricks; Curt Feig; Jamie Telegin |
| **Subject:** | Hempton v. Pond5 - Request for Customer List |

Dear Cindy:

We write to address your continuing request that Pond5 produce documentation identifying the customers that downloaded Mr. Hempton's work. In summary, and as explained in detail below, we are willing to provide you with customer information, but only after: (1) you provide us with the audio clips that are purportedly owned by Hempton and uploaded by ckennedy342 in a manner that allows us to reasonably compare those to the files that were uploaded by ckennedy342 onto the AWS servers; (2) we have an opportunity to analyze those clips and reach our own conclusions regarding whether ckennedy342 uploaded material that was owned by the plaintiff; (3) the Court issues a decision denying our motion for summary judgment; and (4) you agree to reasonable limitations on the use of such customer information, including an agreement to limit your use of the information to this lawsuit only.

We have repeatedly stated that it is premature to demand that we identify customers because, despite many requests, the plaintiff has failed to produce substantial evidence demonstrating that he is the owner of those audio clips that were in fact uploaded by ckennedy342 and of which plaintiff *claims* ownership. Despite your recent disclosures, it remains our position that the plaintiff has yet to demonstrate ownership. Further, we are perplexed by your refusal to simply provide us with the audio clips that he purports to own. If the plaintiff owns these clips and they were stolen by ckennedy342 and uploaded to Pond5's website, there is absolutely no reason for you to refuse to simply provide the clips to us so that we can conduct our own comparison between plaintiff's copies of the files and the files that were actually uploaded by ckennedy342.

In February, plaintiff produced over 40 hours of audio recordings that you characterized as "copyrighted source audio belonging to our client." This disclosure includes 69 files and contains over 40 hours of audio. We have repeatedly informed you that the disclosure does not provide Pond5 with any reasonable method of comparing it to the files uploaded by ckennedy342 in order to determine which files uploaded by ckennedy342 were possibly owned by your client.

On July 19, we received a table, which was described by you as containing tracks that (1) were uploaded by ckennedy342, (2) involved sales from Pond5, and (3) were owned by the plaintiff. Counsel stated: "We allege that the following files and data from Ckennedy/Mr. Kahn were infringements of Mr. Hempton's copyrighted works." The table included titles of ckennedy342's clips along with titles of clips that are allegedly owned by the plaintiff. The table included 87 titles. We note that the July 19 disclosure, which came some 16 months after your client first made allegations of copyright infringement, was the very first time that you or your client had ever provided us with a list of files that he contends were uploaded by ckennedy342 and owned by Mr. Hempton. Of course, the actual clips that are allegedly owned by the plaintiff were not produced then and never have been.

We responded to your July 19 disclosure by email on July 21, asking for the "audio files that match those identified in the table." We sent you another email on July 25, again stating that the "plaintiff has never produced evidence for us to independently confirm which files were owned by him."

1

Last week, you provided a declaration from Mr. Hempton. The declaration states that ckennedy342 uploaded 821 tracks that were owned by Hempton and that, of those 821 tracks, there were sales associated with 114. Mr. Hempton declares that he performed a wave form display and spectrum analysis of 11 of the 114 allegedly sold files and concluded that each of those matched a track that was purportedly owned by him. The declaration includes printouts of the wave form display and spectrum analysis for those 11 tracks. Based upon this limited analysis, Mr. Hempton apparently concludes that all 821 tracks were, in fact, stolen from him.

There are many reasons why we remain unable to conclude that the 821 tracks that were uploaded by ckennedy342 and identified in Mr. Hempton's declaration were owned by him. Below, we identify some of those reasons:

- Pond5 is entitled to conduct its own independent analysis of the audio files that you purport (a) are owned by plaintiff, and (b) were uploaded by ckennedy342. In doing so, we are entitled to examine the very same data that the plaintiff utilized to reach his conclusions. We are not required to conclude that there were some 821 illegal uploads based solely upon a limited analysis conducted by the plaintiff himself, no matter how much expertise he may have in the area. Of course, as we have stated many times, you have prevented us from conducting our own independent analysis because you have refused to disclose or provide Pond5 with the audio clips that plaintiff purportedly owns. We have been requesting these files for months and your failure to produce this evidence is startling. Your failure to even provide us with a reason for not producing the actual audio files is also perplexing.

- Mr. Hempton did not, apparently, conduct any analysis whatsoever of 810 of the 821 tracks that were identified. His declaration states simply that he identified the 821 tracks by reviewing the spreadsheet provided by Pond5. There is no indication that he conducted any analysis of 810 of the 821 tracks that are contained in his spreadsheet. In fact, the declaration doesn't even state that he listened to these tracks. It is our opinion that simply reviewing the 10,000+ names on a spreadsheet and picking out files he believes he owns based on file name or the like, without any further analysis, is inherently flawed and unreliable.

- Plaintiff's allegations of copyright infringement have constantly changed during the past 16 months. If we limit this issue to only clips involving sales, just in the past few weeks, you sent one table that identified 87 clips and a second that identified 114 clips. At various times, you have made allegations of "thousands" of copyrighted clips being offered for sale, to 138 such clips, to, most recently, 821 clips.

- Because you have failed to produce the clips that were owned by plaintiff, you have prevented us from conducting our own analysis of the clips. However, even the limited evidence available to us presents some objective data that raises serious questions about the reliability of the plaintiff's conclusions. For example, the third file listed in both the July 21 table and the spreadsheet attached to plaintiff's declaration, which is titled "Owl Hoot," was previously identified by the plaintiff as matching the plaintiff's file "QP01 0060 Deciduous forest owl hoot.wav." "Owl Hoot" is 4.6 seconds in length. According to Mr. Hempton's website (https://quietplanet.com/products/essentials.pdf), the corresponding file he contends is identical to "Owl Hoot" is only 3 seconds in length. Perhaps there is a valid explanation for this and other apparent discrepancies, but this highlights the need for plaintiff to provide us with the audio tracks so that we can conduct our own analysis.

- Of the 27 tracks that were, without explanation, somehow added between July 19 and last week, none of those were included in the 11 samples that the plaintiff purportedly analyzed and provided to us. Plaintiff has not provided us with any rationale for his selection of the 11 files he analyzed and his selection of those files raises questions regarding the reliability and predictive capability of his approach. The newly added tracks, with very few exceptions, involve a different naming sequence than the previous ones. In particular, the newly added tracks almost always capitalize the first letter of every

word (e.g. Thunder Booming) whereas the previous tracks almost always capitalize only the first letter of the first word (e.g., Thunder distant). Again, this raises questions of reliability.

- The new spreadsheet does not contain names of the Hempton file that corresponds to the allegedly stolen file, whereas the previous table did. Thus, with respect to the 27 newly added clips, plaintiff has not provided us with the corresponding name of the Hempton clip.

For the foregoing reasons, we do not believe that the plaintiff has produced sufficient evidence for Pond5 to identify which tracks are "Gordon Hempton's sound files." As a result, plaintiff has simply failed to provide sufficient evidence for Pond5 to identify any customer that purchased licenses of sound files that were owned by the plaintiff. Obviously, as we have stated for months, plaintiff can probably avoid further disputes over these issues by simply producing the audio clips that he contends he owns and that correspond to the clips that were uploaded by ckennedy342. You have never provided us with any reason for your refusal to provide us with such clips and, without them, we are unable to reach any conclusions regarding your allegations of copyright infringement.

As you know, Pond5 has moved for summary judgment based upon a safe harbor under the Digital Millennium Copyright Act. The DMCA was enacted to protect companies like Pond5, which has very limited control over an individual user's decision to upload infringing material. Pond5 is entitled to protection under the DMCA and we believe that we will prevail on our motion for summary judgment. Even if we don't prevail on summary judgment, we are confident that the DMCA defense will succeed at trial. In any event, we are unaware of any provision under the DMCA that requires Pond5 to disclose its customer list. The DMCA requires Pond5 to remove allegedly offending material, which it did (despite the fact that a proper takedown letter was never sent), but the DMCA does not require Pond5 to contact customers or provide an alleged copyright owner with a list of customers. As such, we are unwilling to provide any customer list until after the court issues a decision on our summary judgment motion.

While we recognize that plaintiff is entitled to wide latitude in seeking discovery, we strongly believe that the potential probative value associated with contacting customers is minimal and is outweighed by the damage that such contact could cause to Pond5. This is especially true under the present circumstances, where Pond5 is awaiting a decision on its DMCA defense, plaintiff's claims are nothing more than allegations, and the plaintiff has, despite many requests, refused to simply disclose the audio files that he purportedly owns in a manner that allows Pond5 to reasonably analyze those files.

In light of the foregoing, we will conditionally agree to produce customer lists. The conditions are as follows:

(1) Plaintiff produces the audio files that he contends he owns and that correspond to the 821 files that were uploaded by ckennedy342. These files must be produced in a manner that reasonably allows Pond5 to identify which file corresponds to which upload by ckennedy342, such that Pond5 can reasonably conduct its own analysis.

(2) Pond5 conducts an independent analysis and reaches its own conclusions that ckennedy342 uploaded material that was owned by the plaintiff;

(3) The Court issues a decision denying, in whole or in part, Pond5's motion for summary judgment. We understand that you might have some concerns about agreeing to effectively delay this discovery until after the Court issues a decision. To the extent that discovery deadlines must be extended for purposes of conducting discovery associated with the customer list, we will agree to such extensions;

(4) Plaintiff agrees, in writing, to limit his use of the customer list to purposes related solely to this lawsuit.

3

We also caution you that, in the event that the plaintiff contacts Pond5's customers, he needs to be very careful about what is communicated to those customers. If the plaintiff makes defamatory statements, tortiously interferes with Pond5's contractual relations, or otherwise breaches any duties owed to Pond5, he will be subject to damages and Pond5 will pursue him vigorously.

Please note that our conditional offer to disclose the customer lists is made for purposes of resolving this discovery dispute without the Court's involvement. If you decide to involve the Court in this issue, we reserve the right to seek alternative relief, including, without limitation, a ruling that we are not required to disclose the identity of customers in any circumstances.

We look forward to hearing from you.

Best Regards,

Larry

Larry E. Altenbrun
Nicoll Black & Feig PLLC
1325 Fourth Ave., Suite 1650
Seattle, WA 98101
P: 206-838-7541
C: 206-920-5369
F: 206-838-7515

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. If the reader or recipient of this communication is not the intended recipient  or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner.

**From:** Cindy Heidelberg [mailto:cheidelberg@bjtlegal.com]
**Sent:** Friday, August 05, 2016 9:29 AM
**To:** Larry Altenbrun
**Cc:** nick power; Roger Townsend; Jeanette Hendricks; Curt Feig; Jamie Telegin
**Subject:** RE: Hempton v. Pond5 Meet and Confer

Larry,

I write to follow-up on two matters we discussed below:

1) **Sound Files**

As stated below, we continue to disagree with your assertion that there can be any reasonable dispute – especially following our production of Mr. Hempton's sound files – that the sound files uploaded by ckennedy and posted for sale by Pond5 are Mr. Hempton's copyrighted works. However, you have asked for additional proof and we stated that we will produce such proof.

Attached is a declaration by Mr. Hempton containing two exhibits: 1) a spreadsheet identifying tracks uploaded by ckennedy that are Mr. Hempton's; and 2) a wavelength and spectrum analysis on a sample of these tracks showing that the "thumbprint" of the tracks Pond5 held out for sale are sonically identical and are all, indeed, Mr. Hempton's copyrighted works.  This should remove any remaining "reasonable dispute" that the ckennedy sound files offered for sale on Pond5 are not, in fact, Mr. Hempton's sound files.

2) **Identity of End Users**

# EXHIBIT 18

**Larry Altenbrun**

| | |
|---|---|
| **From:** | Roger Townsend <rtownsend@bjtlegal.com> |
| **Sent:** | Monday, August 29, 2016 10:54 AM |
| **To:** | Larry Altenbrun |
| **Cc:** | Curt Feig; Cindy Heidelberg; nick power; Jamie Telegin; Roger Townsend; Jeanette Hendricks |
| **Subject:** | Meet and Confer Follow UP |
| **Attachments:** | Evaluation LIcense End Users.pdf; 83 Hempton files sold by Pond5.pdf |
| | |
| **Importance:** | High |

Larry:

I am following up on our prior meet and confer on the issue of production of end user information. You client admitted that Pond5 collects end user names, addresses, email, and phone numbers, but has undertaken no effort to investigate regarding the use of Mr. Hempton's works. Now that there should be no legitimate question of fact regarding the fact that Mr. Hempton's sound files were uploaded by ckennedy/Hassan Kahn and sold on the Pond5 system to Pond5 customers, we reiterate our request for that information (and any other information regarding the end users and their purchases).

Furthermore, we intend to seek leave to amend the complaint under FRCP 15(a) to name Does. Mr. Hempton has a claim for injunctive relief and damages against those end users who obtained evaluation licenses or paid licenses through Pond5.

We respectfully request that Pond5 agree to stipulate to grant Plaintiff leave to amend the complaint to name the individual end users and for Pond5 to produce its data relevant to each of the end users in the attached list (file entitled "83 Hempton files sold by Pond5") and any evaluation licenses granted to Mr. Hempton's files in the attached list (file entitled "Evaluation License End Users").

Pursuant to the Court's order (Dkt #29), we request to arrange a telephone hearing to contact chambers at (202) 354-3330 on a single line. We are available for that call **today or tomorrow or Wednesday morning**. Please advise as to your availability.

I am, of course, available to further confer regarding the request to stipulate or otherwise discuss the substance of the motions.

Yours truly,
Roger

Roger M. Townsend
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Office: (206) 652-8660
Direct: (206) 518-6200
Fax: (206) 652-8290

IMPORTANT: This e-mail message and any attachments are confidential and may be privileged. If you are not the intended recipient please notify the sender immediately -- by replying to this message -- and destroy all copies of this message and any attachments. Thank you.

# EXHIBIT 19

1

**THE HONORABLE BARBARA JACOBS ROTHSTEIN**

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
9                    AT TACOMA

10   Gordon Hempton,                    NO.  3:15-cv-05696-RBL

11            Plaintiff,                PLAINTIFF'S RESPONSE TO
                                        DEFENDANTS' FIRST SET OF
12   v.                                 INTERROGATORIES AND REQUESTS
                                        FOR PRODUCTION
13
     Pond5 , Inc., a Delaware Corporation; and
14   Pond5  user ckennedy342, a corporation or
     individual of type unknown,
15
16            Defendants.

17        Plaintiff Gordon Hempton responds to Defendants' First Set of Interrogatories and

18   Requests for Production as follows: Plaintiff hereby incorporates the following General

19   Objections into each and every individual response contained herein and into any future

20   amendment, supplement or modification to these responses, as well as any future discovery

21   request of the plaintiff.

22        1.      Plaintiff's responses and objections are based upon information and belief after

23   a reasonably diligent search of all available records relating to the matters referred to in the

24   Complaint and the Answer in this lawsuit. Plaintiff has yet to complete its investigation and

25   discovery of the facts pertaining to this action or its preparation for trial, and therefore reserves

26   its rights to amend, modify, or supplement the objections or responses, if necessary, at a later

PLAINTIFF'S RESPONSE TO DEFENDANTS'                    BRESKIN | JOHNSON | TOWNSEND PLLC
FIRST SET OF INTERROGATORIES AND                          1000 Second Avenue, Suite 3670
REQUESTS FOR PRODUCTION  - 1                          Seattle, Washington 98104 Tel: 206-652-8660

1    date.  Plaintiff's responses are dependent upon full and complete responses to discovery from

2    Defendant Pond5 which have not been provided at this time.

3          2.      In providing the following responses, Plaintiff does not waive, but rather

4    intends to preserve the following:

5          a.      all objections as to competency, relevancy, materiality and admissibility;

6          b.      the right to object on any ground to the use or admissibility of the responses

7    herein or documents produced by Plaintiff in any subsequent proceedings including the trial of

8    this or any other action;

9          c.      all objections as to vagueness and ambiguity; and

10         d.      the right to object on any ground to any further discovery requests propounded

11   to plaintiff.

12         3.      Plaintiff objects to each Interrogatory or Request for Production to the extent it

13   seeks information or documents protected against disclosure by the attorney-client privilege,

14   work product doctrine, joint defense privilege, and any other judicially recognized protection

15   or privilege.

16         4.      Plaintiff objects to Defendant's discovery requests to the extent that they seek to

17   impose obligations on Plaintiff to produce a privilege log in excess of the obligation imposed

18   by Rule 26(b)(5). Plaintiff will produce a privilege log that lists all pre-litigation documents

19   which Plaintiff is withholding pursuant to a privilege claim. Plaintiff will not, however, include

20   in its privilege log any post-litigation work product and attorney-client communications

21   generated after the commencement of litigation because, if it did so, Plaintiff would need to log

22   its entire litigation file, which would be unduly burdensome and not reasonably calculated to

23   lead to the discovery of admissible evidence.

24         5.      Plaintiff objects to each Interrogatory or Request for Production to the extent it

25   seeks information or documents regarding "each," "all," "every," or "any" on the grounds that it

26   is overly broad and unduly burdensome. Plaintiff has used reasonable diligence to provide

PLAINTIFF'S RESPONSE TO DEFENDANTS'
FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION  - 2

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1    documents based on an examination of those files that may reasonably be expected to contain

2    responsive documents.

3         6.    Plaintiff objects to each Interrogatory or Request for Production to the extent

4    that it seeks information or documents to which plaintiff has equal or greater access.

5         7.    Plaintiff objects to the definition of "document" as overly broad, unduly

6    burdensome, and beyond the scope of the Rules of Civil Procedure to the extent it purports to

7    apply to information that is protected by the attorney client privilege or other applicable

8    privilege.

9         8.    Plaintiff objects to all of Defendant's instructions to the extent that they are

10   vague, ambiguous, overly broad, unduly burdensome, and inconsistent with the applicable

11   Rules of Civil Procedure. The manner and method of Plaintiff's objections and responses

12   herein, including without limitation the scope of the documents that may be subject to

13   production and the persons or other entities from whom production may be required, and

14   Plaintiff's rights and obligations concerning any duty to supplement, any documents withheld

15   under claim of privilege, and the time period relevant to any duty to produce, are governed

16   solely by the applicable Federal Rules of Civil Procedure and not the instructions set forth in

17   plaintiffs discovery requests.

18                              **INTERROGATORIES**

19        **INTERROGATORY NO. 1**:   Describe with specificity each and every fact that

20   supports your allegation that ckennedy342 uploaded work that was owned by plaintiff to

21   Pond5's website.

22        **ANSWER:**

23        Objection, this request seeks information that is protected by the attorney-client

24   privilege and/or would require Plaintiff to disclose his attorneys' mental impressions,

25   conclusions, opinions, reasons, legal theories, other work product or the like which is protected

26   by the work product doctrine. Plaintiff objects, discovery is ongoing and, as such, this

PLAINTIFF'S RESPONSE TO DEFENDANTS'
FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION  - 3

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  the grounds that this discovery request is vague and ambiguous, seeks information not likely to

2  lead to the discovery of admissible evidence, is overbroad, unduly burdensome, seeks

3  information that is more easily accessible to Pond5, and is premature as discovery is ongoing in

4  this lawsuit.  Without waiving the foregoing objections, Plaintiff responds as follows:

5  *See* documents produced in responses to RFPs in this case and see response to

6  Interrogatory No. 1, 2, 5, 7, 8, 9 and 10.

7

8  **INTERROGATORY NO. 18:** Describe with specificity each and every fact that

9  supports or explains your claim for statutory damages including, without limitation, the

10  number of "works" that you claim were infringed, the identity of such works, the amount of

11  statutory damages sought for each violation, and the factual basis for each such award.

12  **ANSWER:**

13  Objection, this request seeks information that is protected by the attorney-client

14  privilege and/or would require Plaintiff to disclose his attorney's mental impressions,

15  conclusions, opinions, reasons, legal theories, other work product or the like which is protected

16  by the work product doctrine. Objection, this request calls for legal conclusions. Objection,

17  this discovery request seeks premature disclosure of expert witnesses and/or expert report

18  inconsistent with the Court's order and the Fed. R. of Civ. P. Plaintiff further objects because

19  this discovery request seeks impermissible disclosure of consulting expert.  Plaintiff further

20  objects on the basis that it calls for a "dress rehearsal" for the trial and calls for evidence upon

21  which it intends to rely to prove any fact or facts.  Plaintiff further objects on the grounds that

22  this discovery request is vague and ambiguous, seeks information not likely to lead to the

23  discovery of admissible evidence, is overbroad, unduly burdensome, seeks information that is

24  more easily accessible to Pond5, and is premature as discovery is ongoing in this lawsuit.

25  Without waiving the foregoing objections, Plaintiff responds as follows:

26  Without waiving the foregoing objections, Plaintiff responds as follows:

PLAINTIFF'S RESPONSE TO DEFENDANTS'
FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 19

1    Each copyrighted file is independently economically viable. Each time a work was sold

2    without authorization by the copyright holder constitutes an infringement. Each file of Mr.

3    Hempton's that was held out for sale by Pond5 is a separate infringement. From Pond5's

4    production, Mr. Hempton has concluded that Pond5 held out for sale 655 files uploaded by

5    ckennedy342 which are Mr. Hempton's copyrighted works. It appears from Pond5's

6    production that there were 176 separate sales of 86 sound files, all of which are infringed

7    versions of Mr. Hempton's work.  Moreover, each time an evaluation copy is downloaded

8    constitutes an infringement, whether or not remuneration was received by Pond5. Despite

9    Plaintiff's discovery requests, Pond5 has not yet supplied Mr. Hempton with discovery

10   showing the number of times evaluation copies were downloaded of Mr. Hempton's works.

11   Analysis of the full scope of infringement through the Pond5 system is dependent upon

12   Pond5's compliance with its discovery obligations, which it has not fulfilled at this time.

13   See also documents produced in responses to RFPs in this case and see response to

14   Interrogatory No. 1, 2, 5, 7, 8, 9 and 10.

15

16                    **REQUESTS FOR PRODUCTION**

17   **REQUEST FOR PRODUCTION NO. 1:**     All documents that support your

18   contention that Pond5 infringed upon your copyrights.

19   **RESPONSE:**

20   Objection: *see* objection to Interrogatory No. 1; discovery and case development is

21   ongoing and Plaintiff reserves the right to identify additional documents and supplement its

22   discovery; seeks information already produced to the requesting party, or already within the

23   requesting party's possession and/or control.

24   Without waiving these objections, *see* attached documents. *See also* PON 000284-291;

25   PON 000294; PON 000539.

26

PLAINTIFF'S RESPONSE TO DEFENDANTS'
FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION  - 20

BRESKIN | JOHNSON | TOWNSEND ᴾᴸᴸᶜ
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1        DATED this 2nd day of September, 2016.

2
                                        BRESKIN JOHNSON & TOWNSEND PLLC
3                                       By:   /s/ Roger M. Townsend
4                                             Roger M. Townsend
                                              1000 Second Avenue, Suite 3670
5                                             Seattle, WA  98104
                                              Phone:  206-652-8660
6                                             Facsimile:  206-652-8290
                                              rtownsend@bjtlegal.com
7                                       *Attorneys for Plaintiff*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S RESPONSE TO DEFENDANTS'                    BRESKIN | JOHNSON | TOWNSEND ᴾᴸᴸᶜ
FIRST SET OF INTERROGATORIES AND                       1000 Second Avenue, Suite 3670
REQUESTS FOR PRODUCTION  - 31                          Seattle, Washington 98104  Tel: 206-652-8660

1

## CERTIFICATION OF ATTORNEY

2          The undersigned attorney for plaintiff has read the foregoing answers and responses to

3   interrogatories and requests for production, and they are in compliance with FRCP 26.

4          Responses and objections dated this 2nd day of September, 2016.

5                                                  s/ Roger M. Townsend
                                                   Attorneys for Plaintiff
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S RESPONSE TO DEFENDANTS'                    BRESKIN | JOHNSON | TOWNSEND $^{PLLC}$
FIRST SET OF INTERROGATORIES AND                          1000 Second Avenue, Suite 3670
REQUESTS FOR PRODUCTION - 32                         Seattle, Washington 98104  Tel: 206-652-8660

1

**<u>VERIFICATION</u>**

2

STATE OF _____     )

3                                                            :   ss

COUNTY OF _____     )

4

5          Gordon Hempton, being first duly sworn on oath, deposes and states:

6          I am the plaintiff in the above-captioned matter.  I have read the within and foregoing
discovery requests and the answers and responses thereto, know the contents thereof and
7    believe the same to be true.

8

9

10                                                    _____

                                                      Gordon Hempton

11          Subscribed and sworn to before me on _____.

12

13                                                    _____

                                                      Print Name: _____
14

                                                      NOTARY PUBLIC for the state of
15                                                    _____, residing at _____
                                                      My appointment expires:_____
16

17

18

19

20

21

22

23

24

25

26

BRESKIN | JOHNSON | TOWNSEND ᴾᴸᴸᶜ
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

**CERTIFICATE OF SERVICE**

2          Under penalty of perjury under the laws of the State of Washington, I hereby certify

3    that on this 2nd day of September, 2016, I caused a copy of the foregoing document to be

4    served on the following attorneys of record in the manner indicated:

5

6    Curt H. Feig
     Larry E. Altenbrun
7    Nicoll Black & Feig PLLC
     1325 Fourth Avenue, Suite 1650
8    Seattle, WA 98101
     Tel: 206-838-7555
9    cfeig@nicollblack.com
     laltenbrun@nicollblack.com
10

11   [X] Via Email Only per e-Service Agreement

12

                                  /s/ Jamie Telegin
13                                Jamie Telegin, Legal Assistant

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S RESPONSE TO DEFENDANTS'
FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION  - 34

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

# EXHIBIT 20

**THE HONORABLE BARBARA JACOBS ROTHSTEIN**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Gordon Hempton, | NO.  3:15-cv-05696-RBL |
| Plaintiff, | PLAINTIFF'S **CORRECTED** RESPONSE TO DEFENDANTS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION |
| v. | |
| Pond5 , Inc., a Delaware Corporation; and Pond5  user ckennedy342, a corporation or individual of type unknown, | |
| Defendants. | |

Plaintiff Gordon Hempton responds to Defendants' First Set of Interrogatories and Requests for Production as follows: Plaintiff hereby incorporates the following General Objections into each and every individual response contained herein and into any future amendment, supplement or modification to these responses, as well as any future discovery request of the plaintiff.

1.      Plaintiff's responses and objections are based upon information and belief after a reasonably diligent search of all available records relating to the matters referred to in the Complaint and the Answer in this lawsuit. Plaintiff has yet to complete its investigation and discovery of the facts pertaining to this action or its preparation for trial, and therefore reserves its rights to amend, modify, or supplement the objections or responses, if necessary, at a later

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   date.  Plaintiff's responses are dependent upon full and complete responses to discovery from

2   Defendant Pond5 which have not been provided at this time.

3          2.      In providing the following responses, Plaintiff does not waive, but rather

4   intends to preserve the following:

5          a.      all objections as to competency, relevancy, materiality and admissibility;

6          b.      the right to object on any ground to the use or admissibility of the responses

7   herein or documents produced by Plaintiff in any subsequent proceedings including the trial of

8   this or any other action;

9          c.      all objections as to vagueness and ambiguity; and

10         d.      the right to object on any ground to any further discovery requests propounded

11  to plaintiff.

12         3.      Plaintiff objects to each Interrogatory or Request for Production to the extent it

13  seeks information or documents protected against disclosure by the attorney-client privilege,

14  work product doctrine, joint defense privilege, and any other judicially recognized protection

15  or privilege.

16         4.      Plaintiff objects to Defendant's discovery requests to the extent that they seek to

17  impose obligations on Plaintiff to produce a privilege log in excess of the obligation imposed

18  by Rule 26(b)(5). Plaintiff will produce a privilege log that lists all pre-litigation documents

19  which Plaintiff is withholding pursuant to a privilege claim. Plaintiff will not, however, include

20  in its privilege log any post-litigation work product and attorney-client communications

21  generated after the commencement of litigation because, if it did so, Plaintiff would need to log

22  its entire litigation file, which would be unduly burdensome and not reasonably calculated to

23  lead to the discovery of admissible evidence.

24         5.      Plaintiff objects to each Interrogatory or Request for Production to the extent it

25  seeks information or documents regarding "each," "all," "every," or "any" on the grounds that it

26  is overly broad and unduly burdensome. Plaintiff has used reasonable diligence to provide

PLAINTIFF'S **CORRECTED** RESPONSE TO
DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION  - 2

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1  documents based on an examination of those files that may reasonably be expected to contain

2  responsive documents.

3          6.      Plaintiff objects to each Interrogatory or Request for Production to the extent

4  that it seeks information or documents to which plaintiff has equal or greater access.

5          7.      Plaintiff objects to the definition of "document" as overly broad, unduly

6  burdensome, and beyond the scope of the Rules of Civil Procedure to the extent it purports to

7  apply to information that is protected by the attorney client privilege or other applicable

8  privilege.

9          8.      Plaintiff objects to all of Defendant's instructions to the extent that they are

10  vague, ambiguous, overly broad, unduly burdensome, and inconsistent with the applicable

11  Rules of Civil Procedure. The manner and method of Plaintiff's objections and responses

12  herein, including without limitation the scope of the documents that may be subject to

13  production and the persons or other entities from whom production may be required, and

14  Plaintiff's rights and obligations concerning any duty to supplement, any documents withheld

15  under claim of privilege, and the time period relevant to any duty to produce, are governed

16  solely by the applicable Federal Rules of Civil Procedure and not the instructions set forth in

17  plaintiffs discovery requests.

18                                      **INTERROGATORIES**

19          **INTERROGATORY NO. 1**:   Describe with specificity each and every fact that

20  supports your allegation that ckennedy342 uploaded work that was owned by plaintiff to

21  Pond5's website.

22          **ANSWER:**

23          Objection, this request seeks information that is protected by the attorney-client

24  privilege and/or would require Plaintiff to disclose his attorneys' mental impressions,

25  conclusions, opinions, reasons, legal theories, other work product or the like which is protected

26  by the work product doctrine. Plaintiff objects, discovery is ongoing and, as such, this

PLAINTIFF'S **CORRECTED** RESPONSE TO
DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION  - 3

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  the grounds that this discovery request is vague and ambiguous, seeks information not likely to

2  lead to the discovery of admissible evidence, is overbroad, unduly burdensome, seeks

3  information that is more easily accessible to Pond5, and is premature as discovery is ongoing in

4  this lawsuit.  Without waiving the foregoing objections, Plaintiff responds as follows:

5      *See* documents produced in responses to RFPs in this case and see response to

6  Interrogatory No. 1, 2, 5, 7, 8, 9 and 10.

7

8      **INTERROGATORY NO. 18**: Describe with specificity each and every fact that

9  supports or explains your claim for statutory damages including, without limitation, the

10  number of "works" that you claim were infringed, the identity of such works, the amount of

11  statutory damages sought for each violation, and the factual basis for each such award.

12      **ANSWER**:

13      Objection, this request seeks information that is protected by the attorney-client

14  privilege and/or would require Plaintiff to disclose his attorney's mental impressions,

15  conclusions, opinions, reasons, legal theories, other work product or the like which is protected

16  by the work product doctrine. Objection, this request calls for legal conclusions. Objection,

17  this discovery request seeks premature disclosure of expert witnesses and/or expert report

18  inconsistent with the Court's order and the Fed. R. of Civ. P. Plaintiff further objects because

19  this discovery request seeks impermissible disclosure of consulting expert. Plaintiff further

20  objects on the basis that it calls for a "dress rehearsal" for the trial and calls for evidence upon

21  which it intends to rely to prove any fact or facts. Plaintiff further objects on the grounds that

22  this discovery request is vague and ambiguous, seeks information not likely to lead to the

23  discovery of admissible evidence, is overbroad, unduly burdensome, seeks information that is

24  more easily accessible to Pond5, and is premature as discovery is ongoing in this lawsuit.

25  Without waiving the foregoing objections, Plaintiff responds as follows:

26      Without waiving the foregoing objections, Plaintiff responds as follows:

PLAINTIFF'S **CORRECTED** RESPONSE TO
DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION - 19

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1      Each copyrighted file is independently economically viable. Each time a work was sold

2  without authorization by the copyright holder constitutes an infringement. Each file of Mr.

3  Hempton's that was held out for sale by Pond5 is a separate infringement. From Pond5's

4  production, Mr. Hempton has concluded that Pond5 held out for sale 655 files uploaded by

5  ckennedy342 which are Mr. Hempton's copyrighted works. It appears from Pond5's

6  production that there were 146 separate sales of 86 sound files, all of which are infringed

7  versions of Mr. Hempton's work.  Moreover, each time an evaluation copy is downloaded

8  constitutes an infringement, whether or not remuneration was received by Pond5. Despite

9  Plaintiff's discovery requests, Pond5 has not yet supplied Mr. Hempton with discovery

10  showing the number of times evaluation copies were downloaded of Mr. Hempton's works.

11  Analysis of the full scope of infringement through the Pond5 system is dependent upon

12  Pond5's compliance with its discovery obligations, which it has not fulfilled at this time.

13      See also documents produced in responses to RFPs in this case and see response to

14  Interrogatory No. 1, 2, 5, 7, 8, 9 and 10.

15

16                     **REQUESTS FOR PRODUCTION**

17      **REQUEST FOR PRODUCTION NO. 1:**   All documents that support your

18  contention that Pond5 infringed upon your copyrights.

19      **RESPONSE:**

20      Objection: *see* objection to Interrogatory No. 1; discovery and case development is

21  ongoing and Plaintiff reserves the right to identify additional documents and supplement its

22  discovery; seeks information already produced to the requesting party, or already within the

23  requesting party's possession and/or control.

24      Without waiving these objections, *see* attached documents. *See also* PON 000284-291;

25  PON 000294; PON 000539.

26

PLAINTIFF'S **CORRECTED** RESPONSE TO
DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION  - 20

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    DATED this 2nd day of September, 2016.

2

3                                    BRESKIN JOHNSON & TOWNSEND PLLC
                                     By:  /s/ Roger M. Townsend
4                                         Roger M. Townsend
                                          1000 Second Avenue, Suite 3670
5                                         Seattle, WA  98104
                                          Phone:  206-652-8660
6                                         Facsimile:  206-652-8290
                                          rtownsend@bjtlegal.com
7                                         *Attorneys for Plaintiff*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S **CORRECTED** RESPONSE TO                          BRESKIN | JOHNSON | TOWNSEND PLLC
DEFENDANTS' FIRST SET OF INTERROGATORIES                      1000 Second Avenue, Suite 3670
AND REQUESTS FOR PRODUCTION  - 31                        Seattle, Washington 98104  Tel: 206-652-8660

1

<u>**CERTIFICATION OF ATTORNEY**</u>

2    The undersigned attorney for plaintiff has read the foregoing answers and responses to

3  interrogatories and requests for production, and they are in compliance with FRCP 26.

4    Responses and objections dated this 2nd day of September, 2016.

5                                                      s/ Roger M. Townsend_____
                                                       Attorneys for Plaintiff
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S **CORRECTED** RESPONSE TO
DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION  - 32

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

2                               **VERIFICATION**

STATE OF *Washington*

3 COUNTY OF *Clallam* : ss

4

5     Gordon Hempton, being first duly sworn on oath, deposes and states:

6     I am the plaintiff in the above-captioned matter.  I have read the within and foregoing
discovery requests and the answers and responses thereto, know the contents thereof and

7 believe the same to be true.

8

9

10                                  Gordon Hempton

11 Subscribed and sworn to before me on  *Sept 6th 2016*

12

13                    *Leonard L Pierce*
                 Print Name: *LEONARD PIERCE*

14                NOTARY PUBLIC for the state of

15       *WA* , residing at *Joyce*

16       My appointment expires: *10/17/2016*

17

18                   NOTARY PUBLIC
19             STATE OF WASHINGTON
             LEONARD L. PIERCE
20        My Commission Expires October 17, 2016

21

22

23

24

25

26

PLAINTIFF'S **CORRECTED** RESPONSE TO
DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION  - 33

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

**CERTIFICATE OF SERVICE**

2      Under penalty of perjury under the laws of the State of Washington, I hereby certify

3  that on this 2nd day of September, 2016, I caused a copy of the foregoing document to be

4  served on the following attorneys of record in the manner indicated:

5

6      Curt H. Feig
       Larry E. Altenbrun
7      Nicoll Black & Feig PLLC
       1325 Fourth Avenue, Suite 1650
8      Seattle, WA 98101
       Tel: 206-838-7555
9      cfeig@nicollblack.com
       laltenbrun@nicollblack.com
10

11     [X] Via Email Only per e-Service Agreement

12
                              /s/ Jamie Telegin
13                            Jamie Telegin, Legal Assistant

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S **CORRECTED** RESPONSE TO
DEFENDANTS' FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION  - 34

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

# EXHIBIT 21

# Rough Draft of Rough Draft of Gordon W. Hempton

# September 8, 2016



SEATTLE  **206.287.9066**

OLYMPIA **360.534.9066**     SPOKANE **509.624.3261**     NATIONAL **800.846.6989**

Fax: 206.287.9832
E-mail: info@buellrealtime.com

Rough Draft of Gordon W. Hempton

Page 21

```
 1          MR. TOWNSEND:  Objection to the extent it
 2  calls for a legal conclusion.  Lack of foundation.  Go
 3  ahead.
 4          THE WITNESS:  Repeat the question.
 5      Q   (By Mr. Altenbrun)  You testified previously that
 6  at least some of these works were derived from previous work
 7  that you did.  Is that right?
 8      A   Yes.  Yes.
 9      Q   Do you know, Is there a previous work you have
10  published in this which this particular file QP 010007
11  thunder close exists?
12      A   It's possible if we check the records we'd be able
13  to determine that.  But for me to read this name and not
14  hear it and not check the database to trace it down to see
15  if it belongs to a previous registration, I can't answer
16  that question.
17      Q   Okay.  So with respect to these 655 files?
18      A   Yes.  Okay.
19      Q   Some of them belong to a previous registration; is
20  that correct?
21      A   Yes.
22      Q   And some of them do not?
23      A   They belong -- some of them do not.  They belong
24  to a Quiet Planet registration, yes.
25      Q   So some of these belong to a Quiet Planet
```

Page 22

```
 1  registration and some belong to a Quiet Planet registration
 2  and the registration of a previous work; is that correct?
 3      A   I believe so, yes.
 4      Q   What do you mean by a Quiet Planet registration?
 5      A   That after the production of essentials QP 01 for
 6  example, the collection itself is sent off to the copyright
 7  office and registered.So in the sense of Quiet Planet there
 8  were not 655 registration in order to cover these files.
 9  There were a number of collections that were registered.
10      Q   Well, these files were registered in six different
11  registrations, correct?
12      A   Let me see
13          MR. TOWNSEND:  Objection lack of foundation,
14  misstates prior testimony.  You can answer.
15          THE WITNESS:  It appears that it is true,
16  yes.
17      Q   (By Mr. Altenbrun)  You agree that all 655 of
18  these files come from six different collections, correct?
19      A   If I understand your question correctly, that the
20  655 files that show the Quiet Planet occur also in six
21  different registrations, yes.  And the content occurs most
22  likely in more.
23      Q   And that's because some of these files are part of
24  what you refer to as at Quiet Planet registration but also
25  part of a previous registration; is that correct?
```

Page 23

```
 1      A   Yes, for example, the Sound Tracker music label.
 2      Q   Okay.
 3      A   My -- yeah.  So.
 4      Q   When you say the Sound Tracker music label that's
 5  a previous registration you're referring to?
 6      A   No.  It's the previous business.  Earlier I
 7  mentioned how sound tracker converted to Quiet Planet.  When
 8  I converted from sole proprietorship to LLC.
 9      Q   Okay.  What steps would you take to determine all
10  of the registrations that a particular file, for example, QP
11  0007 is part of?
12      A   All right.  MR. TOWNSEND:  well, object to the
13  extent is it calls for a legal conclusion.  You can answer.
14          THE WITNESS:  It was a monumental task.
15  Basically, I had to create a highly specific database that
16  would integrate with my Quiet Planet database and then use
17  the file matching after hearing all this.  Basically I
18  listened to all these files.  I did spectrum analysis, wave
19  form analysis.  These are the same files.  But I have to tie
20  it to original registration, right, beyond the six
21  registrations.  Is that your question?
22      Q   (By Mr. Altenbrun)  No.
23      A   Okay.
24      Q   Can you read my question, please.
25          (Requested material read.)
```

Page 24

```
 1          THE WITNESS:  Okay.  Yes.  And so I'm in the
 2  process of answering that question.  So integration of the
 3  database we show the source file content, we show the date
 4  of recording.  We show when it was happening I.  Know when
 5  the project involved, that I plugged in, the whole
 6  thing and so that's how it comes about.  Right.  And this is
 7  a relational database.
 8          MR. TOWNSEND:  I don't want to disturb your
 9  flow but can I take a break?
10          MR. ALTENBRUN:  Sure.  We can take a break.
11          (Recess.)
12      Q   (By Mr. Altenbrun)  Back on the record.  Quiet
13  Planet maintains a website, correct?
14      A   Yes.
15      Q   And the URL for that website is Quiet Planet.com;
16  is that correct?
17      A   Correct.
18      Q   And on that website, if I click on products, I can
19  see the various collections that are available for
20  licensing, correct?
21      A   Yes.
22      Q   And from that page I can also click on the
23  individual collections, right?
24      A   Yes
25          (Exhibit Number 23 marked.)
```

BUELL REALTIME REPORTING, LLC
SEATTLE 206.287.9066  OLYMPIA 360.534.9066  SPOKANE 509.624.3261  NATIONAL 800.846.6989

Rough Draft of Gordon W. Hempton

Page 25

1          MR. TOWNSEND:  This doesn't have a Bates?
2          MR. ALTENBRUN:  No.  I just down loaded this
3    yesterday from the website.
4    Q    (By Mr. Altenbrun)  This document that's been
5    marked as Exhibit 23, this -- does this contain examples of
6    the page from Quiet Planet.com that has some details about
7    individual collections?
8    A    You kind of got muffled there.  So if you would
9    ask the question face me, that would help.
10   Q    Exhibit 23 is a six page document, correct?
11   A    Okay.  It appears so.
12   Q    Okay.  And does this appear to contain pages from
13   be website Quiet Planet.com that refer to some of these
14   individual collections on that website?
15   A    Yes.  That's are called the product pages.
16   Q    Okay.  And then do you see on each of those pages,
17   there is something that says contents, click here to down
18   load PDF?
19   A    Yes.
20   Q    And what happens if one were to click on that?
21   A    Well, if you down load the PDF, then you will see
22   a catalog of titles of all the contained sound tracks.  In
23   other words, on the first page here, essentials collection
24   which I happen to know is the QP 01 and then it continues,
25   that we'll see the PDF will reveal a multipage document

Page 26

1    which lists all of the files by length and whatever.  Right.
2    Q    Okay.  Let's mark this.
3          (Exhibit No.  24 marked.)
4    Q    (By Mr. Altenbrun)  The document that's been
5    handed to you that is marked as Exhibit 24, is this an
6    example of the PDF that you were referring to in answer to
7    the previous question.
8    A    No.  This is the answer if I was referring to the
9    product winds, which would be QP 02.
10   Q    Okay.  Does this document that's been marked as
11   Exhibit 24 list the contents for the collections titled
12   winds?
13   A    Yes.
14   Q    And that collection in your nomenclature is
15   referred to as QP 02, correct?
16   A    Yes.
17   Q    And I think you testified earlier that QP 01 is
18   titled essentials; is that right?
19   A    Yes.
20   Q    And is it true that QP 03 is titled thunder and
21   rain?
22   A    Yes.
23   Q    Is it true that QP 04 is titled flowing water?
24   A    Yes.
25   Q    Is it true that QP 05 is titled waves?

Page 27

1    A    Yes.
2    Q    Is it true that QP 06 is titled prairies?
3    A    Yes.
4    Q    With respect to the files that are located on the
5    six collections identified in Exhibit 23, do you own the
6    copyright to those files?
7          MR. TOWNSEND:  Objection, calls for a legal
8    conclusion.  Ambiguous.
9          THE WITNESS:  Yes, they're registered in my
10   name, Gordon Hempton.
11         THE WITNESS:  When you object, can we have
12   this conversation now?  When you object, am I free to choose
13   whether to answer?
14         MR. ALTENBRUN:  Answer unless I instruct you
15   not to answer to the best of your ability.
16         THE WITNESS:  Okay.
17         MR. TOWNSEND:  Don't guess.  Don't make
18   anything up.
19         THE WITNESS:  All right.  Thank you for the
20   explanation.
21         MR. ALTENBRUN:  It's a reasonable question to
22   ask.
23         Let's mark this please.
24         (Exhibit Number 25 marked.)
25   Q    (By Mr. Altenbrun)  You've been handed an exhibit

Page 28

1    that's been marked as Exhibit 25.  I'll represent to you
2    that these are documents that were provided to me by your
3    counsel during the course of this litigation, okay?
4    A    Okay.
5    Q    Are these the -- I'm sorry.  Let me strike that.
6    Does the exhibit that's been marked as Exhibit 25 include
7    the registrations for the six collections, QP 01 to QP 06
8    that we've been discussing?
9    A    If you'll just give me a minute to make sure all
10   of them are in this that you've handed me and it appears
11   that's true.
12   Q    You'll notice that within Exhibit 25, for each
13   collection there are two pages that refer to that, correct?
14   A    For each collection -- you said for each
15   collection there are two pages?
16   Q    Yes.  For example, for the work essentials, QP
17   301, you'll notice that the first page of this exhibit
18   refers to essentials and the seventh page which is HEMP
19   000446 also refers to essentials, do you see that?
20   A    Did you say the second page?
21   Q    Seventh.  I'm sorry.
22   A    Yes.
23   Q    And the dates of registration for all six of these
24   collections are the same, correct?
25   A    It appears so.

BUELL REALTIME REPORTING, LLC
SEATTLE 206.287.9066  OLYMPIA 360.534.9066  SPOKANE 509.624.3261  NATIONAL 800.846.6989

Rough Draft of Gordon W. Hempton

Page 29

1   Q   And that date is July 6, 2015, correct?
2   A   The date showing here, no.  Incorrect.  The date
3   showing on these copies -- okay.  Sorry.  I was looking down
4   at certification, June 25, 2015.  And I see you said the
5   effective date?
6   Q   I said the date.  The date of registration is the
7   term that I used.
8   A   Okay.  The effective date of registration, these
9   documents reads is July 6, 2015.  And the certification is
10  June 25, 2015.
11  Q   Okay.  Does this document also -- let me strike
12  that.  Do these documents also indicate the date of first
13  application?
14  A   Okay.  Your question was what is the date of first
15  publication?
16  Q   It was just do these documents indicate a date of
17  first publication?
18  A   Yes.
19  Q   And for the collection essentials, what is the
20  first date of publication?
21  A   September 8, 2013.
22  Q   So the best of your knowledge, is that correct?
23  A   I believe it is.
24  Q   That is information that you provided to the copy
25  right office, correct?

Page 30

1   A   Yes.
2   Q   Okay.  And if you can turn the page to flowing
3   water, the date of first publication is January 22, 2014,
4   correct?
5   A   Correct.
6   Q   To the best of your knowledge, is that correct?
7   A   Yes.
8   Q   If we turn the page to prairies, the date of
9   publication listed is August 26, 2014, correct?
10  A   Correct.
11  Q   To the best of your knowledge, is that date
12  correct?
13  A   I believe so.
14  Q   And if we turn to thunder and rain, the date of
15  first publication listed is November 17, 2013; is that
16  correct?
17  A   Yes.
18  Q   To the best of your knowledge, is that date
19  correct?
20  A   Yes.
21  Q   If we turn the page to waves, the listed date of
22  first publication is March 11, 2014, do you see that?
23  A   I do.
24  Q   To the best of your knowledge S-that date correct?
25  A   Yes.

Page 31

1   Q   And if we turn the page to the last one which is
2   titled winds, the listed date of first publication is
3   December 6, 2013.  Do you see that?
4   A   I do.
5   Q   And to the best of your knowledge, is that
6   correct?
7   A   I believe it is.
8   Q   Okay.  Would you agree that you registered each of
9   those as a collection?
10  MR. TOWNSEND:  Objection.  Ambiguous, calls
11  for a legal conclusion.
12  THE WITNESS:  Yes.  That was my intent.
13  Q   (By Mr. Altenbrun)  Did you register the
14  individual files from these collections separately?
15  A   No.
16  Q   Go ahead.?
17  A   I think you were asking me just a moment ago if
18  I've registered individual files as they're labeled and
19  presented here in the collection.  Okay.  So my answer was
20  correct.
21  Q   Let's go back to Exhibit 24 for a moment.  You see
22  the contents of this particular collection, correct?
23  A   Yes.
24  Q   The contents of this particular collection are
25  subject one of the registrations that comprise Exhibit 25,

Page 32

1   correct?
2   A   Yes.
3   Q   Is any portion the contents from the collection
4   that is identified in Exhibit 24 the subject of any other
5   copyright registration?
6   MR. TOWNSEND:  Object to the form.
7   THE WITNESS:  That information is a database.
8   I believe it is.  And I can't -- you know, because the
9   subject is winds, and I've published extensively and I'm
10  known for my work in winds, I would expect that when I check
11  my database, of which the information is also available to
12  Pond5 in their requests for production if I'm correct, that
13  we would find multiple copyright references
14  Q   (By Mr. Altenbrun)  Okay.  So if I understand
15  correctly, some of the content from winds?
16  A   Yes.
17  Q   Is also located on some of the previous works that
18  you have published; is that correct?
19  A   I believe so.
20  MR. TOWNSEND:  Objection.  Misstates prior
21  testimony.  Go ahead.
22  THE WITNESS:  I believe so.
23  Q   (By Mr. Altenbrun) you believe so, but you don't
24  know or you know it is?
25  A   I would know if I had the database in front of me

8  (Pages 29 to 32)

Page 81

1    Q   Okay.  If you know, what's the deference between
2  48 kit Hertz and 4,4.1 kill Hertz in terms of quality?
3    A   In theory, 44 .1 kill Hertz is the quality the
4  human ear can hear and that's why it was chosen for CD.  But
5  in practice, people with very good hearing can hear better
6  than predicted and the 48 kill Hertz is a better quality and
7  evenly in the sound effect industry 96 kill Hertz is what
8  many of the modern recordings are done.
9    Q   Have you ever made your work available for sale or
10 license at a sample rate of 44 .1 kill Hertz?
11   A   Yes.  44.1 kill Hertz would include the earth
12 sound series and anything else that's published on a CD.
13   Q   Is any of the Quiet Planet material available at
14 44 .1 kill Hertz?
15   A   No, it's not.  In that case I make the conversion.
16 It's what's called up sampled, okay.  And so what you do is
17 you convert from 44 .1 to 48 because sound libraries need to
18 be at the same sampling rate so that the same files can be
19 used in the same mixing application.
20   Q   If CKennedy 342 came to posess some of your work
21 from the Quiet Planet collection would he be able to change
22 the sample rate?
23   A   Yes, he would.
24   Q   Would there be any reason for him to do this?
25        MR. TOWNSEND:  Objection object to the form.

Page 82

1  Calls for speculation.
2    Q   (By Mr. Altenbrun)  If you know.
3    A   I can speculate.
4    Q   Speculate away.
5    A   Okay.  Speculate away that he would perceive his
6  market thinks that 44 .1 is more valuable he might be
7  marketing to a CD marketplace in that case no conversion or
8  resampling needs to be changed so that people are listening
9  to the same quality whereas if you go from 44 -- excuse me.
10 From 48 kill Hertz, the Quiet Planet want to produce a
11 CD at 44 .1 you'd use what's called an I D R and that's an
12 intelligent digital reduction plug in because when you go
13 from one sample rate to another, it's a bit of an art.  It's
14 called dithering.  And there's a lot more that I can say.
15 But I think that's an answer.
16   Q   When you examined the files,ed audio files that
17 you were up loaded by CKennedy did you identify any that had
18 a sample rate of 44 .1 kill Hertz?
19   A   If I remember correctly, all the CKennedy files
20 are at 44 .1 kill Hertz which actually introduces an
21 artifact in this case also is one of the reasons why I
22 believe that this was a batch process, an automated process
23 which occurred.
24   Q   What do you mean by introduces an artifact?
25   A   Yeah.  When you create -- you notice that in the

Page 83

1  CKennedy files that are any length, well, most like 90
2  percent of the files that are minutes long, and they don't
3  include a fade in and a fade out at the end, that's because
4  those are loops.  They're intended so when in a mixing
5  application you have a four minute file but you actually
6  would like 12 minutes all you do is simply drag it and
7  because the wave form crosses in a looped piece, the Quiet
8  Planet pieces at or near the zero axis it's a seamless
9  thing.  But when you resample the zero axis becomes
10 different so when you resample you actually have to reloop
11 it, find the zero crossover points.  And if you don't, then
12 it produces an audible click.  The audible click is you
13 know, sort of the tell tale sign that this file has a
14 problem.
15   Q   You allege that there were 655 clips that were up
16 loaded without your permission and that there were sales
17 involving 86 of those; is that right?
18        MR. TOWNSEND:  I'm going to just object that
19 it misstates prior testimony than than I didn't follow it
20 than you did.
21        THE WITNESS:  I sort of mentally switched
22 whether the numbers you started with 655 and the number of
23 sales from those 655 were 146; is that what you said?
24   Q   (By Mr. Altenbrun)  No.
25   A   The number of files that were sold.

Page 84

1    Q   You contend that 655 files that were up loaded by
2  CKennedy were owned by you, right?
3    A   Yes.
4    Q   And of those 655 you contend that there were sales
5  of 86 of those; is that --
6    A   86 file resulted in 146 sales.
7    Q   Right.  Right.  Okay.  So with respect to the
8  clips that were up loaded by CKennedy on to Pond5.com but
9  never sold, do you believe that you were damaged?
10        MR. TOWNSEND:  Object to the form.
11        THE WITNESS:  Yes.  I do if an evaluation
12 copy -- if they were accepted by Pond5, which I believe that
13 they were, if they were presented for sale by Pond5, I
14 believe that I was damaged.  If there are down loads of the
15 evaluation copies I was damaged.  My personal you know,
16 belief is that my files were used as a source of
17 advertising.
18   Q   (By Mr. Altenbrun)  Okay.  So with respect to the
19 files that never sold, you still believe that you were
20 damaged?
21   A   Yes.  Sorry.
22   Q   In these three ways because they were accepted by
23 Pond5, presented for sale, and to the extent that there were
24 down loads involving evaluation copies, correct?
25        MR. TOWNSEND:  Objection.

21  (Pages 81 to 84)

Rough Draft of Gordon W. Hempton

Page 129

1  because it was for a huge sum of money and they were hoping
2  that I would compromise on that.  But I didn't compromise.
3  So in answer to that I would have to say that in boom's
4  communication with me about the sky walker affair there was
5  no mention of Pond5.
6      Q    And you have a number of MULAes that you have
7  entered into, right?
8      A    The MULAes --
9      Q    Have any of your contracts been canceled as a
10  result of the up loads of material to Pond5.com
11         MR. TOWNSEND:  Objection to form.
12         THE WITNESS:  Not that I know of.  It would
13  have to be -- that would be a specific question.  I think to
14  somebody who has canceled.  In the case of electronic arts
15  when we recalled product and told them what the correct
16  subscription price was they did not subscribe.  And they --
17  so that's .
18      Q    (By Mr. Altenbrun)  Have any licensees of your
19  products contacted you or your distributors and demanded a
20  refund based on the fact that some files were up loaded for
21  Pond5.com?
22      A    No.
23      Q    Have any of your licensees contacted you or your
24  distributors and demanded an alteration of terms based upon
25  the fact that content was up loaded to Pond5.com

Page 130

1         MR. TOWNSEND:  Object to the form.
2         THE WITNESS:  No.
3      Q    (By Mr. Altenbrun)  Has any potential licensee
4  informed you that they are not going forward on a potential
5  purchase because of the up loading of files to Pond5.com?
6         MR. TOWNSEND:  Object to the form.  Calls for
7  speculation.
8         THE WITNESS:  Indirectly.  But I think your
9  question specifies Pond5.  And in the conversation that I
10  had with Pond5's name was not given.
11      Q    (By Mr. Altenbrun)  Okay what do you mean
12  indirectly?
13      A    Indirectly in that it was reported that a
14  different source had been found.
15      Q    Explain to me?
16      A    In the earlier conversation that I had with you
17  with Franz in which we were discussing the fellow that came
18  to me that wanted wind sounds for example and were working
19  on this windy app.  So I believe that Franz was in
20  conversation with him sort of like saying let's get
21  together, let's create a super app rather than two separate
22  competing apps and he was the guy, he was very much
23  interested in my sounds.  But he reported to France and
24  Franz reported to me that he had found a different source of
25  quality Sounds.

Page 131

1      Q    Right.  Okay.  Who is that licensee that made this
2  report of finding alternative sources?
3      A    I don't have his name.  I looked for his name and
4  I tried to recall it.  Believe me I really wanted to know.
5  And I have been unable to find it in my records.
6      Q    But would you agree with me that you can't say one
7  way or the other whether that alternative source was Pond5
8         MR. TOWNSEND:  Objection.  Calls for
9  speculation.
10         THE WITNESS:  It's only my curiosity.
11      Q    (By Mr. Altenbrun)  In the lawsuit that you filed
12  in this case you attached to your complaint numerous
13  exhibits.  In the exhibits at least many of them were
14  copyright registrations.  Do you recall that?
15      A    No.  I actually don't recall that.
16      Q    I'll represent to you that your complaint has 18
17  exhibits and they are all copyright registrations.  Okay?
18      A    Okay.
19      Q    My question is amongst those exhibits, there are
20  not included the copyright registrations for your Quiet
21  Planet collection, which we've identified as an exhibit.  Do
22  you know why the recent copyright registrations were not
23  included as an exhibit for your complaint?
24         MR. TOWNSEND:  Objection to the extent it
25  calls for attorney-client privileged communication, calls

Page 132

1  for a legal conclusion, misstates prior testimony.
2         THE WITNESS:  Because the documents had not
3  been received yet from the copyright office.
4      Q    (By Mr. Altenbrun)  Your complaint -- I'm not
5  going to mark this as an exhibit.  Your complaint also
6  clause paragraph in which you list 17 registered copyrights.
7  But your most recent copyrights from the Quiet Planet
8  collection are not listed.  Do you know why?
9         MR. TOWNSEND:  Same objection.
10         THE WITNESS:  Same answer.
11      Q    (By Mr. Altenbrun)  Well, I understand I guess
12  that you didn't have the documents.  But you at least these
13  copyrights were issued before your file the complaint
14  weren't they?
15      A    I did not have them in my hands, no:  You're
16  talking about the Quiet Planet copyrights?
17      Q    Yes.  I am.
18         (Exhibit Number 31 marked)
19      Q    (By Mr. Altenbrun)  The exhibit that's been handed
20  to you and marked as Exhibit 31, these are responses to
21  discovery that your attorney submitted to me in the past few
22  days, okay?
23      A    Yes.
24      Q    And if you go to the last page of this exhibit,
25  there's a verification page.  Was that signed by you?

33  (Pages 129 to 132)

Rough Draft of Gordon W. Hempton

Page 165

1    Q   And it continues if you look at this through page
2    HEMP 001610, 1,610,
3    A   Okay.
4    Q   Does this mean that at the time this list was
5    compiled, there were 563 license holders for that essentials
6    collection?
7    A   No.
8    Q   Okay.
9    A   It means that there were -- actually I know this
10   from the sales data that came in.  The last time I entered
11   the sales data from the resellers like boom and also that
12   was the early part of this year, but for every sale that
13   comes in, to Quiet Planet the registration happens
14   immediately.  I don't have to import from a spreadsheet that
15   somebody else provided me and do all that conversion work
16   which is much more cumbersome.  So basically, it would be
17   all the essentials would be here plus the documents that
18   were provided that reported sales from boom and the
19   resellers.  Okay?
20   Q   I think I understand.  But so this would be
21   complete through some date from earlier this year when you
22   entered in manually those sales from boom and third party
23   distributors, but it would -- and it would -- but it would
24   not be current because there's been some period of months
25   where you haven't entered those into this?

Page 166

1    A   Because of the delay in quarterly sales, right,
2    the quarterly sales get reported in the next quarter.  That I
3    believe it would be more accurate to say that these are all
4    the license users period for essentials as of let's say
5    November, 2015, and all the licenses that were sold directly
6    from Quiet Planet up until now.
7    Q   Right.  And if I wanted to find the additional
8    sales, I could go to your invoices, for instance.  No?  What
9    document I would examine?
10   A   You go to sales report that boom provide to me
11   which was included in the list of production.
12   Q   And that document is entitled sales
13   report?  What's the title of that document?
14   A   I think it would read something like boom Q
15   42,015.  And then a spreadsheet would be revealed in and
16   then we would see boom Q 12,016, and you know, it goes on
17   like that.
18   Q   Okay.
19       (Exhibit Number 41 marked.)
20
21   Q   (By Mr. Altenbrun)  The document that's been
22   marked as Exhibit 41, can you tell me what this document is?
23   A   Yeah, the document Exhibit 41 the first page is a
24   screen shot of dath rigs (CHECK SPELLING), a pirate of my
25   work that appears on Pond5.  And shows the wave form and

Page 167

1    also very little other information.  The second page is the
2    metadata that I saw in possibly the valuation copy of dath
3    rigs.  And the next page -- oh, is the receipt.  Okay.  So
4    I'm uncertain if the second page is the metadata that was in
5    the bought copy or the evaluation copy.  By in any case
6    that's a display of metadata as displayed through using the
7    called sound miner or the dath rigs sound file called
8    environmental series rain forest.  And then the next piece
9    of paper is the receipt that was issued to Peter Connolly
10   who I asked to download this so I could evaluate the sound
11   file.
12   Q   When did you first become aware this this
13   particular file was on Pond5's website?
14   A   I think it was pretty close to the transaction
15   date of -- and the transaction date that appears on the
16   receipt is 11/18/2015.
17   Q   When did you, if you know, inform Pond5 that this
18   was located on their website?
19   A   I imagine it was just a couple days ago.
20   Q   Why is it that you waited?
21   A   I waited --
22   Q   -- ten months.
23       MR. TOWNSEND:  object to the extent it calls
24   for a legal conclusion.  excuse me.  Attorney-client
25   privileged communications.  Go ahead and answer.

Page 168

1        THE WITNESS:  Okay.  I waited because I
2    listen to the sound file and I felt like it was unusable.
3    At the time that I visited, it was zero sales so it posed no
4    threat.  If it had been 20 sales I think that I would have
5    immediately reported it and everything and I felt like it
6    still served a purpose.  Because my goal all along has been
7    to work with Pond5 to scrub my work from the Pond5 system
8    Because just because we're talking about CKennedy and now
9    we're talking about dath rigs doesn't eliminate the
10   possibility that there's others in those 14 thousand plus
11   nature sounds that come up in the search.  That's a daunting
12   task.  But if Pond5 comes back to me and says we've cleaned
13   the system, and if dath riggs is gone, I believe it.  Okay.
14   If dath riggs is still there, I say we have more work to do
15   and we can work together to kind of refine the system.  So
16   it's still serve ad purpose.  I didn't feel like it served a
17   threat.  There were no sales.  And so that is the reason
18   why.
19   Q   Is this file contained within the Quiet Planet
20   collection?
21   A   No.  This file is the result of using files that
22   are within the Quiet Planet collection and creating a rather
23   high density collage.  And that was the reason why I felt
24   like it was unusable for the sound effects industry because
25   it was so highly specified.

42  (Pages 165 to 168)

# EXHIBIT 22

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

United States Register of Copyrights and Director

**Registration Number**
## SR 771-249
**Effective Date of Registration:**
July 06, 2015

## Title

**Title of Work:** Winds

## Completion/Publication

**Year of Completion:** 2013
**Date of 1st Publication:** December 06, 2013
**Nation of 1st Publication:** United States

## Author

- **Author:** Gordon Walker Hempton
**Author Created:** sound recording
**Work made for hire:** No
**Citizen of:** United States
**Year Born:** 1953

## Copyright Claimant

**Copyright Claimant:** Gordon Walker Hempton
POB 900, Indianola, WA, 98342, United States

## Rights and Permissions

**Name:** Gordon Hempton
**Email:** gordon@soundtracker.com
**Telephone:** (360)477-9588
**Address:** POB 900
Indianola, WA 98342

## Certification

**Name:** Gordon Hempton
**Date:** June 25, 2015

Page 1 of 2

HEMP000452

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

United States Register of Copyrights and Director

**Registration Number**

**SR 771-059**

**Effective Date of Registration:**
July 06, 2015

## Title
─────────────────────────────────

Title of Work: Waves

## Completion/Publication
─────────────────────────────────

Year of Completion: 2014
Date of 1st Publication: March 11, 2014
Nation of 1st Publication: United States

## Author
─────────────────────────────────

- Author: Gordon Walker Hempton
  Author Created: sound recording
  Work made for hire: No
  Citizen of: United States
  Year Born: 1953

## Copyright Claimant
─────────────────────────────────

Copyright Claimant: Gordon Walker Hempton
POB 900, Indianola, WA, 98342, United States

## Rights and Permissions
─────────────────────────────────

Name: Gordon Walker Hempton
Email: gordon@soundtracker.com
Telephone: (360)477-9588
Address: POB 900
Indianola, WA 98342 United States

## Certification
─────────────────────────────────

Name: Gordon Hempton
Date: June 25, 2015

Page 1 of 2

HEMP000451

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

United States Register of Copyrights and Director

**Registration Number**

**SR 771-251**

**Effective Date of Registration:**
July 06, 2015

## Title

Title of Work: Thunder and Rain

## Completion/Publication

Year of Completion: 2013
Date of 1st Publication: November 17, 2013
Nation of 1st Publication: United States

## Author

• Author: Gordon Walker Hempton
Author Created: sound recording
Work made for hire: No
Citizen of: United States
Year Born: 1953

## Copyright Claimant

Copyright Claimant: Gordon Walker Hempton
POB 900, Indianola, WA, 98342, United States

## Rights and Permissions

Name: Gordon Hempton
Email: gordon@soundtracker.com
Telephone: (360)477-9588
Address: POB 900
Indianola, WA 98342

## Certification

Name: Gordon Hempton
Date: June 25, 2015

HEMP000449

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

United States Register of Copyrights and Director

**Registration Number**

**SR 771-205**

**Effective Date of Registration:**
July 06, 2015

## Title

| | |
|---|---|
| **Title of Work:** | Prairies |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2014 |
| **Date of 1st Publication:** | August 26, 2014 |
| **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| • **Author:** | Gordon Walker Hempton |
| **Author Created:** | sound recording |
| **Work made for hire:** | No |
| **Citizen of:** | United States |
| **Year Born:** | 1953 |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Gordon Walker Hempton |
| | POB 900, Indianola, WA, 98342, United States |

## Rights and Permissions

| | |
|---|---|
| **Name:** | Gordon Walker Hempton |
| **Email:** | gordon@soundtracker.com |
| **Telephone:** | (360)477-9588 |
| **Address:** | POB 900 |
| | Indianola, WA 98342 United States |

## Certification

| | |
|---|---|
| **Name:** | Gordon Hempton |
| **Date:** | June 25, 2015 |

Page 1 of 2

HEMP000448

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

United States Register of Copyrights and Director

**Registration Number**

**SR 771-212**

**Effective Date of Registration:**
July 06, 2015

## Title

| | |
|---|---|
| **Title of Work:** | Flowing Water |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2014 |
| **Date of 1st Publication:** | January 22, 2014 |
| **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| • **Author:** | Gordon Walker Hempton |
| **Author Created:** | sound recording |
| **Work made for hire:** | No |
| **Citizen of:** | United States |
| **Year Born:** | 1953 |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Gordon Walker Hempton |
| | POB 900, Indianola, WA, 98342, United States |

## Rights and Permissions

| | |
|---|---|
| **Name:** | Gordon Walker Hempton |
| **Email:** | gordon@soundtracker.com |
| **Telephone:** | (360)477-9588 |
| **Address:** | POB 900 |
| | Indianola, WA 98342 |

## Certification

| | |
|---|---|
| **Name:** | Gordon Hempton |
| **Date:** | June 25, 2015 |

HEMP000447

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

United States Register of Copyrights and Director

**Registration Number**

## SR 771-248

**Effective Date of Registration:**
July 06, 2015

## Title

| | |
|---|---|
| **Title of Work:** | Essentials |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2013 |
| **Date of 1st Publication:** | September 08, 2013 |
| **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| **Author:** | Gordon Walker Hempton |
| **Author Created:** | sound recording |
| **Citizen of:** | United States |
| **Domiciled in:** | United States |
| **Year Born:** | 1953 |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Gordon Walker Hempton |
| | POB 900, Indianola, WA, 98342, United States |

## Rights and Permissions

| | |
|---|---|
| **Name:** | Gordon Hempton |
| **Email:** | gordon@soundtracker.com |
| **Telephone:** | (360)477-9588 |
| **Address:** | POB 900 |
| | Indianola, WA 98342 |

## Certification

| | |
|---|---|
| **Name:** | Gordon Hempton |
| **Date:** | June 25, 2015 |

Page 1 of 2

HEMP000446