EXHIBIT 3

Hempton v. Pond5, Inc., et al.                    30(b)(6) Thomas Crary - Vol. II

Page 164

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

------------------------------------------X
GORDON HEMPTON,

                    Plaintiff,

    -against-

POND5, INC., A Delaware Corporation;
and POND5 USER CKENNEDY342, A
Corporation or Individual of Type
Unknown,

                    Defendants.

CASE NO.: 3:15-CV-05696-DWC
------------------------------------------X


                    126 East 56th Street
                    New York, New York

                    August 16, 2016
                    9:10 a.m.


    DEPOSITION of 30(b)(6) THOMAS CRARY - VOL. II

before Melissa Gilmore, a Shorthand Reporter and

Notary Public of the State of New York.

Hempton v. Pond5, Inc., et al.          30(b)(6) Thomas Crary - Vol. II

                                                          Page 218

```
 1   trying to capture.

 2              I think, in general -- yeah.  If you

 3   want a gun sound, you listen for the gun sound.

 4   If you want a frog, there's the frog.  You

 5   don't want to listen to a frog and a gun in the

 6   same track.  You're looking for the frog, you

 7   get the frog.

 8      Q.    Are there -- in your observation,

 9   does Pond5 sell and distribute compilations of

10   content?

11              MR. ALTENBRUN:  Objection, beyond

12       the scope.

13      A.    No.

14      Q.    So end users or customers that

15   download content, you don't -- or Pond5 doesn't

16   indemnify or hold harmless the end user in the

17   event that the contributor has provided

18   infringing content; is that right?

19              MR. ALTENBRUN:  Objection, beyond

20       the scope.

21              MR. ROSEN:  Could you repeat that

22       again, please?

23              (Record read.)

24      A.    That's right, in our standard

25   agreement.  So in virtually all circumstances,
```

Hempton v. Pond5, Inc., et al.        30(b)(6) Thomas Crary - Vol. II

Page 219

 1    that's true.

 2        Q.    In what circumstances is that not

 3    true?

 4            MR. ALTENBRUN:  Objection, beyond

 5        the scope.

 6        A.    So this is more of a recent -- more

 7    recent product that we're working to bring to

 8    market where we would extend indemnification

 9    coverage to certain customers for a premium

10    price.

11        Q.    And is that offering currently

12    commercially available?

13            MR. ALTENBRUN:  Objection, beyond

14        the scope.

15        A.    We are beta testing, I would say.

16        Q.    Just for the record, what do you

17    mean by beta testing?

18            MR. ALTENBRUN:  Objection, beyond

19        the scope.

20        A.    We are in discussions with

21    various -- a handful of customers on such

22    agreements.

23        Q.    And are those customers large

24    revenue customers?

25            MR. ALTENBRUN:  Objection, beyond

Hempton v. Pond5, Inc., et al.          30(b)(6) Thomas Crary - Vol. II

Page 226

1        Q.    So two-thirds would be music,

2    one-third would be sound effects; is that

3    right?

4        A.    Yes.

5        Q.    Drawing your attention back to

6    Exhibit 19, do you recall when you first became

7    aware of this exchange?

8        A.    Yes.

9        Q.    Okay.  When?

10       A.    When I actually saw this e-mail, it

11   was once we had received notice from -- of the

12   pending litigation.

13       Q.    Okay.  As of the time of this e-mail

14   exchange in late May 2015, shortly after that

15   time, Pond5 removed the content from

16   Ckennedy342 from the Pond5 system; is that

17   right?

18       A.    Yeah, I believe it was a month

19   later.  This is May 29th is the first page

20   here, and I believe June 29th or June 30th, we

21   ultimately removed the content.

22       Q.    When you removed the content for

23   Ckennedy, did you take any action with respect

24   to customers who had downloaded Ckennedy342's

25   content?

Hempton v. Pond5, Inc., et al.        30(b)(6) Thomas Crary - Vol. II

Page 227

```
 1        A.    Take action with regard to the
 2   customers?  No.
 3        Q.    And did you provide the customers
 4   any notice of any sort with respect to
 5   Ckennedy's content?
 6        A.    No.
 7        Q.    And did you conduct any internal
 8   review of the customers who downloaded the
 9   content that was associated with the Ckennedy
10   file -- Ckennedy contributors?
11        A.    No.
12        Q.    And at any time since May 29, 2015,
13   have you gone and looked and determined who it
14   was that may have or did purchase content from
15   CKennedy342?
16              MR. ALTENBRUN:  Object to form.
17        A.    Yeah.  I mean, there's 10,000 files.
18   So no, we haven't looked at every single file
19   and who's downloaded them.
20        Q.    Have you looked at any files?
21        A.    No.
22        Q.    And have you conducted any
23   investigation as to who it may be that has
24   taken the Ckennedy files or what they might
25   have done with them?
```

Hempton v. Pond5, Inc., et al.        30(b)(6) Thomas Crary - Vol. II

Page 228

1               MR. ALTENBRUN:  Object to form.

2        A.    No.

3        Q.    So you don't know whether or not,

4   for example, Viacom could have purchased

5   Ckennedy's content?

6               MR. ALTENBRUN:  Object to form.

7        A.    No.

8        Q.    Let's look at Exhibit 9 from the

9   prior deposition.

10              And this is the e-mail exchange that

11  you had with Mr. Hempton in October 2015,

12  correct?

13       A.    Yep.

14       Q.    So looking under -- on the first

15  page, your e-mail to Mr. Hempton, you state

16  that once you were alerted, you immediately

17  blocked the Ckennedy content user and removed

18  all content; is that right?

19       A.    Yes.

20       Q.    And at that time why did you take

21  that step?

22       A.    That's our policy is to investigate

23  all claims of infringement.

24       Q.    Okay.  And you don't have a policy

25  to take any action with respect to end users

Hempton v. Pond5, Inc., et al.        30(b)(6) Thomas Crary - Vol. II

Page 235

```
 1   suspicious content that's now been distributed
 2   out into the stream of commerce, but you've
 3   taken no action to investigate or determine
 4   whether or not -- what the scope of that
 5   distribution might be.
 6            Did that concern you at any time?
 7            MR. ALTENBRUN:  Object to form.
 8       Objection, beyond the scope.
 9       A.   So the question was, was I
10   concerned -- say it again.  Could you state the
11   question again?
12       Q.   Yeah.  Were you concerned about the
13   potential for broad distribution of infringing
14   content through -- that had been uploaded by
15   Ckennedy?
16            MR. ALTENBRUN:  Objection, beyond
17       the scope.
18       A.   I was comforted by the fact that we
19   had closed the door to any future
20   infringements, and what had happened in the
21   past was still subject to investigation.  It
22   still is today because we still don't know
23   which of the files were Mr. Hempton's.
24            And upon learning that, either one
25   of two outcomes would present themselves.
```

Hempton v. Pond5, Inc., et al.        30(b)(6) Thomas Crary - Vol. II

Page 236

```
 1   Either we find an amicable settlement with
 2   Mr. Hempton, so he was properly compensated for
 3   his work, which was always our objective, or we
 4   would provide notice to the -- you know, to
 5   the -- to the works and make sure that they
 6   were mitigating their own damages, since they
 7   are the ones that are at risk.
 8        Q.    And describe that last part.  What
 9   do you mean by that?
10        A.    Well, depending on, you know -- so a
11   licensee would license it for a variety of
12   purposes, and, in many cases, there may not be
13   any significant risk to them, depending on
14   where they're using that content.
15             If they're just, you know, buying it
16   to show to their friend, they probably don't
17   need to worry to much about, you know, the
18   infringement claim that may come up, but if
19   they're using it in a broad, you know,
20   advertisement, then they probably should be
21   more worried about that.
22             In our license agreement, as you
23   mentioned earlier, we don't provide
24   indemnification coverage for our customers.  So
25   it is at their risk that they're using our
```

Hempton v. Pond5, Inc., et al.        30(b)(6) Thomas Crary - Vol. II

Page 237

```
 1   content effectively, at least in terms of
 2   copyright claims.
 3            And so, you know, we do feel we have
 4   a duty to keep our customers informed of
 5   information that comes to light, but we didn't
 6   have information that would allow us to figure
 7   out to determine which -- which claims -- which
 8   items were being infringed.
 9      Q.    And you were aware, were you not,
10   that Mr. Hempton's concern was the distribution
11   of his works outside of his control, right?
12      A.    Sure.  I guess, yeah.  I mean, I
13   understand where that concern comes from.
14      Q.    And you're also aware that once the
15   content is downloaded by the customer, then the
16   copyright holder loses control of that unless
17   there is some, you know, technical mechanism to
18   prevent use of that?
19            MR. ALTENBRUN:  Objection, beyond
20       the scope.
21      A.    Yeah.  I don't know what you mean by
22   technical mechanism, but the license is, to me,
23   is the -- is what controls what they're able to
24   do with it, and our license is -- it is a
25   standard license that, you know, you would find
```