THE HONORABLE BARBARA J. ROTHSTEIN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA

Gordon Hempton,

               Plaintiff,

     v.

Pond5 , Inc., a Delaware Corporation; and
Pond5 user ckennedy342, a corporation or
individual of type unknown,

               Defendants.

NO. 3:15-cv-05696-RBL

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR RECONSIDERATION OF
ORDER GRANTING SUMMARY
JUDGMENT (DKT. 49)

**ORAL ARGUMENT REQUESTED**

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
RECONSIDERATION (DKT. 49) - 1

1

## I.    REPLY

2     Plaintiff Gordon Hempton respectfully submits this reply in support of his motion for

3 reconsideration of the Court's summary judgment order.  Pond5's response concedes that

4 Hempton's expert report creates an issue of fact on summary judgment, but asserts that the report

5 – which was timely provided on the date of the expert cutoff – was not timely.  Pond5's

6 arguments are based almost entirely on process, not substance. Pond5 largely ignores the merits

7 of the safe harbor issue as well as the reality that Pond5 callously distributed Mr. Hempton's

8 files around the world, consciously disregarded the red flags of the 10,000 file upload, and failed

9 to take any remedial action to mitigate the damages to Mr. Hempton's valuable library when it

10 learned of the infringement, and profited directly from the piracy.  This Court should apply the

11 law to all of the facts on the record as it stands today, reach the just result, and allow this case to

12 proceed to a jury.

13     On summary judgment, and on this motion in particular, the stakes are high. It is

14 undisputed that ckennedy342 uploaded, and Pond5 sold, Mr. Hempton's copyrighted works of

15 authorship. It is further undisputed that these works are extremely rare and valuable nature

16 sounds which constitute Mr. Hempton's life's work. The only question in Pond5's motion for

17 summary judgment is whether – construing all facts and making all inferences in favor of Mr.

18 Hempton – there are genuine issues as to Pond5's eligibility for protection under the DMCA safe

19 harbor in 17 U.S.C. § 512(c). The answer is clearly "yes," and Pond5 makes little meaningful

20 attempt to dispute this in its Response. Pond5 has not introduced testimony or expert reports to

21 rebut Mr. Virostek's analysis of industry standards, the many red flags present in the

22 ckennedy342 files, and what a "reasonable" person in the industry would know.

23     Pond5 urges this Court to focus on form over substance, on the timing of Plaintiff's

24 submission rather than on the content of the submission itself.  Plaintiff disagrees with Pond5's

25 characterizations of Plaintiff's efforts, and has explained that he did in fact exercise diligence in

26 discovering, analyzing, and submitting the new evidence to the Court.

27     Plaintiff respectfully requests that the Court reconsider its grant of summary judgment

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
RECONSIDERATION (DKT. 49) - 1

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

and find that on the current record in the case, there are genuine issues of material fact as to Pond5's eligibility for safe harbor protection.  Plaintiff further requests that the Court grant oral argument so that Mr. Hempton can have the benefit of knowing that the infringement – which threatens to undermine his life's work – has had the benefit of a thorough judicial review.

## A.  Pond5 Has Not Rebutted Mr. Virostek's Report

In his expert report, Mr. Virostek examined the ckennedy342 files and the metadata associated with those files. Among the red flags that Virostek catalogued in the ckennedy342 files are: 1) the differing naming styles of the submissions; 2) file names indicating proprietary catalogue titles indicating the actual owner; 3) the varying quality of the submissions; 4) the varying content (types of sounds) in the submissions; and 5) the varying methods and sophistication of the production and "mastering" of the different files. Dkt. 52-1. Mr. Virostek stated that "[i]n short, if such a library were to exist, the wider community would likely know about it. I would have heard of it myself, and anyone in the business of selling sound libraries would have a reasonable knowledge of such a sound library as well." *Id.* at 25.  Mr. Virostek, who has worked for numerous companies as a curatorial reviewer "ingesting" sound files –  a position identical to the curatorial staff at Pond5 who reviewed the ckennedy342 files – concluded that "given these facts, I would determine the sounds were suspect after even a brief review of a spreadsheet or the audio files involved," *id.* at 25, and stated that by ignoring these blatant red flags, Pond5 deviated from industry standards and raised a question as to whether Pond5 was aware of the infringement and "allowed the sounds to be published anyways." *Id.* at 3.

This report, which painstakingly catalogues the many blatant "red flags" in the submission of 10,000+ audio files by ckennedy342, creates undeniable factual issues regarding whether Pond5, in ignoring these red flags and failing to conform to industry standards in performing curatorial review of the audio submission, willfully "buried its head in the sand" to avoid obtaining knowledge of the specific infringing activity by ckennedy342.[1]

---

[1] As Plaintiff argued on summary judgment and then in his motion for reconsideration, evidence already in the record further supports that Pond5 willfully buried its head in the sand on a misguided theory that willful blindness

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

In its Response, Pond5 does not dispute that this report creates genuine issues of material fact. Pond5 concedes that there are factual disputes created by Mr. Virostek's report and attempts to rebut and minimize those disputes through unpersuasive legal arguments and unsupported arguments of counsel.  Pond5 argues that Mr. Virostek's opinion is irrelevant because the "reasonable person" to whom a red flag must be obvious in the safe harbor analysis is an ordinary person, not an expert. But Mr. Virostek's opinion is not based on what is obvious to an expert, it is based on what is obvious to a reasonable person performing curatorial review. Mr. Virostek is uniquely situated to testify as to the perspective of a "reasonable person" curator of sound files because he has *been* that "reasonable person" curator of sound files many times.  Dkt. 52-1. In any event, the cases Pond5 cites for this proposition are Second Circuit cases, and no Ninth Circuit court has so held.[2] Pond5 is simply incorrect that Mr. Virostek's expert report cannot and does not create genuine issues of fact as to what was or should have been obvious to a reasonable person.[3]

### B.  Plaintiff Was Diligent in Obtaining and Submitting New Evidence

Pond5 spends the majority of its Response taking issue with the timing of Plaintiff's submission to the Court, arguing that Plaintiff was not diligent in obtaining, analyzing and submitting the new evidence to the Court. In fact, Pond5 benefitted greatly from the parties' stipulation to structure the discovery and motions practice and now attempts to use that cooperation against Plaintiff as a "gotcha." The parties entered into a stipulation on March 7, 2016 whereby motions and discovery unrelated to the safe harbor would be stayed until the Court ruled on Pond5's safe harbor motion, or until late June if the Court had not yet ruled. Dkt.

---

to red flags would provide Pond5 with safe harbor protection. *See* Dkt. 24-10 (Pond5 internal memo stating that Pond5's curators should do as little human verification of files as possible to decrease its risk of liability).

[2] Pond5 misleadingly cites to *UMG Recordings. v. Shelter Capital,* 718 F.3d 1006, 1025–26 (9th Cir. 2013) as quoting *Viacom v. YouTube,* 676 F.3d 19, 31 (2d Cir.2012) for this proposition. But *UMG Recordings* cites to *Viacom* for the general standard of red flag subjective and objective knowledge, not for the proposition that expert testimony is irrelevant to the "reasonable person" standard.

[3] Pond5 also conclusorily alleges that Mr. Virostek's report is "unreliable" and "speculative" because Mr. Virostek stated that he could perform additional analysis if provided additional data. This statement is another baseless attempt to deny what is undeniably a genuine issue of fact. Pond5 does *not* explain how the analysis Mr. Virostek *did* conduct based on the data *he did have* is unreliable, speculative, or incorrect. Nor did Pond5 submit a rebuttal report, and the deadline for such a report was Monday, Nov. 28, 2016.  *See* Dkt. 60.

37-4.  The parties engaged in settlement discussions throughout June and in an unsuccessful mediation before Lou Peterson on July 5, 2016.  Townsend decl., ¶ 1.  The purpose of this stipulation was, in part, so that the expense of expert reports (which are often the most expensive cost of pretrial litigation) could be deferred and so the parties would have a meaningful opportunity to pursue settlement.[4]

In early July, after the mediation failed, Plaintiff immediately resumed discovery and litigation of the broader case, including retaining experts to analyze the sound files Pond5 had provided earlier. Townsend decl. ¶ 2; *see also* Dkt. 37-5 (July 19 email re discovery).

Pond5 now seeks to use Plaintiff's reasonableness and good faith effort at cooperation and cost-containment against Mr. Hempton by arguing that he was not "diligent" in discovering new information. Pond5 faults Plaintiff for, in Pond5's view, not taking more action during the stay and discovering information earlier that would ultimately prove relevant to the safe harbor. Plaintiff did his best to do so, including conducting extensive written discovery and taking Mr. Crary's deposition. But the development of a case, and the manner in which evidence is revealed and understood in a case, does not always proceed in such a linear fashion, despite the parties' best efforts.[5]

Moreover, Pond5 has not cooperated in providing full information related to this case. Plaintiff requested all documents related to ckennedy342's uploads, including the sound files, in his first discovery request in December 2015; Pond5 did not produce these files until April 2016, *after* Mr. Crary's initial deposition in March. Pond5 has undisputedly consciously disregarded investigating the case out of concern that it could result in bad facts for the company. Pond5's head of curatorial review admitted in an internal memo that Pond5's curators should avoid investigating whether infringing material is uploaded so that it could game the safe harbor

---

[4] Mr. Hempton and Pond5 are not similarly situated to litigate this matter.  Pond5 is a well-funded, well-insured corporation.  Mr. Hempton is an artist.

[5] The parties' March stipulation explicitly envisioned as much, stating that "the Parties specifically acknowledge that this agreement is not intended to prevent either Party from conducting whatever discovery it deems necessary. The Parties will work in good faith to complete discovery within the existing deadlines and, if the circumstances so warrant, will work in good faith to agree upon reasonable extensions of discovery deadlines." Dkt. 37-4, p. 4.

1   defense. Dkt. 24-10. Similarly, Pond5 admits that it has made no effort before or during this

2   litigation to even learn who downloaded Mr. Hempton's copyrighted works of authorship or to

3   mitigate the continuing infringements, and that it did not send any communication to its

4   customers regarding Mr. Hempton's claims of infringement, despite having done so in other

5   situations. Crary dep., Dkt. 54-3.

6       Pond5 faults Plaintiff for not analyzing the 10,000 ckennedy342 sound files in the 19

7   days between when Pond5 produced them and when Plaintiff's summary judgment response was

8   due. This is a preposterous argument, given that Pond5 argued repeatedly that the process of

9   analyzing sound files is time consuming and arduous and that it could not even provide an

10   estimate for completing review of Plaintiffs' sound files. *See* Dkt. 39; *see also* Dkt. 35, Hempton

11   decl., ¶ 4 ("I have spent 100 hours investigating each and every file in question…").

12       Pond5 also argues that Plaintiff should have requested a continuance of his summary

13   judgment response under FRCP 56(d) in order to have time to examine the sound files. But the

14   parties had agreed to stay all additional discovery unrelated to the safe harbor until June. It was

15   only after the stipulated stay was lifted in June and the parties' mediation efforts in early July

16   failed that Plaintiff began examining the sound files for Plaintiff's affirmative case and

17   recognized the lack of metadata in the files Pond5 had produced. Once Plaintiff recognized the

18   lack of metadata in the files, Plaintiff quickly requested the metadata from Pond5. Dkt. 37-5. It

19   was not until 1) Pond5 produced the metadata in early August (Dkt. 34-6); 2) Plaintiff conducted

20   an initial analysis of the metadata; and then 3) Plaintiff retained a sound file and metadata expert

21   to further analyze the metadata, that Plaintiff had evidence in a proper form to submit to the court

22   regarding the obvious red flags contained in the sound files and metadata.

23       Along these same lines, Pond5 posits that the expert report deadline should be ignored

24   and plaintiff could have submitted the expert report early. Dkt. 58 at 4. Pond5 asks the Court to

25   ignore that Pond5 itself took the risk of moving for summary judgment early in the discovery

26   period and well before the expert cutoff.  Pond5 asks the Court to conclude that, because it chose

27   to move for summary judgment early, that discovery needed to have been completed prior to

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
RECONSIDERATION (DKT. 49) - 5

filing the opposition to the motion for summary judgment.  This position is inconsistent with the civil rules and the court's order on the expert disclosure cutoff.  The expert disclosure cutoff was established by a stipulated court order that Pond5 agreed to and the unrebutted report should be considered on the merits. Dkt. 47, 48. In any event, Plaintiff was diligent in reviewing the metadata after receiving it in August, and then retaining a metadata expert in early September, and working with the expert to review the files and timely produce a report in October.[6]

Pond5, conceding that perhaps Plaintiff "could not have known that the information contained in the April 28 production was material for its opposition," argues that Plaintiff should have "at least sought leave to supplement the record prior to the Court's decision" on October 25.  In a cruel twist of fate, Plaintiff sought to do just that on October 25 as soon as the expert report was done, but the Court's decision was issued the afternoon of the expert disclosure cutoff.  *See* Townsend decl. ¶ 3; ex. 1 (Oct. 25 am email directing staff to prepare and file supplemental report).

Finally, Pond5 also takes issue with Plaintiff's submission of statements from Mr. Crary's August deposition, arguing that Plaintiff should have asked Mr. Crary about *all* topics relevant to the safe harbor in his initial deposition in March. But as stated above, despite requesting the ckennedy342 sound files in December 2015, Pond5 did not produce those files until April, *after* Mr. Crary's initial deposition in March. Plaintiff could not have asked Mr. Crary about evidence of which Plaintiff was not yet aware.[7]

## II.    CONCLUSION

For the foregoing reasons, Plaintiff requests that his motion for reconsideration be granted.

Dated this 2nd day of December, 2016.

---

[6] Simply getting the sound files to Mr. Virostek – who is one of the industry's foremost experts in metadata but who happens to have been abroad at the time – took time, as did exchanging emails and feedback with Mr. Virostek about his analysis. Townsend decl. ¶ 4.

[7] To the extent Plaintiff cited to testimony from Mr. Crary's initial deposition, this evidence was already submitted in Opposition to Pond5's motion for summary judgment and was referenced in the motion for reconsideration merely for argument, as it relates to the Court's order and the new evidence.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
RECONSIDERATION (DKT. 49) - 6

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

2                        BRESKIN JOHNSON & TOWNSEND PLLC

3                       By: *s/ Roger M. Townsend*

4                          Roger M. Townsend
                           *s/ Cynthia J. Heidelberg*

5                           Cynthia J. Heidelberg
                           1000 Second Avenue, Suite 3670

6                           Seattle, WA 98104
                           Tel: 206.652.8660

7                           rtownsend@bjtlegal.com
                           cheidelberg@bjtlegal.com

8

9                           *s/ Nicholas Power*
                           Nicholas Power

10                         Nicholas E.D. Power
                         540 Guard St., Suite 150

11                        Friday Harbor, WA 98250
                        (360)298-0464

12                        nickedpower@gmail.com

13

14                       Attorneys for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

1

**<u>CERTIFICATE OF SERVICE</u>**

2

      I hereby certify that on December 2, 2016, I electronically filed the foregoing document

3

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

4

to all counsel of record.

5

                                      /s/ *Jamie Telegin*

6

                                  Jamie Telegin, Legal Assistant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
RECONSIDERATION (DKT. 49) - 8

BRESKIN | JOHNSON | TOWNSEND <sup>PLLC</sup>
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660