UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GORDON HEMPTON<br><br>    Plaintiff,<br><br>v.<br><br>POND5, INC. et. al,<br><br>    Defendants. | CASE NO. 3:15-cv-05696-BJR<br><br>ORDER DENYING MOTION<br>FOR RECONSIDERATION |

## I.   INTRODUCTION

Plaintiff Gordon Hempton ("Hempton") moves this Court to reconsider its order granting Defendant Pond5, Inc's ("Pond5") motion for summary judgment. Dkt. No. 51. Pond5 opposes the motion. Dkt. No. 58. Having reviewed the motion, the opposition thereto, the record of this case, as well as the relevant legal authorities, the Court will deny the motion. The reasoning for the Court's decision is set forth below.

## II.   BACKGROUND

Hempton holds himself out as "the world's preeminent nature sound recordist" who has "amassed a library of thousands of the Earth's rarest sounds[.]" Opp. to Motion for Summary Judgment, Dkt. No. 22, at 2-3. Hempton claims that "his library of copyrighted work is immensely valuable, and as such is closely controlled and licensed for specific purposes." *Id*. Pond5 operates www.pond5.com, a website through which media producers can license and

1

distribute content to third parties. In September 2015, Hempton instituted this lawsuit against Pond5 and a former Pond5 customer known as ckennedy342, alleging that ckennedy342 had uploaded hundreds of Hempton's copyrighted audio files to Pond5's website without his permission and offered the files for sale. Comp., Dkt. No. 1. Hempton sought, among other relief, actual and/or statutory damages from Pond5. *Id*. at ¶ 124.

Pond5 moved for summary judgment, arguing that it is protected under the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA"). On October 25, 2016, this Court granted Pond5's motion, concluding that Pond5 is entitled to safe harbor protection under § 512(c) of the DMCA. Hempton now moves this Court pursuant to LCR 7(h)(1) to reconsider its decision, claiming that he has "new facts" that could not have been brought to the Court's attention earlier that create an issue of material fact regarding Pond5's entitlement to safe harbor protection on the DMCA. Dkt. No. 51 at 1.

### III.   LEGAL STANDARD

"Motions for reconsideration are disfavored." LCR 7(h)(1). "The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." *Id*.

### IV.   DISCUSSION

Hempton moves for reconsideration of this Court's order granting summary judgment to Pond5 on the basis that he allegedly became aware of "new facts" after the parties completed briefing that he claims create a genuine issue of material fact, thereby rendering summary judgment inappropriate. Specifically, Hempton alleges that he became of "new facts" that demonstrate that Pond5 had not "reasonably implemented" a repeat offender policy at the time of

ckennedy342's infringing activity and further demonstrate that Pond5 willfully ignored warning signs related to the infringing activity.[1] Dkt. No. 51 at 1. He claims the "new facts" are: (1) 10,000 sound files uploaded by ckennedy342 that Pond5 produced after Pond5 filed its motion for summary judgment; (2) two expert reports that Hempton recently produced that "catalogue the many red flags in the ckennedy342 sound files, track names, and metadata", and (3) testimony from the deposition of Pond5's 30(b)(6) representative conducted on April 16, 2016. *Id*.

None of this evidence constitutes "new facts" within the meaning of LCR 7(h)(1). With respect to the 10,000 sound files produced by Pond5, Hempton concedes that Pond5 produced the sound files on April 28, 2016. Hempton's opposition to Pond5's summary judgment motion was filed on May 16, 2016, 19 days after the files were produced, and the Court's decision granting summary judgment did not issue until October 25, 2016, five months after the files were produced. Clearly this evidence could have been brought to the Court's attention before summary judgment was granted. Hempton could have requested an extension to his response deadline or sought to supplement the record any time before the Court issued its decision. He did not do so and he is barred from attempting to bring the evidence before the Court now. *See Hopkins v. Andaya*, 958 F.2d 881, 887 n. 5 (9th Cir. 1992), as amended (Mar. 5, 1992) ("A defeated litigant cannot set aside a judgment because he failed to present on a motion for summary judgment all the facts known to him that might have been useful to the Court."); *Acton v. Target Corp.*, 2009 WL 5214419, *2 (W.D. Wash. Dec. 22, 2009) (declining to consider "new

---

[1] In order to qualify for safe harbor protection under § 542(c) of the DMCA, among other requirements, Pond5 must establish that it reasonably implemented a repeat offender policy in compliance with § 512(i) and that it was not subjectively aware of facts that would have made the specific infringement objectively obvious to a reasonable person. *See Viacom Int'l v. YouTube, Inc*., 676 F.3d 19, 31 (2d Cir. 2012).

evidence" from a deposition taken after motion was filed, but three months before the Court issued its decision).[2]

The same is true for the expert report that Hempton submitted with the instant motion.[3] Plaintiff claims that he "timely submitted" this report because he complied with the case management deadline for the submission of such reports. That is not the operative deadline. If Hempton needed expert testimony to defeat Pond5's motion, he was obligated to submit it with his opposition to the motion. If he needed more time to obtain that testimony, he could have asked for an extension. The one thing he could not do was to wait for the Court to rule on the motion and then submit an expert report claiming to create an issue of material fact with it.

Nevertheless, even if the Court were to consider the expert report, its testimony is irrelevant to the purpose for which it is submitted. For instance, Hempton argues that his expert, Paul Virostek "examined the ckenndy342 files, the metadata associated with those files, other case documents, and the parties' briefing on Pond5's motion for summary judgment" and concludes that "user ckennedy342's submission [would be] immediately suspicious to anyone with reasonable experience with sound libraries." Dkt. No. 51 at 5. Mr. Virostek further opines that "by ignoring these blatant red flags and failing to investigate them further, Pond5 deviated from industry standards." *Id*. In other words, Hempton offers Virostek's testimony to establish what constitutes a red flag for purposes of DMCA's safe harbor provisions. However, as courts

---

[2] Hempton claims that the parties had an agreement to stay discovery on anything other than Pond5' DMCA defenses until after that issue was resolved by summary judgment. He seems to suggest that because the parties had agreed to stay discovery, he was under no obligation to pursue discovery of the 10,000 sound files, particularly the metadata associated with those files. This argument does not hold water. If Hempton felt he needed discovery regarding those files in order to defeat Pond5's motion for summary judgment, it was his obligation to pursue the discovery. As it is, Pond5 produced the files before Hempton's opposition to the summary judgment motion was due, yet Pond5 alleges, he chose to sit on those files for nearly three months before raising the issue of the allegedly missing metadata, an allegation Hempton does not dispute. Sitting on discovery for three months does not constitute diligent behavior.

[3] While Hempton claims to have "two expert reports," he only discusses Paul Virostek's report in the instant motion. He does not discuss the second expert report, nor did he submit it to the Court with the instant motion. Therefore, the Court has no way of determining the content of the report and, as such, will only discuss Mr. Virostek's report.

4

have repeatedly held, what constitutes a red flag (*i.e.*, whether infringing activity would have been apparent to a reasonable person operating under the same or similar circumstances) is judged on an objective standard, thus an issue of material fact on this issue cannot be created through the submission of expert testimony. *See*, *e.g.*, *Capital Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 93-94 (2d Cir. 2016) (noting that "[t]he hypothetical 'reasonable person' to whom infringement must be obvious is an ordinary person—not endowed with specialized knowledge or expertise concerning music or the laws of copyright"); *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006,1025-26 (9th Cir. 2013) (same). Hempton attempts to get around this by arguing that Virostek's opinion is "not based on what is obvious to an expert, it is based on what is obvious to a reasonable person performing curatorial review." Dkt. No. 62 at 3. This argument is without merit. The reasonable person standard is based on whether an ordinary person with no specialized knowledge would consider something a red flag. If expert testimony is required to determine what constitutes a red flag, by definition, it would not be a red flag to the ordinary person.

Next, Hempton contends that Pond5's 30(b)(6) deponent provided further evidence that Pond5 willfully disregarded infringement when he was deposed on August 16, 2016. Once again, this deposition occurred well before the Court issued its decision on Pond5's summary judgment motion. Thus, any information obtained during that deposition does not constitute "new facts" for purposes of LCR 7(h)(1).[4]

---

[4] In addition, this was the second deposition of Pond5's 30(b)(6) witness. Pond5 claims that the parties agreed that the first deposition would exclusively pertain to its DMCA defenses. Pond5 asserts that Hempton conducted the deposition before the summary judgment motion was filed and concluded it without reserving the right to reopen the issue. Therefore, there is a question as to whether testimony from the second deposition would even be admissible under the parties' agreement.

Lastly, despite claiming that he seeks this motion "on the basis of 'new facts'" only, Hempton argues that this Court placed "too low of a burden on Pond5" for establishing that it had a repeat offender policy based on a recent Second Circuit decision that was published the same day this Court issued its order. *See EMI Christian Music Grp. v. MP3tunes, LLC*, 2016 U.S. App. LEXIS 19236 (2d. Cir. Oct. 25, 2016). In other words, Hempton argues the existence of new law. Once again, Hempton's argument is misplaced. Even if this Court were to adopt his interpretation of *MP3tunes* (it does not) and the facts of *MP3tunes* were similar to the instant case (they are not), there has been no change in Ninth Circuit law. The DMCA still does not require online marketplace providers to investigate content uploaders to affirmatively police users for evidence of infringement.

## V.   CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES Plaintiff's motion for reconsideration [Dkt. No. 51] and DENIES Pond5's motion to strike Plaintiff's Supplemental Submission [Dkt. No. 64] as MOOT. The case is HEREBY DISMISSED.

Dated this 13th day of January, 2017.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge