1

2

3

4

5

6

7

8

**THE HONORABLE BARBARA J. ROTHSTEIN**

**FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

GORDON HEMPTON,

                Plaintiff,

    v.

POND5, INC., A DELAWARE
CORPORATION; AND POND5 USER
CKENNEDY342, A CORPORATION OR
INDIVIDUAL OF TYPE UNKNOWN,

           Defendants.

**No.: 3:15-cv-05696-BJR**

**DEFENDANT POND5, INC.'S
MOTION FOR ATTORNEYS' FEES
AND COSTS**

**NOTE ON MOTION CALENDAR:
February 10, 2017**

16

17

      Pursuant to Fed. R. Civ. P. 54 and 17 U.S.C. § 505, defendant Pond5, Inc. ("Pond5") asks this Court for an award of its attorney fees and costs.

18

## I.   BACKGROUND

19

20

21

22

      Defendant Pond5 was granted summary judgment with respect to claims asserted by plaintiff Gordon Hempton on October 25, 2016. (Dkt. 49). Plaintiff brought a motion for reconsideration (Dkt. 51) and that motion was denied. (Dkt. 66). Judgment was entered in favor of Pond5 on January 13, 2017. (Dkt. 67).

23

## II.   ARGUMENT

24

**A.   Pond5 Is Entitled to an Award of Full Costs & Reasonable Attorney Fees.**

25

26

      Under the federal Copyright Act, a district court has discretion to award "full costs" to a prevailing party, which includes "a reasonable attorney's fee to the prevailing party as part of the

27

**NICOLL BLACK & FEIG PLLC**
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

costs." 17 U.S.C. § 505. The Ninth Circuit has rejected arguments that "full costs" as provided in the statute are limited to taxable costs under 28 U.S.C. § 1920. *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005) ("Construing § 505 as limiting the costs that may be awarded to any particular subset of taxable costs effectively reads the word 'full' out of the statute.").

In considering whether to exercise its discretion, a non-exclusive list of factors to consider includes: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614-15 (9th Cir. 2010). No presumption regarding awarding fees to a prevailing defendant is applied in the Ninth Circuit, *Marshall & Swift/Boeckh, LLC v. Dewberry & Davis LLC*, 586 F. App'x 448, 449-50 (9th Cir. 2014), but courts "should keep in mind the purposes of the Copyright Act (to promote creativity for the public good) and apply the factors in an evenhanded manner to prevailing plaintiffs and prevailing defendants alike." *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994).

Not every factor need be met for a court to award fees. *See Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 558 (9th Cir.1996). In fact, a court can exercise its discretion to award fees even where none of the "culpability" factors (frivolousness, motivation, objective unreasonableness) weigh against the losing party. *Metcalf v. Bochco*, 200 F. App'x 635, 640-41 (9th Cir. 2006). A review of the factors in this case, however, reveals a strong basis for the award of fees.

1. <u>Degree of Success</u>

In this case, the first factor – degree of success – undisputedly favors Pond5. Every claim that plaintiff asserted against Pond5 was dismissed under the summary judgment standard. The court concluded that there were no genuine issues of material fact and Pond5 was entitled to the protections of the Digital Millennium Copyright Act ("DMCA") safe harbor as a matter of law. "A successful defense furthers the purposes of the Copyright Act just as much as a successful

DEFENDANT POND5, INC.'S MOTION
FOR ATTORNEYS' FEES AND COSTS - 2
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

infringement suit does." *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1043 (9th Cir. 2014); *see also Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 527 (1994) ("[D]efendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.").

2. Frivolousness

The second factor, frivolousness, also favors Pond5. The fact that Pond5 prevailed on summary judgment, where all facts are construed in favor of the plaintiff, supports a finding of frivolousness. *See Metcalf v. Bochco*, 200 F. App'x 635, 640-41 (9th Cir. 2006) (concluding that the case was not frivolous because the plaintiff "twice survived summary judgment on their claim of infringement"). Plaintiff also filed three detailed motions during the course of litigation, including a motion for leave to amend complaint, a motion to compel discovery, and a motion for reconsideration. (Dkt. Nos. 33, 36, 51). Each of those motions lacked merit and was subsequently denied but not before Pond5 expended time and effort to defeat them. (Dkt. Nos. 56, 65, 66).

Many of plaintiff's arguments in opposition to summary judgment were found to be of questionable legitimacy. For example, despite the fact that Pond5 had unquestionably adopted a written policy that allowed for a permanent ban of any user for a *single* violation of its contractual terms, plaintiff argued that the requirement was insufficient because it failed to speak explicitly in terms of *repeat* infringement. (Dkt. No. 22 at 11:20-12:8). As the court noted, Pond5 satisfied the act's requirements because it "goes beyond the threshold requirement of DMCA." (Dkt. No. 49 at 13:1-13:3). Additionally, plaintiff repeatedly made arguments that presumed a duty on behalf of Pond5 to investigate, which is explicitly not required under the DMCA. 17 U.S.C. § 512(m)(1).  In its order, the Court repeatedly rejected this argument. (Dkt. No. 49 at 14:21-14:22, 17:19-17:20). Further, with respect to one of plaintiff's primary arguments – that summary judgment was inappropriate because Pond5 possessed red flag knowledge of infringement – the court rejected plaintiff's argument and concluded that

DEFENDANT POND5, INC.'S MOTION
FOR ATTORNEYS' FEES AND COSTS - 3
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

"[p]laintiff misstates the facts; specifically, [he] misrepresents the extent of Pond5's knowledge regarding ckennedy342 in 2014." (Dkt. No. 49 at 17:11-17:12). Moreover, plaintiff argued that Pond5 did not expeditiously remove infringing content despite undisputed evidence that Pond5 removed the infringing content one day after it received notice. (*Id.* at 18:22). Finally, plaintiff argued that Pond5 received a financial benefit from infringement despite overwhelming evidence to the contrary, which the court summarized as: "there is no evidence that any customer ever visited pond5.com because it hosts infringing content, nor is there any evidence that Pond5 has ever promoted infringing content. . . . In short, there is a complete absence of any causal connection between any financial benefit and any infringing activity." (Dkt. No. 49 at 20:17-20:23). In summary, plaintiff's opposition to Pond5's motion for summary judgment relied upon tenuous and misleading arguments, misstatements of facts, and a misrepresentation of the DMCA.

Motions filed by the plaintiff are also indicative of frivolousness. Plaintiff moved for leave to amend his complaint and add some 500 new defendants to the lawsuit. (Dkt. No. 36). The court denied the motion, stating that plaintiff's argument "makes no sense" and noting that he filed his motion a full five months after the deadline to add parties had expired. (Doc. 65 at 3:23-3:24, 4:12). Plaintiff also filed a motion for reconsideration, arguing that "new facts" precluded summary judgment. (Dkt. No. 51). None of the evidence presented in the motion for reconsideration represented facts that could not have been brought before the court prior to its ruling. (Dkt. No. 66 at 3:8). Plaintiff even argued that his expert opinion should be considered a "new fact" because it was disclosed in accordance with the case management schedule, despite not having offered the opinion in opposition to the motion for summary judgment nor at any time in the many months that passed between the filing of the motion and the Court's decision. (*Id.* at 4:3-4:9). These arguments were meritless. In summary, plaintiff's motions repeatedly demonstrate lack of diligence, unwillingness or inability to comply with procedural rules, and meritless arguments.

DEFENDANT POND5, INC.'S MOTION
FOR ATTORNEYS' FEES AND COSTS - 4
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

Plaintiff filed a Supplemental Submission in Support of Response to Order to Show Cause and in Support of Pending Motions. (Dkt. No. 60). The Supplemental Submission was filed without seeking leave from the Court and without any attempt to explain a legal basis for filing it. (*See* Dkt. 64 at 2:2-2:9). Further, the Supplemental Submission purported to supplement two motions and the Court's Order to Show Cause, but at the time of filing, the Court had already ruled on one of the motions and the Order. (*Id.* at 2:10-2:19). The Supplemental Submission was entirely gratuitous and there was no factual or legal basis to file it. It was frivolous.

Pond5 also notes that the parties stipulated to discovery focused solely on Pond5's defense under the DMCA, which gave the plaintiff every opportunity to fully explore the merits of Pond5's defense and conclude that his lawsuit lacked merit. He had over six months between the motion for summary judgment's filing and the Court's ruling on the motion to voluntarily dismiss or settle his lawsuit, but did neither. As such, even if the plaintiff believed that he had a reasonable basis for asserting a lawsuit against Pond5 initially, he could have, and should have, discovered that it was, at best, of questionable merit before the Court's ruling in October 2016.

Further, there is substantial evidence that the plaintiff rushed to litigation. After initially contacting Pond5 and making general claims of infringement, the plaintiff refused to identify the infringing material so that Pond5 could immediately remove it. (*See* Dkt. No. 18 at 3:6-3:25). Thereafter, plaintiff delayed nearly a month before contacting defendant again, when his attorney sent a takedown letter. (*Id.* at 4:1-4:2). That letter still did not comply with the DMCA because it failed to identify the infringing material or the infringed upon material. (*Id.* at 4:1-4:11). Plaintiff filed suit without having ever sent a DMCA-compliant takedown notice. In fact, as of April 2016, when Pond5 filed its motion for summary judgment (over a year after first contact by the plaintiff and six months after the filing of the lawsuit), the plaintiff still had not identified the material that was allegedly uploaded illegally by user ckennedy342. (*Id.* at 6:23-7:11). Rather than comply with the DMCA's notice requirements, which trigger certain obligations on the part

DEFENDANT POND5, INC.'S MOTION
FOR ATTORNEYS' FEES AND COSTS - 5
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

of a service provider and provide an opportunity to cure any alleged infringement, the plaintiff rushed to litigation.

3. Motivation

There is substantial evidence that plaintiff had improper motives in bringing this lawsuit. First, his failure to engage in meaningful settlement at the outset of litigation, when offered by Pond5, was not consistent with a realistic assessment of the likelihood of success of his lawsuit, and evidences a possibility that he was motivated primarily by financial gain. Second, the DMCA offers safe harbors for internet service providers in exchange for providing copyright holders with a simple and effective method of removing offending content. Plaintiff's conduct is antithetical to the purposes of the DMCA. Rather than seek removal of content, he refused to adequately identify the allegedly infringing content and filed suit. Additionally, during the course of litigation, plaintiff became aware of another alleged infringer and failed to notify Pond5 or seek removal of content, again suggesting that protection of his material was not an overriding motive. Plaintiff knew that the contributor "dathrax" had uploaded allegedly infringing material in November 2015 but did not bother to inform Pond5 of the alleged infringement until September 2016. (*See* Dkt. 40 at 3:9-3:13). Plaintiff's actions demonstrate that he was not motivated to prevent or stop copyright infringement. Whatever his motives, they are inconsistent with the purposes of the DMCA.

Plaintiff may have had motives associated with obtaining notoriety as the world's preeminent nature sound recordist and a fighter of corporate greed. Prior to this litigation, a filmmaker named Nicholas Sherman produced a film called "Soundtracker," which is a portrait film of the plaintiff. See *http://www.soundtrackerthemovie.com/ST/Home.html* (last visited January 24, 2017). In August 2016, plaintiff contacted Sherman to discuss the making of a film about his lawsuit against Pond5. On August 10, 2016, plaintiff sent Sherman an email that, in part, described his vision:

> The week after that (Aug. 22-26th) is good for talking on the phone, or weekend of 27/28 might even be better so it can be long and relaxed. I am not sold on

DEFENDANT POND5, INC.'S MOTION
FOR ATTORNEYS' FEES AND COSTS - 6
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

whether or not the topic would make a popular film (you're the judge of that), but I think it is worth discussing so we don't let this opportunity pass us by if it's a good one.

You're familiar with my work, so no explanation needed. But now, at the end of my career and after four years in production producing my opus, Pond5 was caught selling my work that was posted by a pirate living in Pakistan.

Pond5 says the Digital Millennium Copyright Act gives them safe harbor and my lawsuit should be dismissed. I say, no, not true and point to why. I don't expect to settle out of court. Court is March, 2017, when an all star cast of expert witnesses will outline just how difficult it is to find pristine nature and how useful these sounds are to the industry—hence, valuable.

I see this as a global film. Maybe shoot in NY (Pond5 corporate headquarters) to see if they are willing to go on camera to load up on double-talk, then shoot in Pakistan and film pirate Hassan Kahn tell his story, and of course shoot at courthouse steps during the trial, especially the lineup of expert witnesses who will testify on a variety of subjects that give depth to the subject.

I see the film an almost crazy collage of places and moments that cuts back and forth between deep wilderness experience where we are all alone, the noisy modern world where being alone isn't possible. We listen to nature sooth and relax our souls and we listen to sugar coated corporate greed speak about laws that make selling pirated work possible. Is there a message to all of this? Not sure. I think that it is just because our cities don't look or sound like a wilderness, it doesn't mean it isn't.

I'm rambling now, I think you get the idea.

(Declaration of Larry Altenbrun in Support of Pond5, Inc.'s Motion for Attorneys' Fees and Cost ("Altenbrun Dec."), Exh. 1 (filed under seal pursuant to the Stipulated Motion to File under Seal filed concurrently herewith)).

Pond5 recognizes and respects Mr. Hempton's legitimate contributions to the arts as a nature sound recordist. Pond5 also agrees that standing up to corporate greed is often a worthy goal. Nonetheless, even the most receptive audience would have difficulty viewing Pond5's actions in this matter as an embodiment of corporate greed. Pond5 does not agree that litigation is a proper tool for demonstrating the utility of one's life work, nor is it properly utilized as a

DEFENDANT POND5, INC.'S MOTION
FOR ATTORNEYS' FEES AND COSTS - 7
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

vehicle for creating a movie. Plaintiff's motives seem disconnected from any objectively reasonable assessment of the facts of this case.

4.  Objective Unreasonableness

If not frivolous, plaintiff's actions during the course of this litigation are objectively unreasonable. As discussed above, plaintiff failed to give proper notice required by the DMCA, opposed the motion for summary judgment on tenuous grounds, lost every contested issue, filed multiple motions that were inherently flawed and repeatedly demonstrated a lack of diligence, and took unreasonable positions throughout this litigation. His actions were not objectively reasonable.

Plaintiff's actions regarding pre- and early-litigation settlement also evidences objective unreasonableness. Prior to being served with notice of this lawsuit, Pond5 contacted plaintiff and attempted settlement. Pond5 offered to settle for a modest monetary payment. (Altenbrun Dec., Exh. 2 at 2-3). The offer reflected a payment of all revenue attributable to user ckennedy342, despite the fact that only a small portion of that revenue could possibly involve plaintiff's material, plus an additional amount. (*Id.*). By that time, of course, Pond5 had already removed all offending content and complied with its responsibilities under the DMCA (despite having never received a DMCA-compliant takedown notice). Pond5 continued its settlement discussions with plaintiff even after being served with notice of this lawsuit. (*See id.* at 3-11). Subsequently, Pond5 provided plaintiff with detailed information regarding ckennedy342's uploads, downloads, and sales so that plaintiff could further evaluate the possible infringement and settlement. (*Id.*). In response, plaintiff did not even make an offer of settlement. (*See id.*). Pond5 does not believe that plaintiff made any meaningful efforts to settle this litigation based upon a realistic assessment of the costs and risks of litigation; the Court's order granting summary judgment supports Pond5's conclusion. Additionally, the Court's conclusion that income derived from sales of infringing content ranged from $192.95 to $2,000, (Dkt. No. 49 at 19:22), further demonstrates the unreasonableness of plaintiff's settlement position.

DEFENDANT POND5, INC.'S MOTION
FOR ATTORNEYS' FEES AND COSTS - 8
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

5.  <u>Compensation & Deterrence</u>

As the Court stated in its order granting summary judgment, Congress chose to balance the competing interests of copyright holders and internet service providers. (Dkt. No. 49 at 7:5-7:6) In doing so, Congress provided internet service providers with significant protection. Congress was "loath to permit the specter of liability to chill innovation." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). By limiting liability, the DMCA "ensures that the efficiency of the Internet will continue to improve and that the variety and quality of services on the Internet will continue to expand." Sen. Rep. No. 105-190, 8 (1998). In exchange for liability protection, however, Congress imposed on service providers specific requirements related to notice and takedown of offending content, and imposed liability on any service provider that effectively buried its head in the sand with respect to violations.

In this case, it is evident that the plaintiff rushed to litigation without having properly investigated the DMCA safe harbors or his own responsibilities in providing notice. Plaintiff had at least general awareness that Pond5 took infringement very seriously when, within 30 minutes of initial contact from plaintiff's representative, Pond5 stated that "[w]e take issues of fraud very seriously" and informed plaintiff that it could "do an immediate takedown, blacklist the fraudulent contributors, and audit to see of there have been any sales." (Dkt. No. 18 at 3:6-3:17). He knew or should have known that Pond5 took its responsibilities seriously when, three days later, Pond5 practically begged plaintiff's attorney to identify the offending content so that it could take appropriate action. (*See id.* at 3:18-3:26). He knew, or should have known, that he commenced litigation without having complied with the DMCA notice requirements. He knew, or should have known, that, despite his own failure to give a DMCA-compliant notice, Pond5 removed all offending content *one day* after plaintiff finally identified the offending contributor.

Plaintiff made no effort to learn whether Pond5 effectively buried its head in the sand prior to litigation. During litigation, Pond5 produced evidence demonstrating that, between 2012 and 2016, Pond5 had received twenty notices of infringement and, on every single occasion, had

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

removed offending content. (Dkt. No. 18 at 9:23-10:6). The plaintiff produced no evidence whatsoever refuting these facts. (Dkt. No. 49 at 15:7).

If plaintiff had taken the time to properly understand the balance that Congress struck in enacting the DMCA, he would have at least been certain to provide a DMCA-compliant notice and work with Pond5 to ensure that the statutorily-required takedown occurred promptly and properly before filing suit. He also could have and should have, either before filing suit or shortly after the commencement of discovery, learned that Pond5 has a documented track record of compliance with the DMCA, is motivated to provide a platform that is as free from infringement as reasonably possible, and, rather than burying its head in the sand, actively works to remove offending content. For these reasons, principles of compensation and deterrence are best served by awarding costs and fees to Pond5.

A key criterion of the Copyright Act is the promotion of creativity for the public good. *Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir.1994), *overruled on other grounds by Fogerty,* 510 U.S. at 531–32. The DMCA furthers that goal by creating safe harbors for service providers, contingent on their compliance with takedown notices and other requirements. In this case, there is a complete absence of evidence that plaintiff took meaningful steps to comply with *his* responsibilities under the DMCA and, conversely, it is now established (under summary judgment standards) that Pond5 *fully* complied with its responsibilities. Additionally, there is a lack of evidence that plaintiff conducted any meaningful effort to investigate whether Pond5 was entitled to safe harbor protection before filing suit. Under these facts, the principle of deterrence can only be achieved by awarding costs and attorneys' fees. If a service provider is only entitled to its statutory protections by spending a year or longer in litigation without recovering its fees and costs, then the purposes of the Copyright Act and the DMCA are seriously eroded.

## B.    Pond5's Attorneys' Fees & Costs Are Reasonable.

Reasonable attorneys' fees in a copyright case are determined using the "lodestar" method, whereby the number of hours reasonably expended on the litigation are multiplied by a

DEFENDANT POND5, INC.'S MOTION
FOR ATTORNEYS' FEES AND COSTS - 10
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

reasonable hourly rate. *See Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 978 (9th Cir.2008). In this case, Pond5's attorneys charged hourly rates of $265 for partners, $200 for associates, and $125 for paralegals. (Altenbrun Dec., ¶ 5). The rates charged are well below the prevailing rate for intellectual property matters in this locale. For example, in *Little Genie Prods. LLC v. PHSI Inc.*, No. 2:12-CV-00357-RSM, 2014 WL 3050326, at *10 (W.D. Wash. July 2, 2014), the court awarded attorneys' fees ranging from $300 to $420 per hour and paralegal fees as $150 per hour. In *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, 103 F. Supp. 3d 1242, 1250 (W.D. Wash. 2015), this court concluded that a rate of $350 per hour was appropriate. In *Broad. Music, Inc. v. Benchley Ventures, Inc.*, 131 F. Supp. 3d 1097, 1107 (W.D. Wash. 2015), the court found that rates of $265 to $290 were reasonable.[1]

Pond5's attorneys' fees and costs are detailed in the contemporaneously filed Declaration of Larry Altenbrun and the exhibits thereto. (Altenbrun Dec., Exhs. 3 and 4). Each invoice contains a separate entry for every item that was billed, by attorney or paralegal, including a detailed explanation of the task.  (*Id.,* Exh. 3). A table summarizing the fees set forth in the detailed invoices is also provided (*Id.*, p. 2). Costs are similarly identified in the invoices and a summary table is provided. (*Id.,* p. 3). Cost backup documentation is located at *id.,* Exh. 4. Total attorneys' fees in this matter were $232,259.50. Total costs were $6,046.11. Counsel for Pond5 respectfully submits that both fees and costs were reasonable.

### III.  CONCLUSION

For the foregoing reasons, Pond5 respectfully requests that this Court award Pond5 attorneys' fees in the amount of $232,259.50 and costs in the amount of $6,046.11, for a total of $238,305.61.

//

//

---

[1] The Court is well-positioned to evaluate whether the work performed in defense of Pond5 was effective and efficient based upon what has been submitted to the Court and the Court's experience in other litigation. Pond5's counsel believes that it was.

DEFENDANT POND5, INC.'S MOTION
FOR ATTORNEYS' FEES AND COSTS - 11
(3:15-cv-05696 BJR)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE
SUITE 1650
SEATTLE, WASHINGTON 98101
(206) 838-7555

1

**DATED** this 26th day of January, 2017.

2

NICOLL BLACK & FEIG PLLC

3

4

*/s/ Larry E. Altenbrun*
Curt H. Feig, WSBA No. 19890

5

Larry E. Altenbrun, WSBA No. 31475
Attorneys for Defendant Pond5, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT POND5, INC.'S MOTION
FOR ATTORNEYS' FEES AND COSTS - 12
(3:15-cv-05696 BJR)

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

I hereby certify that on the date set forth below, I electronically filed the foregoing with the Clerk of the Court using the CM/CF system which will send notification of such filing to the following:

4

5

Cynthia J. Heidelberg
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
206-652-8660
Email: cheidelberg@bjtlegal.com

6

7

8

Nicholas E. D. Power
LAW OFFICEOF NICHOLAS POWER
540 Guard St., Ste 140
Friday Harbor, WA 98250
360-298-0464
Email: nickedpower@gmail.com

9

10

11

Roger M. Townsend
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
206-652-8660
Fax: 206-652-8290
Email: rtownsend@bjtlegal.com

12

13

14

15

DATED this 26th day of January, 2017.

16

17

18

*/s/ Larry E. Altenbrun*
Larry E. Altenbrun, WSBA No. 31475

19

20

21

22

23

24

25

26

27

DEFENDANT POND5, INC.'S MOTION
FOR ATTORNEYS' FEES AND COSTS - 13
(3:15-cv-05696 BJR)